1   COOLEY LLP
    BOBBY GHAJAR (198719)
2   bghajar@cooley.com
    MARCUS PETERSON (265339)
3   mpeterson@cooley.com
    1333 2nd Street, Suite 400
4   Santa Monica, CA  90401
    Telephone: (310) 883-6400
5   Facsimile:  (310) 883-6500

6   Attorneys for Defendant
    SOCIALEDGE, INC.
7

8              UNITED STATES DISTRICT COURT

9        FOR THE CENTRAL DISTRICT OF CALIFORNIA

10           WESTERN DIVISION – LOS ANGELES

11  FAMOUS BIRTHDAYS, LLC,              Case No.  2:21-cv-09562-PA-MRW

12              Plaintiff,              **DEFENDANT SOCIALEDGE INC.'S
                                        MEMORANDUM OF POINTS AND
13      v.                             AUTHORITIES IN OPPOSITION TO
                                        PLAINTIFF'S MOTION FOR
14  SOCIALEDGE, INC., a Delaware        PRELIMINARY INJUNCTION**
    corporation (dba CreatorIQ),
15
16              Defendant.             Date:   February 14, 2022
                                        Time:   1:30 p.m.
17                                      Courtroom: 9A
                                        Judge: Hon. Percy Anderson
18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................. 1

II.     STATEMENT OF FACTS .................................................................... 3

        A.     CIQ's Business and its Unique Technology ............................... 3

        B.     Plaintiff's Business ..................................................................... 4

        C.     The Parties' Prior Discussions and Agreement ....................... 4

        D.     The Allegations in the Complaint .............................................. 6

        E.     CIQ's Actions After Learning of the Complaint ...................... 7

        F.     CIQ's Efforts to Resolve the Motion ........................................ 8

III.    LEGAL STANDARD ........................................................................... 9

IV.     ARGUMENT: PLAINTIFF IS NOT ENTITLED TO ANY RELIEF. ........... 10

        A.     Plaintiff Lacks Capacity to Prosecute This Action .................. 10

        B.     Plaintiff Cannot Establish Probable Irreparable Harm ........... 10

               1.     Plaintiff's lengthy delay undermines its claim of injury ................ 12

               2.     Plaintiff offers no evidence of likely irreparable harm ................... 12

               3.     Plaintiff fails to show damages are an inadequate remedy ............. 14

        C.     CIQ's Voluntary Cessation Obviates the Need for an Injunction .......... 15

        D.     Plaintiff is Not Likely to Succeed on the Merits of Its Claims.............. 16

               1.     Plaintiff is not likely to succeed on its copyright claim (Claim1) ............. 16

               2.     Plaintiff is not likely to succeed on its remaining claims ............. 22

        E.     The Remaining Factors Weigh Against Entry of An Injunction ........... 23

V.      CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Recs., Inc. v. Napster, Inc.,*
239 F.3d 1004 (9th Cir. 2001) ...................................................................... 15

*Am., Inc. v. Skechers USA, Inc.,*
890 F.3d 747 (9th Cir. 2018) ........................................................................ 13

*Baker v. Selden,*
101 U.S. 99 (1879).......................................................................................... 19

*Bourhis v. Lord,*
56 Cal. 4th 320 (2013) ................................................................................... 10

*Brighton Collectibles, Inc. v. Pedre Watch Co., Inc.,*
2013 WL 5719071 (S.D. Cal. Oct. 21, 2013).............................................. 12

*Brodsky v. Apple Inc.,*
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........................................................ 23

*Cause & FX Ltd. v. Saban Films, LLC,*
2021 WL 6104414 (C.D. Cal. Nov. 10, 2021) ..................................... 11, 12, 13, 15

*DealDash Oyj v. ContextLogic Inc.,*
2018 WL 3820654 (N.D. Cal. Aug. 10, 2018) ........................................... 16

*Experian Info. Solutions, Inc. v. Nationwide Mktg Servs. Inc.,*
893 F. 3d 1176 (9th Cir. 2018)............................................................... 20, 21

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340 (1991)................................................................................. 19, 20

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,*
654 F.3d 989 (9th Cir. 2011) ....................................................................... 10

*Four Navy Seals v. Assoc. Press,*
413 F. Supp. 2d 1136 (S.D. Cal. 2005) ...................................................... 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000)........................................................................................ 16

*Greg Young Publ'g, Inc. v. Zazzle, Inc.,*
2018 WL 836276 (C.D. Cal. Feb. 8, 2018), *aff'd* 785 F. App'x 417
(9th Cir. 2019) (*Zazzle I*) ...................................................... 11, 12, 13, 15

*Greg Young Publ'g, Inc. v. Zazzle, Inc.,*
2020 WL 3871451 (C.D. Cal. July 9, 2020), *aff'd* 2021 WL 3702005
(9th Cir. Aug. 20, 2021) (*Zazzle II*)................................... 11, 13, 15, 24

*hiQ Labs, Inc. v. LinkedIn Corp.*,
 273 F. Supp. 3d 1099 (N.D. Cal. 2017), *aff'd and remanded*, 938 F.3d
 985 (9th Cir. 2019), *cert. granted, judgment vacated*, 141 S. Ct. 2752
 (2021) .................................................................................................................23

*Karmo v. Morgan Creek Ent. Grp.*,
 2019 WL 3059463 (C.D. Cal. Apr. 12, 2019) ................................................14

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
 571 F.3d 873 (9th Cir. 2009) ....................................................................9, 10

*Matthew Bender & Co. v. West Publishing Co.*,
 158 F.3d 674 (2d Cir. 1998) ...........................................................................19

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
 518 F. Supp. 2d 1197 (C.D. Cal. 2007) ........................................................13

*Perfect 10, Inc. v. Google, Inc.*,
 653 F.3d 976 (9th Cir. 2011) ..........................................................................14

*Plunket v. Doyle*,
 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ..................................................18

*Prestige Trans., Inc. v. U.S. Small Bus. Admin.*,
 850 F. App'x 551 (9th Cir. 2021) ...................................................................12

*Proline Concrete Tools, Inc. v. Dennis*,
 2008 WL 11286077 (S.D. Cal. Aug. 18, 2008) .......................................16, 17

*Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Group, a Div. Reed
 Elsevier Group, PLC*,
 463 F.3d 478 (6th Cir. 2006) ..........................................................................20

*Salt Optics, Inc. v. Jand, Inc.*,
 2010 WL 4961702 (C.D. Cal. Nov. 19, 2010) ...............................................17

*Sandvig v. Sessions*,
 315 F. Supp. 3d 1 (D.D.C. 2018)....................................................................23

*Satava v. Lowry*,
 323 F.3d 805 (9th Cir. 2003) ..........................................................................19

*Schoolhouse, Inc. v. Anderson*,
 275 F.3d 726 (8th Cir. 2002) ..........................................................................21

*Semi-Materials Co. v. SunPods, Inc.*,
 2012 WL 3962487 ...........................................................................................10

*Sony Pictures Ent., Inc. v. Fireworks Ent. Grp., Inc.*,
 137 F. Supp. 2d 1177 (C.D. Cal. 2001), *vacated pursuant to
 settlement*, 2002 WL 32387901 (C.D. Cal. Nov. 5, 2002)..................18, 19, 22

*Synopsys, Inc. v. ATopTech, Inc.*,
 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ................................................17

*Tabarrejo v. Sup. Ct.*,
    232 Cal. App. 4th 849 (2014) ................................................................... 10

*Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*,
    609 F.3d 975 (9th Cir. 2010) ...................................................................... 9

*TransWestern Publ'g Co. LP v. Multimedia Mktg. Assocs., Inc.*,
    133 F.3d 773 (10th Cir. 1998) .................................................................. 22

*TVB Holdings USA Inc. v. Enom Inc.*,
    2014 WL 12581778 (C.D. Cal. Jan. 6, 2014) ...................................... 16, 17

*U.S. Vessel Documentation v. Vessel Holdings 7, LLC*,
    2017 WL 10436076 (C.D. Cal. June 8, 2017) ...................................... 11, 25

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) (*en banc*) .................................................. 23

*Van Buren v. U.S.*,
    593 U.S.141 S.Ct. 1648(2021) .................................................................. 23

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) .................................................................................. 9, 14

**Statutes**

17 U.S.C. § 507(b) .......................................................................................... 12

Computer Fraud and Abuse Act .............................................................. 3, 22, 23

CFAA .......................................................................................................... 3, 22, 23

Defendant SocialEdge Inc. dba CreatorIQ ("Defendant" or "CIQ") respectfully submits this opposition to the Motion for Preliminary Injunction (Dkt. No.8) ("Motion") filed by Plaintiff Famous Birthdays, LLC ("Plaintiff" or "FB").

## I.    INTRODUCTION

CIQ is a leading provider of services allowing companies to identify, engage, and work with social media influencers and celebrities.  It provides various analytics, campaign management tools, authentication, reporting, on-boarding, and financial tools to its customers, and a database of approximately 20 million individual profiles with various information, including basic biographical facts alongside other types of data.

Plaintiff's Motion identifies *seven* biographical profiles that CIQ allegedly copied from Plaintiff.  (Dkt. 1 ¶¶ 31–32.)  Immediately upon learning of those allegations, and to avoid unnecessary motion practice, CIQ voluntarily changed or removed the accused content.[1]  To the best of its knowledge, none remains. CIQ also repeatedly asked Plaintiff to identify any other content that CIQ supposedly copied so that it could be removed, but Plaintiff has steadfastly refused.  (Peterson Decl. ¶¶ 9-11 & Exs. E–F (yellow highlighting).)  Plaintiff has similarly refused to provide CIQ with a copy of its copyright registration deposit material showing what it allegedly owns so that CIQ could identify and take down any other allegedly protected content (*Id.* in pink).  Rather than enable CIQ to voluntarily purge its platform of any content Plaintiff claims to own, Plaintiff asks the Court to grant it the extraordinary relief of enjoining CIQ from copying content that Plaintiff has refused to identify, without evidence that it is covered by one of Plaintiff's two copyright registrations – leaving it up to CIQ, and ultimately the Court, to speculate as to which of CIQ's approximately 20 million profiles allegedly infringes any of Plaintiff's tens of thousands of biographies.

---

[1] For example, CIQ replaced the accused "facts" with data taken directly from the individual's social media platform pages (*e.g.* Instagram, Twitter, Twitch, YouTube, etc.) After replacing these biographies, CIQ sought to confirm that Plaintiff took no issue with the replacement content, but Plaintiff did not respond. (Peterson Decl. ¶10 & Ex. E at 210 (*see* added blue highlighting).)  [*Highlighting added for ease of reference.*]

Plaintiff's conduct is inconsistent with that of a party who seeks to preserve the status quo. Its motives appear dubious, including that it filed its lawsuit just after CIQ announced a capital raise—even though Plaintiff admits that it has known of its claims for months. As explained below, Plaintiff's Motion should be denied for *five* reasons.

**First**, Plaintiff has been suspended and is not in good standing with the California Secretary of State. It thus lacks capacity to even bring this suit or seek injunctive relief.

**Second**, Plaintiff cannot show that it will be irreparably harmed absent an injunction. Plaintiff delayed at least six months, and as much as three and a half years before filing suit or seeking injunctive relief, dispelling any claim of harm or urgency. Moreover, the declaration of its CEO does not even address harm, beyond a generalized claim of "loss of ability" to control its intellectual property. Courts routinely reject such claims as insufficient absent evidence of loss of market share, business goodwill, or the like – all of which are lacking here. And any claim of ongoing, irreparable harm is completely undercut by Plaintiff's refusal to cooperate with CIQ in its efforts to voluntarily resolve Plaintiff's concerns; withholding information is not the way a party behaves if it truly believes it is being irreparably damaged.

**Third**, the Motion is moot. CIQ has voluntarily ceased the alleged infringement, revised the accused profiles, and replaced them on its website and in marketing materials. CIQ has no interest in using those materials, and there is no risk that it will.

**Fourth**, the balance of hardships does not favor Plaintiff. Its requested relief is vague (*i.e.*, to cease infringing unidentified works), and if it suggests CIQ must search through millions of profiles to speculate whether Plaintiff might claim ownership of some subset of facts in them, this mandatory injunction creates an undue burden. There is no hardship on Plaintiff where the type of information it seeks to protect (basic facts about public personas) is ***all over the internet***. *See infra* at 4. Nor does the public interest benefit from an injunction relating to facts used by numerous third parties.

**Fifth,** to the extent the Court reaches the merits of Plaintiff's claims, it cannot demonstrate a likelihood of success. Its copyright claim fails because – beyond the

seven examples – it does not identify what it specifically owns, what it registered (and when), and what CIQ did to infringe Plaintiff's rights.  It fails to plausibly allege the protectability of biographical facts of public figures.  *Even if* it could prove it created the asserted profiles, its work is at best entitled to thin protection.  Plaintiff fails to prove substantial similarity in *protected* expression because it does not, and cannot, allege that CIQ copied substantially all of Plaintiff's biographical database (as opposed to some small portion), which is necessary to establish infringement.  Nor can it establish that CIQ's alleged influencer profiles, individually, are substantially similar to Plaintiff's, when they have different layouts, different data, and a different overall feel.  As to Plaintiff's Computer Fraud and Abuse Act (CFAA) and corollary state claims, those fail because the alleged misconduct – allegedly visiting Plaintiff's public website and extracting data (which CIQ denies doing) – does not violate the CFAA.

## II.   STATEMENT OF FACTS

### A.   CIQ's Business and its Unique Technology

CIQ operates a platform that allows brand owners to discover, hire, work with, and pay social media influencers (called "creators"); manage social media campaigns; review reports, analytics, and metrics of those campaigns; and ensure FTC compliance, among many other features and reporting and payment tools.  (Kroopf Decl. ¶ 2.)  The platform allows CIQ customers to search millions of profiles and identify relevant creators based on subject matter, consumer reach, geographic reach, and a variety of other criteria.  (*Id.*)  Customers can then use CIQ's platform to contact and collaborate with the creators, run and manage marketing campaigns, and view analytics.  *Id.*  A creator's profile includes a variety of information, including a brief biography, categories of the creator's posts (e.g., sports, travel, causes and activism, etc.), links to the creator's social media accounts, recent posts by the creator, key metrics, and a list of similar creators.  (*Id.* ¶ 3.)  The Declaration of J. Kroopf includes examples of a creator's profile and CIQ's tool (at Ex. 1), including one of the accused profiles.

CIQ's customers include major brands such as AB-InBev, H&M, Disney, CVS,

1  Sephora, Yeti, Unilever, and Mattel, among many others.  (*Id.* ¶ 4.)

2  **B.    Plaintiff's Business**

3  Plaintiff operates a website that includes biographical profiles of celebrities,

4  historical figures, and social media personalities.  (Dkt. 1 ¶ 2.)  Each of the profiles is

5  publicly available on its website, www.famousbirthdays.com, and recites facts such as

6  birthdate, birthplace, age, zodiac sign, trivia, family life, and "popularity" rankings tied

7  to age, birthdate, birthplace, first name, and the like, as shown in this excerpt:



20  (Peterson Decl. ¶ 6 & Ex. C.)  Plaintiff alleges that its biographies are the "backbone of

21  its service" and have taken "a massive investment of time, effort, and resources to

22  develop…."  (Dkt. 1 ¶ 17.)  However, many other companies publish biographical facts

23  about influencers or personalities; websites like celebrity-websites.com, personality-

24  database.com, and popularbio.com publish similar or identical information, albeit

25  without Plaintiff's rankings.  (Peterson Decl. ¶¶ 3, 5 & Exs. A–B.)  Plaintiff offers no

26  similar analytics, campaign management, payment, or validation tools like CIQ.

27  **C.    The Parties' Prior Discussions and Agreement**

28  In February 2018, the parties negotiated an agreement through which Plaintiff

would license certain data to CIQ.  (Kroopf Decl. ¶ 5.)  The parties entered into the license agreement on April 23, 2018.  (Dkt. 1 ¶ 24; Dkt. 1-3.)  The agreement required Plaintiff to provide two sets of data to CIQ.  The first contained "celebrity records," made up of "About section, Profession, Instagram Handle, Twitter Handle, Musical.ly Handle, YouTube User ID, YouTube Channel ID, Facebook User Name, Alive, Age, Popularity Ranking, and Unique ID."  (Dkt. 1-3 at 4–5.)  As far as CIQ is aware, this is all information that is publicly available on Plaintiff's website and/or a variety of other sources (including the celebrities' own websites and social media accounts).  (Kroopf Decl. ¶ 6; Peterson Decl. ¶ 5 & Ex. A & B (citing examples).)  The second set of data was referred to as the "Trending API," intended to provide daily updates showing "which celebs have risen in popularity on Famous Birthdays in the past day," categorized by profession.  (Dkt. 1-3 at 5.)  It was the Trending API data that CIQ understood to be proprietary and wished to license because that information was not factual in nature or publicly available from other sources.  (Kroopf Decl. ¶ 7.)

Indications are that Plaintiff sent approximately 100,000 celebrity records to CIQ in April 2018.  (*Id.* ¶ 8.)  The license contemplated that all of this data could be displayed to CIQ customers on its website.  (Dkt. 1-3 at 33.)  Shortly thereafter, CIQ hired a marketing company to provide graphics.  (*Id.*)  CIQ updated its website to include



*August 15, 2018 screenshot*

sample profiles in August 2018, including profiles that displayed some of the data provided by Plaintiff. By August 15, 2018, and continuing through nearly all of 2021, CIQ's website included the above image, or something similar. (Peterson Decl. ¶ 7 & Ex. D; Kroopf Decl. 8.) Notably, the image of the profile of Lauren Bullen, which was displayed on CIQ's website for over three years, included the *same* language on which Plaintiff now bases its copyright infringement claim. (*Compare* Dkt. 1 ¶ 31 *with* Peterson Decl., Exs. D & I.) CIQ's website included other accused profiles, including that of Chelsea Yamase – another profile now accused (Dkt. 1 ¶ 31) – at least as early as 2018. (Kroopf Decl. ¶¶ 9–10; Peterson Decl., Ex. D.)

Because the Trending API data was not useful to CIQ (Kroopf Decl. ¶10), it terminated the license on August 23, 2018 (Dkt. 1 ¶ 27). However, it seems CIQ inadvertently failed to remove from its marketing materials the language now accused of copyright infringement. (Kroopf Decl. ¶ 11.) Upon learning of Plaintiff's concern, CIQ promptly and permanently removed that content. *Infra* § II.E & F.

### D.      The Allegations in the Complaint

Plaintiff claims to have an "online search engine" made up of "updated original profiles for celebrities and influencers…." (Dkt. 1 ¶ 2.) Although Plaintiff does not specify the number of profiles in its database, it claims that CIQ infringed at least "tens of thousands" of them. (*Id.* ¶ 25.)

Plaintiff alleges that it registered "creative works of authorship" in October 2018 and 2021, attaching two copyright registration certificates to its Complaint. (*Id.* ¶ 20.) Exhibit B, the 2018 registration, states that it covers the text of "famousbirthdays.com celebrity profiles," which it claims was an "unpublished" collection. Exhibit A, the 2021 registration, ostensibly covers some derivative of the 2018 registration, including new text of "famousbirthdays.com celebrity profiles." (Dkts. 1-1, 1-2.) Plaintiff did not attach the deposit materials for either registration to its Complaint or otherwise provide the Court with copies (or even excerpts) of its claimed works, other than quoting text from seven partial profiles it alleges were infringed. (Dkt. 1 ¶¶ 31–32.) On multiple

occasions, CIQ asked Plaintiff to provide the deposit copies or the biographical profiles allegedly covered by the registrations, but it declined.  (Peterson Decl. ¶¶ 9-11 & Ex. E–F (yellow highlighting).)  Accordingly, CIQ and the Court are left with nothing more than the seven alleged infringing profiles to compare in resolving this Motion.

Plaintiff says it pitched a service that "directly competes" with CIQ's services to a CIQ customer on June 8, 2021, and it was because of that pitch that Plaintiff learned that CIQ supposedly duplicated some of Plaintiff's material. (Dkt. 1 ¶ 28.) A reasonable reading of the email cited for support (Dkt. 8-9) does ***not*** support this conclusion.[2] Tellingly, Plaintiff admits it was aware of the conduct it now claims is infringing by June 2021 (*id.* ¶¶ 29–30), yet waited another six months to file this action.  (Dkts. 1, 8.)

In terms of the scope of copying, Plaintiff specifies that CIQ allegedly copied one to three sentences from Plaintiff's profiles for use in CIQ's profiles for Chelsea Yamase, Lauren Bullen, J.D. Witherspoon, Exploring with Josh, Brad Lemon, Cristiano Ronaldo, and Chloe Flower.  (Dkt. 1 ¶¶ 31–32.)  Although its Motion is focused on these seven, it alleges that the "full extent of CreatorIQ's unlawful copying is at this point unknown."  (*Id.* ¶ 33.)  Plaintiff believes that the CIQ's Creator Discovery tool "likely features tens of thousands of Famous Birthdays' Works behind CreatorIQ's login interface."  (*Id.* ¶ 34.)  In a recent call, Plaintiff's counsel implied that he obtained access to CIQ's database through an unnamed source and saw ***six*** other similar profiles, but he ***refused*** CIQ's request to identify them.  (Peterson Decl. ¶¶ 9-10 & Ex. E.)

### E.    CIQ's Actions After Learning of the Complaint

Although it was not directly served with the Complaint, CIQ learned of it in mid-December.  (Murray Decl. ¶ 2.)  CIQ was surprised by the allegations, and although it disagreed with them, CIQ took immediate steps to identify the content challenged in the Complaint and to remove or modify it to address Plaintiff's stated concern.  (*Id.* ¶ 3.) CIQ also undertook a search of its database and confirmed that any data Plaintiff

---

[2] Notably, Plaintiff's Motion does not attach any declaration from the third party that might support the unwarranted inference it drew from the email (Dkt. 8-9).

provided under the 2018 license was removed from CIQ's database. (*Id.*) ***CIQ is unaware of any biography currently in its database that contains content provided by Plaintiff*** (whether protectable or not, or original to Plaintiff or not). (*Id.*) As noted above, CIQ did everything it could to understand from Plaintiff what other biographies/materials Plaintiff claimed to own and were supposedly copied, to no avail. (Peterson Decl. ¶¶ 9-11 & Exs. E–F (yellow highlighting).) CIQ has no interest in using any of Plaintiff's alleged biographies, and contrary to Plaintiff's claims, those biographies are ***not*** the driving force of CIQ's service. (Murray Decl. ¶ 4.) Indeed, the one-to-three-sentence biographies of influencers (information that is typically available on the influencers' own websites or social media accounts) are not material to its customers' decision as to whether to use CIQ's tool and services, or to engage with a particular celebrity or influencer. (Kroopf Decl. ¶ 3.)

As to the seven profiles identified in the Complaint (Dkt. 1 ¶¶ 31–32), research shows that each of them had been published on Plaintiff's website at least as early as March 2017, and that four of them had been published in 2015. (Peterson Decl. ¶ 2 & Ex. A.) This contradicts the allegation in the 2018 copyright registration that the profiles were "unpublished."[3] (Dkt. 1-2.) Further investigation also reveals that the *same* language Plaintiff accused CIQ of copying (plus all the other information Plaintiff collected about each celebrity) appears on *numerous* third-party websites for each of the seven accused profiles. (Peterson Decl., Ex. B (comparing profiles on other sites).)

## F.    CIQ's Efforts to Resolve the Motion

CIQ reached out to Plaintiff on December 27 to set up a call to discuss the Complaint. In a December 28 email, CIQ explained that it had removed and replaced the identified profiles. (*Id.* ¶ 5.) The parties connected by phone the following week. To CIQ's surprise, Plaintiff's counsel alleged that, beyond the seven biographies in the Complaint, there were supposedly additional instances of infringement: an unnamed

---

[3] This error renders the 2018 copyright registration is invalid, or at least undermines any presumption of validity. Nor has CIQ provided evidence of exactly what it covers.

source had done a "random sampling" of 10 profiles in CIQ's database at some time between June 8 and December 9, 2021 and determined that six of the 10 had language similar to Plaintiff's corresponding biographies. (*Id.* ¶ 6 & Ex. E.)[4] However, ***Plaintiff's counsel refused to identify those biographies***. (*Id*. ¶¶ 6–7.) CIQ made repeated efforts thereafter to obtain clarity over what *else* Plaintiff believed was infringing, but Plaintiff has consistently rebuffed those efforts. (*Id.* ¶¶ 6–8, Exs. E–F.)

CIQ offered several compromises, including giving Plaintiff access to a subset of CIQ's database made up of profiles identified by Plaintiff so that Plaintiff could satisfy itself that there was no ongoing infringement, but Plaintiff rejected this proposal, stating: "we've identified quite a bit and the burden is now on you." (*Id.* ¶¶ 7–8 & Exs. E, F (yellow highlighting).) On January 14, Plaintiff requested same-day access to CIQ's *entire* proprietary database in exchange for its public copyright registration deposit materials, but without any commitment that doing so would resolve the Motion or even agreeing to postpone it. (Ex. F at 216.) CIQ declined to provide Plaintiff unfettered access to its proprietary database. (*Id.* at 214–15 (green highlighting).)

## III.   LEGAL STANDARD

A party seeking a preliminary injunction must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

An injunction may take two forms. "A prohibitory injunction prohibits a party from taking action and preserves the *status quo* pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d

---

[4] For comparison's sake, CIQ reviewed the top 10 most popular biographies on Plaintiff's website and compared them to the same profiles in CIQ's platform. There is no arguable overlap. (*See* Peterson Decl. ¶ 10 & Ex. H.)

873, 878 (9th Cir. 2009) (internal alterations & quotation marks omitted). A mandatory injunction, **as sought here**, orders a party to take action; because that "goes well beyond simply maintaining the status quo *pendente lite* [it] is particularly disfavored." *Id.* (int. alterations omitted) (such injunctions follow an extreme or very serious risk of damage).

In copyright cases, there is no presumption of irreparable harm, even with a showing of likelihood of success on the merits, and "the plaintiff must demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief…." *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011) (internal quote omitted).   Contrary to Plaintiff's proposed framework (which erroneously eschews Ninth Circuit precedent in favor of inapplicable state law (Mot. at 10)), there are four preliminary injunction factors, not two, *each* of which Plaintiff must satisfy.

## IV.   ARGUMENT: PLAINTIFF IS NOT ENTITLED TO ANY RELIEF

As discussed more fully below, Plaintiff lacks capacity to prosecute this action because of its suspended status with the California Secretary of State and fails to carry its burden as to the four preliminary injunction factors.  Its Motion should be denied.

### A.   Plaintiff Lacks Capacity to Prosecute This Action

Plaintiff is not currently a company in good standing with the California Secretary of State.  It was suspended at the time of the Complaint, and as of this brief. (Peterson Decl. ¶ 12 & Ex. G.) A corporation or other entity that has had its powers suspended for failure to pay its taxes lacks the legal capacity to prosecute or defend a civil action, or to appeal from an adverse judgment. *Bourhis v. Lord*, 56 Cal. 4th 320, 324 (2013); *Tabarrejo v. Sup. Ct.*, 232 Cal. App. 4th 849, 861–862 (2014); *Semi-Materials Co. v. SunPods, Inc.*, 2012 WL 3962487, at *3 (N.D. Cal. Sept. 10, 2012 (finding two defendants lacked capacity to move to dismiss due to suspended status). **This is fatal to Plaintiff's entire case**: because it is suspended, Plaintiff lacks legal capacity to prosecute this action or seek any relief, including injunctive relief.

### B.   Plaintiff Cannot Establish Probable Irreparable Harm

Plaintiff has the burden of "establish[ing] that irreparable harm is *likely*, not just

possible, in order to obtain a preliminary injunction." *U.S. Vessel Documentation v. Vessel Holdings 7, LLC*, 2017 WL 10436076, at *4 (C.D. Cal. June 8, 2017) (int. cit. omitted)).  Irreparable harm "can be proven by evidence of an injury for which monetary damages are unsuitable to remedy, or harm that would necessitate a multiplicity of suits to remedy." *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, 2020 WL 3871451, at *3 (C.D. Cal. July 9, 2020), *aff'd* 2021 WL 3702005 (9th Cir. Aug. 20, 2021) (*Zazzle II*).  The recent *Zazzle* and *Saban* cases are instructive on the absence of irreparable harm here.

In *Zazzle*, the plaintiff won a jury trial on claims that defendant had sold products featuring 41 different works for which plaintiff owned copyrights.  2021 WL 3702005, at *1.  After trial, plaintiff moved for a permanent injunction against defendant's continued sale of products bearing plaintiff's works, which the court granted.  *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, 2018 WL 836276, at *1 (C.D. Cal. Feb. 8, 2018), *aff'd* 785 F. App'x 417 (9th Cir. 2019) (*Zazzle I*).  On reconsideration, though, the court vacated the injunction because the plaintiff had not introduced evidence of irreparable harm beyond conclusory statements from its owner.  *Id.* at *3–4.  In *Zazzle II*, the court again denied an injunction (predicated on alleged new acts of infringement) because the plaintiff still had no evidence of irreparable harm insofar as it could be compensated in damages for *de minimus* continuing acts of infringement.  2020 WL 3871451, at *3.

In *Cause & FX Ltd. v. Saban Films, LLC*, 2021 WL 6104414 (C.D. Cal. Nov. 10, 2021), the plaintiff created copyrighted visual effects for a film distributed by defendant, who agreed plaintiff would maintain ownership of the copyrights in the visual effects until plaintiff was paid.  Because plaintiff was not paid, the defendant did not have the right to distribute the film with plaintiff's visual effects, and the plaintiff moved for an injunction to stop its distribution.  *Id.* at *1.  The court found that plaintiff was likely to succeed on the merits but denied a motion for preliminary injunction because plaintiff had not established a likelihood of irreparable harm.  *Id.* at *3.

The facts here similarly undercut Plaintiff's arguments of irreparable injury.

### 1.   Plaintiff's lengthy delay undermines its claim of injury

Plaintiff's delay alone undercuts its claim of irreparable harm. *See Saban*, 2021 WL 6104414, at *3 (int. citation omitted). In *Saban*, the plaintiff filed suit after learning of the release of the film with its visual effects and then waited another four months to seek an injunction. The court found that this delay "belie[d] the supposed harm." *Id.*; *Prestige Trans., Inc. v. U.S. Small Bus. Admin.*, 850 F. App'x 551 (9th Cir. 2021) (two-month delay "undercuts Plaintiffs' claim of irreparable harm.") (internal quote omitted).

Here, Plaintiff delayed nearly **three and a half years** after the alleged infringement began to file suit. The challenged marketing materials appeared on CIQ's website at least as early as August 15, 2018. (Kroopf Decl. ¶ 8.)[5] Plaintiff also admits that it delayed at least six months after discovering the alleged "copying" based on a June 2021 customer email. (Dkt. 1 ¶ 28.) Plaintiff offers no justification for this extraordinary delay. If the "power to control its intellectual property" (Dkt. 8 at 20) was so seriously threatened that damages could not compensate Plaintiff for its alleged loss, one would expect it to have sought injunctive relief immediately. Under well-settled precedent, Plaintiff's delay demonstrates that it is not likely to suffer irreparable harm. For this reason alone, Plaintiff's Motion should be denied.

### 2.   Plaintiff offers no evidence of likely irreparable harm

Plaintiff has the burden of showing that an injunction will "guard against any present or imminent risk of likely irreparable harm"; if not, an injunction would be "improper." *Zazzle I*, 2018 WL 836276, at *3. Plaintiff needed to support its claim with evidence, not "conclusory" statements that do "not have any support." *Id.*; *see also Brighton Collectibles, Inc. v. Pedre Watch Co., Inc.*, 2013 WL 5719071, at *4 (S.D. Cal. Oct. 21, 2013) (rejecting a "conclusory assertion that [plaintiff's] reputation and goodwill has been and will be harmed," unsupported by "specific facts or evidence," as insufficient to establish irreparable harm for purposes of permanent injunction).

---

[5] Notably, this delay takes at least some of Plaintiff's copyright claims outside the applicable 3-year statute of limitations. 17 U.S.C. § 507(b).

Plaintiff has provided no such evidence here.  The declaration of its founder, Evan Britton (Dkt. 8-5), does not even describe, let alone provide support for, any such harm.  It does not provide any evidence of how Plaintiff has been harmed to date, such as lost revenue, reputational harm, loss of market share, or the like.  Plaintiff argues (but again provides no evidence) that it "'would lose the power to control [its] intellectual property [and it] could not make a business decision not to license its property' to CreatorIQ."  (Dkt. 8 at 20 (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007)).)[6]  This is precisely the type of vague allegation that *Zazzle II* found insufficient once the presumption of irreparable harm in copyright cases was dispensed with:

> GYPI argues that they have suffered irreparable harm because they have lost their exclusive right to control their copyright.… GYPI's argument that irreparable harm results from losing their exclusive right to control their copyright is inconsistent with *Flexible Lifeline Systems* because it means that copyright infringement leads to a per se presumption of irreparable harm.

*Zazzle II,* 2020 WL 3871451, at *4; *see also Saban*, 2021 WL 6104414, at *3 ("Plaintiff has failed to show that damages are an inadequate remedy.  There is no evidence cited that Plaintiff's business reputation or market share are harmed….").

Merely claiming loss of control of intellectual property, without **evidence** of such a loss, is insufficient to demonstrate irreparable harm.  *See Zazzle I*, 2018 WL 836276, at *4 ("Plaintiff did not offer any evidence of its market share, any customer who purchased Zazzle products instead of Plaintiff's products, any identifiable loss of sales, any decline in licensing revenues, or any other specific loss.").  The implication that *CIQ's* existing customer allegedly declined to *also* purchase Plaintiff's services (Dkt. 8

---

[6] Plaintiff finds no support in *adidas Am., Inc. v. Skechers USA, Inc*., 890 F.3d 747, 759 (9th Cir. 2018) (Dkt. 8 at 21), a trademark injunction case.  There, the Ninth Circuit held that the district court had **abused its discretion in finding irreparable harm** where plaintiff argued it would lose control of its brand image because it presented no supporting evidence.  Here, Plaintiff hardly controls the supply of biographical *facts* that are all over the internet, and loss of control of brand goodwill is addressed by trademark claims (not present here)—not copyright law.

at 20–21) hardly shows that Plaintiff has been harmed, let alone irreparably harmed, by alleged infringement.  Plaintiff provides no evidence to show that it *would have* made a single additional sale *absent* the alleged infringement, or that the allegedly infringing content was the reason the customer opted to retain CIQ's services or not to retain those of Plaintiff.  Similarly, it provides no evidence of allegedly "diverted" traffic or injury to its supposed "marketing pitch and momentum." The above-referenced "pitch" to CIQ's existing customer does not support the specific claims here.  (Dkt. 8 at 20.)

Plaintiff says it is suffering irreparable harm because its "first-party proprietary bios [] can only be leveraged within Famous Birthdays Pro and not competitive offerings." (Dkt. 1 at 38.)  This is demonstrably false, as the accused biographical facts cited in the Complaint (Dkt. 1 ¶¶ 31–32) are available on numerous third-party websites. (Peterson Decl. ¶¶ 3, 5 & Ex. B.)  Because the allegedly copied works are freely available on other websites, Plaintiff cannot suffer irreparable harm as a matter of law. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976 (9th Cir. 2011) (denying injunction where Perfect 10 could not establish that an injunction would prevent irreparable harm because search engines *other than Google* made Perfect 10's images "freely available").

Finally, any claim that Plaintiff is currently suffering irreparable harm is also undermined by Plaintiff's conduct since filing the Motion.  CIQ has offered to address any concern Plaintiff may have, but Plaintiff has refused to identify a single additional act of alleged infringement beyond the seven identified in the Complaint.  (*See supra* § II.E–F; Peterson Decl. ¶¶ 9-11.)  Given the opportunity to mitigate any harm Plaintiff is purportedly suffering, it declined, demonstrating that the harm is merely illusory.

### 3.   Plaintiff fails to show damages are an inadequate remedy

If harm can be redressed with money damages, it is, by definition, not irreparable. *Karmo v. Morgan Creek Ent. Grp.*, 2019 WL 3059463, at *8 (C.D. Cal. Apr. 12, 2019) ("Plaintiff has not satisfied the irreparable harm element of the *Winter* test. Plaintiff cites only financial harm [which] does not justify injunctive relief.").  Moreover, *de minimus* infringement (such as the seven alleged incidents of infringement out of "tens

of thousands" of profiles allegedly owned by Plaintiff) does not justify injunctive relief. *Zazzle II*, 2020 WL 3871451, at *4.  *Even if* Plaintiff were to prevail at trial, monetary recovery would be sufficient to compensate it for the alleged harm.  *See Zazzle I*, 2018 WL 836276, at *5 (monetary damages sufficient; hence, "an injunction is improper").

The parties' 2018 license agreement, which covered much more than biographies (*supra* § II.C), establishes the maximum potential value of Plaintiff's data (if it has met the requirements of the contract, which it did not). (Dkt. 1 ¶ 25; Dkt. 1-3 (alleging monthly payment).  Plaintiff's allegation is essentially that CIQ maintained some subset of that data after the license was terminated.  (Dkt. 1 ¶¶ 26, 73.)  That agreement established the *maximum* value of the data to Plaintiff and demonstrates that an award of damages would be adequate to compensate Plaintiff.  *Saban*, 2021 WL 6104414, at *3 (finding copyright claim was essentially that plaintiff was not paid for its work, and irreparable injury arguments were "not supported with facts or evidence").

Lastly, Plaintiff's argument that relegating it "to seeking damages only is akin to a forced license agreement" is also misplaced.  (Mot. at 20 (citing *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028–29 (9th Cir. 2001) (a compulsory license would be an "easy out" because Napster would avoid such remedies as statutory damages and have the option of "either choosing to continue and pay royalties or shut down.")).  CIQ is not requesting a "compulsory license," nor is one at issue.  Plaintiff has identified only *seven* instances of alleged infringement among a platform with *millions* of profiles and extensive tools and data beyond factual biographies.  All of this indicates that damages – if proven – would be sufficient to compensate Plaintiff for any alleged loss.

### C.    CIQ's Voluntary Cessation Obviates the Need for an Injunction

CIQ took immediate, voluntary steps to modify the allegedly infringing marketing materials identified by Plaintiff.  (*Supra* § II.E–F.)  CIQ has no interest in using these materials going forward.  (Murray Decl. ¶ 4.)  While it is true that one "cannot automatically moot a case simply by ending its unlawful conduct once sued," it *can* by showing "the allegedly wrongful behavior could not reasonably be expected

to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).  The materials at issue here are biographic facts.  CIQ derives no benefit from using Plaintiff's alleged "facts."  CIQ has already removed and replaced them and will not revert to the profiles accused in the Motion.  (Murray Decl. ¶ 4.)  This is yet another ground on which the Court should deny the Motion.  *See DealDash Oyj v. ContextLogic Inc.*, 2018 WL 3820654, at *3 (N.D. Cal. Aug. 10, 2018) (denying preliminary injunction based, in part, on evidence that alleged infringing activity had stopped and noting that, "even assuming defendant's past … infringement, defendant has clearly shown it cannot 'reasonably be expected'" to further engage in the conduct).

## D.   Plaintiff is Not Likely to Succeed on the Merits of Its Claims

Although the above factors doom its Motion, Plaintiff must separately show it is likely to succeed on the merits of each of the claims in its Complaint.  It cannot.

### 1.   Plaintiff is not likely to succeed on its copyright claim (Claim 1)

For its copyright infringement, Plaintiff must allege "1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Proline Concrete Tools, Inc. v. Dennis*, 2008 WL 11286077, at *2–3 (S.D. Cal. Aug. 18, 2008). Plaintiff's pleading fails to satisfy even one of these basic requirements.

*TVB Holdings USA Inc. v. Enom Inc.*, 2014 WL 12581778 (C.D. Cal. Jan. 6, 2014) is instructive.  In *TVB*, plaintiff alleged that defendant had infringed thousands of television episodes by posting them online.  *Id.* at *3.  The complaint contained a list of the shows at issue, along with a list of thousands of URLs for web pages where the allegedly infringing content could be found.  *Id.* at *1.  After defendant failed to respond to the complaint, plaintiff moved for entry of default and a permanent injunction.  The court denied the motion based on Plaintiff's failure to adequately identify the works at issue, stating: "The Court will not attempt to review and compile the thousands of links provided by Plaintiff to determine the actual copyrighted works and whether and to

16.

1    what extent Plaintiff may be entitled to relief." *Id.*

2          Plaintiff's Complaint is even more lacking than that in *Enom*.  Plaintiff has not

3    given CIQ or the Court the means to even attempt to identify the works Plaintiff alleges

4    have been infringed.  It provided seven examples, but claims that there are "tens of

5    thousands" of other profiles that infringe Plaintiff's copyrights, without identifying any

6    of them.  (Dkt. 1 ¶¶ 31–34.)  CIQ does not contend that Plaintiff must identify every

7    single profile it claims was infringed, but it must, at the very least, allege sufficient

8    factual matter so that CIQ and the Court can identify the specific content Plaintiff

9    purports to own, confirm whether those profiles are actually covered by a copyright

10   registration, and compare CIQ's corresponding profile (if there is one) to assess

11   substantial similarity of protected expression.  Plaintiff has failed to do so.

12         Other cases have similarly found allegations lacking where they did not specify

13   the works allegedly infringed or the defendant's allegedly infringing conduct.   In

14   *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013),

15   the court dismissed claims that defendant infringed plaintiff's software (except as to

16   two particular input and output formats) where plaintiff merely "provid[ed] its

17   copyright registrations and plead[] that Defendant had access to the Copyrighted

18   Software and improperly incorporated parts of it into its own software."  The court

19   disagreed that the plaintiff "need not plead with particularity either what parts of its own

20   software were copied, or what of Defendant's software actually infringed," noting also

21   that "Plaintiff further hamstrings its complaint by simply speculating on how

22   widespread the copying may be, without describing any acts or works that infringe

23   Plaintiff's Copyrighted Software." *Id.; see also Salt Optics, Inc. v. Jand, Inc.*, 2010 WL

24   4961702, at *6 (C.D. Cal. Nov. 19, 2010) (dismissing copyright claims as insufficiently

25   pleaded where complaint identified copyright registrations in its complaint, but "ma[de]

26   no attempt to identify which portions of the website or catalog [plaintiff] accuses

27   Defendants of infringing"); *Proline*, 2008 WL 11286077, at *2–3 (in copyright suit, "it

28   is objectively unreasonable for a plaintiff to refuse to identify with any specificity

whatsoever items(s) sought to be placed in issue from among an undifferentiated and undoubtedly large universe of potential designs"); *Four Navy Seals v. Assoc. Press*, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) (allegations that one of 1,800 images in defendant's social media account was owned by the plaintiff insufficient).[7]

Plaintiff's Motion and Complaint suffer from the same deficiencies.  Plaintiff alleges ownership of copyright registrations covering unspecified "text" of unidentified famousbirthdays.com "celebrity profiles" without identifying what is covered by the registrations, or which of the "tens of thousands" of profiles are included.  Beyond the seven mooted examples, it leaves CIQ and the Court to guess at what else may be at issue.[8]  As in *Synopsis*, it only speculates as to the scope of infringement.  Plaintiff does not even go as far as the plaintiffs in *Scholastic* or *Plunket* to provide a list of the works it allegedly owns.  Accordingly, Plaintiff utterly fails to plead that it owns a copyright (or registration) for the content allegedly infringed.  (*See also supra* fn.3.)

Plaintiff is also unlikely to demonstrate that the factual data CIQ allegedly copied is protectable or that CIQ infringed Plaintiff's alleged rights.  As part of the copyright infringement analysis, the Court must determine if Plaintiff owns protectable works, and then determine whether there is substantial similarity between CIQ's works and Plaintiff's work based on the "extrinsic" test to determine whether there is a similarity of ideas, and the "intrinsic" test to determine whether there is substantial similarity in the total concept and feel of the two works once unprotectable elements are removed. The Court may conduct this test at the preliminary injunction stage.  *Sony Pictures Ent., Inc. v. Fireworks Ent. Grp., Inc.*, 137 F. Supp. 2d 1177, 1185–86 (C.D. Cal. 2001), *vacated pursuant to settlement*, 2002 WL 32387901 (C.D. Cal. Nov. 5, 2002) ("To determine whether similarity exists such that a preliminary injunction should issue, the

---

[7] Cases from outside of this circuit have reached a similar result.  *See, e.g., Plunket v. Doyle*, 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001).

[8] To the extent Plaintiff relies on cases holding it sufficient to allege representative acts of infringement rather than a comprehensive listing, context is important.  Unlike cases involving two movies, for example, Plaintiff alleges infringement of thousands of unidentified biographies, each of which are presumably distinct.

1    Court conducts the objective, extrinsic test and the subjective, intrinsic test."). "The

2    intrinsic or subjective inquiry is usually reserved for the trier of fact; however, the Court

3    may properly consider it at the preliminary injunction stage because it is relevant to

4    whether Plaintiffs will ultimately prevail on the merits of their claim." *Id.* at 1184.

5         First, Plaintiff is unlikely to prevail on the merits that the factual data contained

6    in its biographies is protectable. Plaintiff argues that "the requisite level of creativity is

7    extremely low; even a slight amount will suffice." (Dkt. 8 at 12 (quoting *Feist Pubs.,*

8    *Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)).) However, while "the amount

9    of creative input … required to meet the originality standard is low, it is not negligible."

10   *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). "There must be something more

11   than a merely trivial variation, something recognizably the artist's own. *Id.* In addition,

12   the "originality requirement mandates that objective facts and ideas are not

13   copyrightable." *Id.* (citing *Baker v. Selden,* 101 U.S. 99, 102 (1879); *Feist,* 499 U.S. at

14   347). "Similarly, expressions that are standard, stock, or common to a particular subject

15   matter or medium are not protectable under copyright law." *Id.*

16        Further, Plaintiff has failed to provide the Court with anything beyond the seven

17   biographies that it allegedly owns. However, publicly available biographical facts are

18   like the compilations of judicial opinions found unprotectable in *Matthew Bender & Co.*

19   *v. West Publishing Co.*, 158 F.3d 674, 677 (2d Cir. 1998). There, West claimed

20   protection over its arrangement of "parties, courts, and dates of decisions and its

21   addition of certain information concerning counsel…." The Court found "West's

22   selection and arrangement were obvious, typical, and lack[ed] even minimal creativity."

23   Similarly, Plaintiff's selection and arrangement of celebrity biographical facts is

24   obvious and typical – evidenced also by the nearly identical celebrity profiles posted by

25   third parties (Peterson Decl., Ex. B). Plaintiff's "expression" of biographical data is

26   standard or common to the medium of celebrity biographical webpages and, thus, not

27   protectable. *See Satava*, 323 F.3d at 810 (denying injunction because jellyfish sculpture

28   was not sufficiently creative—each element was commonly used or appeared in nature).

1    Plaintiff argues that "[t]he quality and originality of the biographies has taken
2 years of investment and creativity to develop." (Dkt. 8 at 13.) This "sweat of the brow"
3 argument was rejected by the Supreme Court in *Feist*. 499 U.S. at 352–60. The
4 question is not the amount of effort Plaintiff allegedly put into creating its biographies,
5 but whether they contain anything creative and original. Plaintiff's Motion provides
6 the Court with no basis for making that determination. (*See supra* § II.D & E.)

7    *Even if* its biographies were entitled to some degree to protection, Plaintiff is still
8 unlikely to succeed on its copyright claim because it does not prove that CIQ engaged
9 in "bodily appropriation of expression or unauthorized use of substantially the entire"
10 work. *See Experian Info. Solutions, Inc. v. Nationwide Mktg Servs. Inc.*, 893 F. 3d 1176
11 (9th Cir. 2018). In *Experian*, the plaintiff had created a database of 250 million
12 consumer records compiled from various sources and alleged that defendant infringed
13 its copyright therein based on analysis showing that defendant's database of 200 million
14 records was at least a 90% match for plaintiff's name and address combinations. *Id.* In
15 affirming summary judgment for defendant, the Ninth Circuit explained: "infringement
16 cannot be based on a showing that only a part of the work has been copied. In the context
17 of factual compilations, we have held that infringement should not be found in the
18 absence of 'bodily appropriation of expression,' or 'unauthorized use of substantially
19 the entire item.'" *Id.* Because neither the copyrighted work nor the allegedly infringing
20 work was placed into evidence, no side-by-side comparison was possible. Nevertheless,
21 the Court found that, at most, defendant had only copied 80% of plaintiff's name and
22 address combinations (its database had 200 million records and plaintiff's had 250
23 million), which was "insufficient to establish bodily appropriation of Experian's work."

24    Here, Plaintiff has not provided its "database" or copyright registrations deposit
25 materials, nor has it alleged how much of its data CIQ allegedly copied. Guided by
26 *Experian*, CIQ could not have infringed Plaintiff's factual compilation because it did
27 not engage in "bodily appropriation" of Plaintiff's alleged works. *See also Ross,*
28 *Brovins & Oehmke, P.C. v. Lexis Nexis Group, a Div. Reed Elsevier Group, PLC*, 463

F.3d 478 (6th Cir. 2006) (finding no infringement where defendant allegedly copied 350 of 576 forms because "[s]ixty-one percent can hardly be considered the 'same' selection"); *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726 (8th Cir. 2002) (affirming judgment for defendant where it was alleged to infringe plaintiff's tables compiling data on local schools when at most 87% of the topics were the same, and where the formats of the tables were "quite dissimilar"). Based on the evidence in the Motion, Plaintiff's claim for infringement of its factual compilations thus fails as a matter of law.

Plaintiff's claim also fails when comparing Plaintiff's seven alleged biographies against CIQ's accused profiles. "[A] compiler may freely use the facts contained in a compilation when preparing a competing work, as long as the competing work does not exhibit the same selection or arrangement." *Experian*, 893 F.3d at 1185. CIQ did not use the same selection or arrangement as Plaintiff. As just one example:

*Plaintiff's bio
for Chelsea Yamase
(Peterson Decl., Ex. A):*





*Excerpt of CIQ's profile
allegedly infringing bio
Chelsea Yamase
(Peterson Decl., Ex. A;
see also Ex. I for other profile
comparisons)*

As shown, the selection and arrangement of the facts in the profiles are different. Plaintiff includes birthdate, birthplace, and age on the right of the page while CIQ places those facts immediately under the individual's name. Plaintiff includes a "Popularity" matrix that CIQ does not display. Plaintiff has a section of text including the headings "About," "Before Fame," "Trivia," "Family Life," and "Associated With." CIQ does not use those headings or a lengthy text section. CIQ includes categories of interest; Plaintiff does not. The only alleged similarity is in the biographical text under the generic headings "About" and "Before Fame." These significant differences show that Plaintiff is unlikely to succeed on the merits of its claim.[9]  *See Sony Pictures*, 137 F. Supp. 2d at 1195 ("In light of the Court's inability to find substantial similarity between QOS and MOZ or LR, the Court cannot find that Plaintiffs have a high likelihood of success on the merits of their copyright claims."); *see also TransWestern Publ'g Co. LP v. Multimedia Mktg. Assocs., Inc.*, 133 F.3d 773 (10th Cir. 1998) (alleged infringing telephone directory was not "virtually identical" to the plaintiff's directory where "Plaintiff's directory has two columns, defendants' three in its advertising pages. The type styles are different; the headings to the business listings are distinctive. Even accepting as true plaintiff's contention that 'numerous' ads in its directory have been copied to defendants' directory, no one would mistake defendants' directory for that of the plaintiff. Thus, at a thin level of comparison of the compilation 'as a whole' the district court's finding of no infringement must be affirmed.").

## 2.    Plaintiff is not likely to succeed on its remaining claims

Plaintiff is not likely to succeed on the merits of its CFAA claim because the alleged conduct does not violate the CFAA. Plaintiff argues that CIQ "accesses Famous

---

[9] *See also* Peterson Decl., Ex. B (comparing against third party data). These differences do not establish that Plaintiff's compilation of biographical data is sufficiently creative to afford copyright protection. Background facts are used merely to provide information about a celebrity or influencer, which is common to numerous third-party websites. *Id.* CIQ, on the other hand, has a platform that allows its customers to search for influencers to engage for marketing campaigns, requiring different types of information, displayed in a different format. *Supra* § II.A; (Kroopf Decl., ¶2)

Birthdays' website" and "is directly copying Famous Birthdays' data and displaying identical copies on CreatorIQ's platform." (Dkt. 8 at 15–16.)  However, CIQ has never engaged in such conduct (Murray Decl. ¶ 5), and Plaintiff provides no evidence that it has.  Regardless, even if CIQ copied content from Plaintiff's website (which it did not), that is *not* a violation of the CFAA.  The CFAA is an anti-hacking statute and the "Ninth Circuit has favored an interpretation of the statute that 'maintains the CFAA's focus on hacking rather than turning it into a sweeping Internet-policing mandate.'"  *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 129 (N.D. Cal. 2020) (quoting *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012) (*en banc*)).  As the court in *Brodsky* explained, accessing a publicly accessible website and scraping data from it likely does not violate the CFAA because it cannot be said that the defendant "accessed" the data "without authorization."  *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1113 (N.D. Cal. 2017), *aff'd and remanded*, 938 F.3d 985 (9th Cir. 2019), *cert. granted, judgment vacated*, 141 S. Ct. 2752 (2021) ("hiQ's circumvention of LinkedIn's measures to prevent use of bots and implementation of IP address blocks does not violate the CFAA because hiQ accessed only publicly viewable data not protected by an authentication gateway")[10]; *see also Sandvig v. Sessions*, 315 F. Supp. 3d 1, 27 (D.D.C. 2018). Notably, Plaintiff cites no decision finding a violation of the CFAA based on visiting a publicly available website.  This claim fails as a matter of law, and for similar reasons, Plaintiff fails to show likelihood of success on its state law claims (Claims 3 and 4). *See hiQ Labs, Inc*, 273 F. Supp. at 1115.

## E.   The Remaining Factors Weigh Against Entry of An Injunction

Plaintiff separately bears the burden of establishing that the balance of hardships tips it its favor and that the public interest supports the mandatory injunction.  It cannot.

---

[10] The Ninth Circuit's affirmance of this decision was vacated by the Supreme Court and the case remanded in light of *Van Buren v. U.S.*, 593 U.S. 141 S.Ct. 1648 (2021), which addresses a different issue (whether a CFAA violation occurs when one has authorization to access a computer, but then does so for an improper purpose).  The case is awaiting a new decision on remand.  However, that remand should have no impact on the unrelated conclusion that accessing a public website does not violate the CFAA.

As the court in *Zazzle II* explained in denying an injunction:

> It is not clear what additional effort Zazzle should undertake, or if that effort is reasonable or even possible. Plaintiff has not established that an injunction would have the effect of preventing further infringement by Zazzle, and therefore has not met their burden of proving that the balance of the hardships weighs in their favor. Based on this record, it would be improper to speculate what the burden of an injunction would be on Zazzle.

*Zazzle II*, 2020 WL 3871451, at *5.  Similarly, here, it is impossible to quantify the hardship to CIQ given the vague nature of the relief sought.  Plaintiff seeks to enjoin CIQ "from accessing, copying, and using Famous Birthdays' copyrighted data, including, but not limited to, proprietary biographies, rankings, images, and any other protected data obtained from Famous Birthdays' website.  This includes both in marketing materials and in its database." (Notice of Motion at 2.)  But Plaintiff has not adequately defined the nature of its copyrighted works nor the conduct CIQ engaged in that is allegedly infringing.  CIQ has addressed the marketing materials (*see infra* § IV.C) but cannot fully consider the mandatory steps it would need to take to comply with the "database" portion of such an injunction without Plaintiff first describing what in the database (to which it apparently has access) is infringing.

At the very least, it appears Plaintiff would seek to have CIQ go through its 20 million profiles, compare each against the tens of thousands of profiles Plaintiff allegedly owns (but has not provided), and ensure there is no similarity, without even considering whether any similarity is of any protected expression.  As in *Zazzle*, CIQ cannot and should not be compelled to undertake such a burdensome, undefined task.  Accordingly, the hardships tip against granting an injunction.

Plaintiff offers circular logic in its effort to show the balance of hardships tips in *its* favor – claiming to be irreparably harmed by CIQ's conduct, which it alleges CIQ was not entitled to engage in in the first place.  But irreparable harm and likelihood of success on the merits are separate prongs, and Plaintiff must separately establish that the balance of hardships tips in its favor and failed to do so.

Finally, Plaintiff fails to show that the public interest weighs in favor of an

injunction. An injunction here only impacts the parties, and not the numerous third parties that are publicly using the *very same language* Plaintiff seeks to enjoin here. (Peterson Decl. ¶ 5 & Ex. B); *see U.S. Vessel Documentation*, 2017 WL 10436076, at *5 ("Since there appear to be numerous businesses that provide the services offered by Plaintiff and Defendant, the Court concludes that a temporary restraining order in this case would not meaningfully impact anyone beyond the parties."). Because the injunction Plaintiff seeks would not meaningfully impact anyone beyond the parties, the public interest does not weigh in favor of granting an injunction.

## V.   CONCLUSION

Plaintiff is not entitled to any relief, much less the overreaching preliminary injunctive relief sought in its Motion. The Court should deny the Motion entirely.

Dated:      January 24, 2022            COOLEY LLP

                                        /s/ Bobby A. Ghajar
                                        Bobby A. Ghajar
                                        Marcus Peterson

                                        Attorneys for Defendant
                                        SOCIALEDGE, INC.