```
 1  COOLEY LLP
    BOBBY A. GHAJAR (198719)
 2  bghajar@cooley.com
    MARCUS D. PETERSON (265339)
 3  mpeterson@cooley.com
    1333 2nd Street, Suite 400
 4  Santa Monica, California 90401
    Telephone: +1 310 883 6400
 5  Facsimile: +1 310 883 6500

 6  Attorneys for Defendant
    SOCIALEDGE, INC.
 7
```

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION - LOS ANGELES

| | |
|---|---|
| FAMOUS BIRTHDAYS, LLC, <br><br>Plaintiff,<br><br>v.<br><br>SOCIALEDGE, INC., a Delaware corporation (dba CreatorIQ),<br><br>Defendant. | Case No. 2:21-cv-09562-PA-MRW<br><br>**DEFENDANT SOCIALEDGE, INC.'S MOTION TO STRIKE NEW REPLY EVIDENCE AND ARGUMENT OR IN THE ALTERNATIVE, REQUEST FOR LEAVE TO FILE SUR-REPLY**<br><br>Date: February 14, 2022<br>Time: 1:30 p.m.<br>Dept: 9A<br>Judge: Hon. Percy Anderson |

## I. INTRODUCTION

Defendant SocialEdge, Inc. dba CreatorIQ's ("CIQ") Opposition (Dkt. 24) pointed out several deficiencies in Plaintiff Famous Birthdays, LLC's ("Plaintiff" or "FB") Motion for Preliminary Injunction ("Motion"). This included the absence of evidence of infringement beyond seven long-mooted examples, the lack of evidence of irreparable injury, Plaintiff's failure to show likelihood of success on the merits of its claims, and its lack of standing due to its suspended status. Plaintiff's Reply (Dkt. 26) introduces a further declaration from its CEO, Evan Britton, making new factual allegations and attaching new evidence (Dkt. 26-6 through 26-11) that should have been included in its Motion. Almost none of it (save two paragraphs) addresses anything raised in CIQ's Opposition. If anything, the Reply acknowledges defects and shortcomings in Plaintiff's Motion and attempts to improperly fix them after the fact. The new evidence should be stricken.

The Reply also offers several new arguments that Plaintiff should have raised, if at all, in its Motion. Although these arguments are ineffective, to the extent the Court considers them, CIQ seeks leave to correct the record.

## II. LEGAL STANDARD

The Court has discretion to ignore or strike evidence introduced for the first time in a reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *see also Fofona v. Holder*, 327 F. App'x 42, 42 (9th Cir. 2009) ("We do not consider Fofona's contentions raised for the first time in his reply brief . . ."); *Rojas v. Bosch Solar Energy Corp.*, No. 18-cv-05841-BLF, 2021 U.S. Dist. LEXIS 226338, at *1-5 (N.D. Cal. Nov. 23, 2021) (sustaining objection to new evidence filed for the first time in reply because of the "potential inequities that might flow from the injection of new matter at the last round of briefing," and noting "The district court has discretion to sustain the disadvantaged party's objection to new reply evidence or, in the alternative, to permit the disadvantaged party to file a sur-reply") (*quoting Dutta*

*v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1171-72 (9th Cir. 2018)).

If the Court is inclined to consider Plaintiff's new evidence, it should grant CIQ leave to file a sur-reply to address the evidence. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond."). The Court may allow a sur-reply to be filed, "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Hill v. England*, 2005 WL 3031136, *1 (E.D. Cal. Nov. 8, 2005).

## III. ARGUMENT

### A. Plaintiff's New Reply Evidence Should Be Stricken

Paragraphs 4-20 and Exhibits F-I of Mr. Britton's supplemental declaration include new reply evidence, without any explanation as to why the evidence was not provided with the Motion. This evidence provides further description of Plaintiff's biographies, the process through which they are supposedly compiled, and some of Plaintiff's enforcement efforts, including an irrelevant domain name dispute. If Plaintiff believed this evidence supported the protectability of its biographies, it should have included it with its Motion. It cannot do so in Reply without CIQ having the opportunity to address why the new evidence does not support Plaintiff's claim that its compilation of biographical material contains protected expression. Plaintiff had the burden of establishing that its works are protectable and failed. It cannot supplement that matter now, after CIQ has pointed out the failure.

Paragraphs 6-9 and Exhibit G provide further commentary regarding the Parties' license agreement, including correspondence between the parties from 2017. Only Paragraph 9 appears to respond to anything from CIQ's Opposition – the rest should have been included in the Motion. Because it was not, it should be stricken.

Paragraph 10-15 and Exhibits H and I include Mr. Britton's speculation as to why he believes CIQ is infringing Plaintiff's rights and two new alleged instances of

infringement. This is problematic for at least two reasons. First, if Plaintiff wanted CIQ and the Court to evaluate other alleged instances of copying, it should have included it in the Motion. As CIQ explained in its briefing, it repeatedly sought notice of any materials Plaintiff claimed to own and all CIQ material that is accused in the Motion. Rather than respond in good faith, it held them until its Reply, with no explanation given as to why it did so. Second, CIQ is unsure where the images in Exhibit I came from. It has reviewed its platform, which shows *different* profiles for those individuals, as explained below at page 5.

Paragraphs 16-20 is Mr. Britton's new commentary as to Plaintiff's harm. Although it is speculative and does not refer to any *actual* evidence, these allegations should have been included in the Motion, not Reply.

Courts regularly hold that a party's proffer of new evidence in reply is improper. For instance, in *Aardwolf LLC v. Aardwolf Indus. Sole Member LLC*, the court declined to consider reply evidence similar to that proffered here. "For the first time on reply, Benjamen cites to four exhibits for the proposition that 'Plaintiff and Defendants have a history of business competition, and Plaintiff has a history of engaging in bad acts against Defendants.' The Court need not consider evidence proffered for the first time on reply and declines to do so here." 2015 U.S. Dist. LEXIS 199813, at *7 n.10 (C.D. Cal. Nov. 12, 2015) (internal citation omitted). Other courts have held the same. *See, e.g.*, *Iconix, Inc. v. Tokuda*, 457 F.Supp.2d 969, 976 (N.D. Cal. 2006) (sustaining an objection to new evidence and argument submitted with a plaintiff's reply); *Docusign, Inc. v. Sertifi, Inc.*, 468 F.Supp.2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments and evidence presented for the first time in Reply are waived"); *see also Gutierrez v. 78th Judicial Dist. Court*, No. 1:07-cv-1268, 2009 U.S. Dist. LEXIS 45215, 2009 WL 1507415, *1 (W.D. Mich. May 29, 2009) ("The opposing party should not have to incur the cost and effort of additional filings — a motion for leave to file a sur-reply, and the sur-reply itself — because the movants deliberately, or more likely inadvertently,

held back part of their case").

For these reasons, the Court should strike and not consider Paragraphs 4-8 and 10-20 and Exhibits F-I to the Supplemental Britton Declaration (Dkt. 26-6 through 26-11) or any portion of the Reply brief that relies on those statements.[1]

### B. If the Court is Inclined to Consider Any of the New Reply Evidence or Argument, CIQ Requests Leave to Address Them Here or In a Formal Five-Page Sur-reply

#### 1. The New Reply Evidence

None of the new Reply evidence demonstrates that Plaintiff is entitled to a preliminary injunction. It is conclusory, speculative, and still falls short of the type of evidence that might establish irreparable injury under relevant authorities (cited in CIQ's Opposition and largely ignored in Plaintiff's Reply). However, if the Court is inclined to consider the Supplemental Britton Declaration, the Court should grant CIQ leave to file a sur-reply to respond fully to those new arguments and evidence, as previewed below.

Mr. Britton claims that "CreatorIQ has tried repeatedly and continuously to use Famous Birthdays' data." Dkt. 26-6 at ¶7. In support, Mr. Britton cites a single email chain (Exhibit G), containing two emails from CIQ's Mr. Vaks. That email chain fails to demonstrate any alleged "repeated" and "continuous" efforts by CIQ to use Plaintiffs' data. Further, a plain reading shows that the email does not say what Mr. Britton suggests it does, much less a plot to copy Plaintiff's data.

Plaintiff argues that its biographies "follow a five-part format," (Dkt. 26 at 4:21), citing to Mr. Britton's declaration, even though his declaration says no such thing. Since this "five-point format" is something that Plaintiff claims as original, this undermines its copyright infringement claim: ***it does not allege that CIQ copied the alleged five-part format***. A comparison of the parties' biographies and profiles (Dkt. 24-16) demonstrates as much.

---

[1] The Supplemental Britton Declaration is also subject to CIQ's evidentiary objections, served concurrently herewith.

Mr. Britton newly provides two screenshots with additional instances of alleged infringement, without explanation of how he acquired them or why they were not submitted with the Motion. Dkt. 26-6 at ¶15, Ex. I. It is unclear when he obtained those images, but they do ***not*** reflect CIQ's profiles for the individuals as they appeared at the time Plaintiff filed its Reply. CIQ is prepared to put in evidence showing as much if given leave to file a sur-reply.

Mr. Britton newly details his emails with one of CIQ's clients, apparently to offer *post hoc* corroboration of what Plaintiff argued in its Motion. Dkt. 26-6 at ¶11, citing an exhibit to his original declaration. Again, Mr. Britton twists the email, claiming that CIQ's customer said it "had observed duplication of Famous Birthdays' biographies on the CreatorIQ platform." **That is not at all what the email says**. Instead, it states, "If I'm not mistaken, I believe you two have built a partnership where some of your info has been piped into their SaaS?". Dkt. 8-9. Far from evidencing any duplication, it shows that the sender mistakenly believed the parties had a partnership through which CIQ used "some of [Plaintiff's] info." The individual did not state the basis of that belief (e.g. knowledge of the 2018 agreement), or indicate he saw any of Plaintiff's biographies in CIQ's database. Apparently, Mr. Britton never followed up to ascertain what the statement meant (and if he did, he has not provided any further communications to the Court).

Mr. Britton newly contends that he communicated with CIQ about "retention of Famous Birthdays bios on its website, even after the License Agreement terminated," citing to an October 2018 email chain. Dkt. 26-6 at ¶11. If anything, this further proves that Plaintiff delayed over three years before filing suit or seeking an injunction. He was apparently aware of content he now considers to be infringing, but did not take action until three years later.

Finally, Plaintiff implies that CIQ admitted that it is "scraping" data from Plaintiff's website. Dkt. 26 at 1:4, 6:5-6, 7:23, and 8:2 (citing Supp. Britton Decl., Ex. H). CIQ admitted no such thing, and in fact specifically denied that was the case.

Dkt. 24-18 at ¶5. The email cited by Plaintiff, written in 2018, only states that CIQ had taken bios from Google and Instagram for two individuals (since Instagram has an API that allows developers to obtain Instagram account information – see https://developers.facebook.com/docs/instagram-basic-display-api/ CIQ could not "scrape" that data). CIQ also advised Plaintiff that the same language appears on "a dozen other websites." This new evidence does not prove that CIQ admits to scraping data from Plaintiff. If anything, it shows that Plaintiff's so-called enforcement efforts (Dkt. 26-6 at ¶5) are not working, given that years later, its alleged biographies continued to appear on dozens of other websites (Dkt. 24-15).

In short, if the Court will not grant the Motion to Strike, CIQ asks that it have leave to address these new statements and exhibits and provide further context and evidence to refute them fully.

### 2.   The New Reply Arguments

CIQ seeks leave to address new legal arguments and case citations raised in the Reply brief, as well as to correct Plaintiff's apparent misinterpretation of some of the cases cited by CIQ.

Plaintiff newly claims that it is not required to have registered copyrights to bring this claim or seek an injunction, appearing to argue for the first time that the court has jurisdiction over unregistered works – citing to a 2010 decision. Dkt. 26 at 3. That decision related only jurisdiction, not § 411(a)'s registration requirement. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 171, 130 S. Ct. 1237, 1249, 176 L. Ed. 2d 18 (2010). The Supreme Court has since held that a copyright registration is required prior to filing suit. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887, 203 L. Ed. 2d 147 (2019) (emphasis added).

Plaintiff cites to a new case to support its claim that it has suffered irreparable harm: *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 975 (C.D. Cal. 2016), aff'd, 869 F.3d 848 (9th Cir. 2017), which it claims is "instructive" (Dkt. 26 at 11). Plaintiff should have cited this case in its Motion to allow CIQ the chance to

explain why it is factually distinguishable. There, a Senior Vice President for one of the Plaintiffs prepared an extensive declaration describing the manner in which films are distributed, the license fees that are negotiated in part based on a window of exclusivity, and the harm to those agreements presented by the defendant's platform that streamed the films to its users without authorization. The Court noted that "Plaintiffs have offered [a]… sworn declaration stating that unlicensed services like VidAngel's had been specifically referenced as a concern during negotiation meetings with licensees." *Id.* at 976. This is incomparable to the scant evidence here.

Plaintiff cites a new case to support its Computer Fraud and Abuse Act claim – a 2013 decision it claims is "instructive" that deals with the revocation of authorization to access a public website. Dkt. 26 at 9 (citing *Craigslist Inc. v. 3Taps Inc.*, 964 F. Supp. 2d 1178 (N.D. Cal. 2013)). Though not important enough to cite in its Motion, the case is inapplicable because, here, Plaintiff puts forth no evidence that it ever instructed CIQ not to visit its publicly-accessible website.

Finally, Plaintiff cites to a new case to argue that it is likely to succeed on its California Comprehensive Computer Access and Fraud Act claim. Dkt. 26 at 9, citing *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007). It newly claims that California offers a lower standard than the Federal Computer Fraud and Abuse Act. Again, Plaintiff offers no explanation why it did not cite this case in its Motion. But contrary to Plaintiff's argument, the case does not distinguish between "without authorization" and "without permission." To the contrary, it suggests the two mean the same thing: "Penal Code section 502 prohibits knowing access, followed by *unauthorized* (i.e., "without permission") taking, copying, or use of data…." *Id.* (emphasis in original). In any event, the case does not undermine the holding in *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1113 (N.D. Cal. 2017) (Dkt. 24 at 23) that Plaintiff is unlikely to succeed on its state law computer fraud claim for the same reason it is unlikely to succeed on its federal claim.

## IV. CONCLUSION

For the foregoing reasons, the Court should strike Paragraphs 4-8 and 10-20 and Exhibits F-I of the Supplemental Britton Declaration and any portions of the Reply relying on them. If the Court considers any of the evidence or new arguments, it should consider CIQ's brief response herein, or grant leave for CIQ to submit a five-page sur-reply formally addressing the factual inaccuracies, new cases, and misguided legal analysis offered in the Reply.

Dated: February 7, 2022                COOLEY LLP

By:/s/ Bobby Ghajar
   Bobby A. Ghajar
   Marcus D. Peterson

Attorneys for Defendant
SOCIALEDGE, INC.