1  CHRISTOPHER D. BEATTY (State Bar No. 266466)
   cbeatty@millerbarondess.com
2  MURAD SALIM (State Bar No. 342747)
   msalim@millerbarondess.com
3  MILLER BARONDESS, LLP
   1999 Avenue of the Stars, Suite 1000
4  Los Angeles, California 90067
   Telephone:  (310) 552-4400
5  Facsimile:   (310) 552-8400
6
7  Attorneys for Plaintiff
   FAMOUS BIRTHDAYS LLC
8
              **UNITED STATES DISTRICT COURT**
9
    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
10
11 FAMOUS BIRTHDAYS LLC,                    **CASE NO. 2:21-cv-09562**
12            Plaintiff,                    **PLAINTIFF'S OPPOSITION TO**
13                                          **DEFENDANT'S MOTION TO**
                                            **DISMISS**
      v.
14
   SOCIALEDGE, INC., a Delaware            Assigned to Hon. Percy Anderson,
15 corporation (dba CreatorIQ),            Crtrm. 9A and Magistrate Judge
                                           Michael R. Wilner, Crtrm. 550
16            Defendant.
17                                         Hearing Date:  April 18, 2022
                                           Time:          1:30 p.m.
18                                         Courtroom:     9A
19                                         Action Filed:  December 9, 2021
20                                         Trial Date:    None Set
21
22
23
24
25
26
27
28

558859.1

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................. 3

    A.   Famous Birthdays' Business ................................................... 3

    B.   CreatorIQ's Business ............................................................... 4

    C.   Famous Birthdays Licenses The Works To CreatorIQ ........................ 5

    D.   CreatorIQ Unlawfully Uses Famous Birthdays' Copyrighted Works ..................................................................................... 5

III.  PROCEDURAL BACKGROUND ...................................................... 7

IV.   LEGAL STANDARD ......................................................................... 7

V.    ARGUMENT ...................................................................................... 7

    A.   Famous Birthdays Has Pled A Valid Copyright Claim .......................... 7

        1.   Famous Birthdays' Allegations of the Works and Infringement Are Sufficient ................................................ 7

        2.   CreatorIQ Uses Inapposite Case Law to Fabricate a Heightened Pleading Standard ........................................... 11

    B.   The Written Biographies Are Subject To Standard Copyright Protections ........................................................................... 13

    C.   Famous Birthdays Has Pled A Valid CFAA Claim ............................. 16

    D.   Famous Birthdays Has Pled A Valid CAFA Claim ............................. 17

    E.   Famous Birthdays Has Pled A Valid Breach Of Contract Claim ........ 18

    F.   Famous Birthdays Has Pled A Valid UCL Claim ............................... 19

    G.   Famous Birthdays Is Entitled To Statutory Damages And Attorneys' Fees ................................................................. 20

    H.   Alternatively, Leave To Amend Should Be Granted ........................... 23

VI.   CONCLUSION ................................................................................. 23

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

## <u>FEDERAL CASES</u>

*ABS Entm't, Inc. v. CBS Corp.*,
    908 F.3d 405 (9th Cir. 2018) .......................................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 7

*ATPAC, Inc. v. Aptitude Sols., Inc.*,
    2010 WL 1779901 (E.D. Cal. Apr. 29, 2010) ................................................ 21

*Authors Guild v. Google, Inc.*,
    804 F.3d 202 (2d Cir. 2015) ............................................................................ 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 7

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................ 17

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ......................................................................... 23

*Enesco Corp. v. Price/Costco Inc.*,
    146 F.3d 1083 (9th Cir. 1998) ......................................................................... 7

*Etereo Spirits, LLC v. James R. Ling*,
    2021 WL 3914256 (C.D. Cal. July 15, 2021) ........................................... 10, 13

*Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*,
    893 F.3d 1176 (9th Cir. 2018) ......................................................................... 14

*Facebook, Inc. v. ConnectU LLC*,
    489 F. Supp. 2d 1087 (N.D. Cal. 2007) .......................................................... 18

*Facebook, Inc. v. Power Ventures, Inc.*,
    2009 WL 1299698 (N.D. Cal. May 11, 2009) ...................................... 8, 9, 11

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ......................................................................... 16

*Gladwell Gov't Servs., Inc. v. County of Marin*,
    265 F. App'x 624 (9th Cir. 2008) ............................................................... 8, 9

*Great Minds v. Office Depot, Inc.*,
    945 F.3d 1106 (9th Cir. 2019) ......................................................................... 7

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985) ........................................................................................ 14

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

ii

*Himelsein v. LS1 LLC*,
    2019 WL 13037049 (C.D. Cal. Feb. 21, 2019) ................................................22

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    273 F. Supp. 3d 1099 (N.D. Cal. 2017),
    *aff'd and remanded*, 938 F.3d 985 (9th Cir. 2019),
    *cert. granted, judgment vacated*, 141 S. Ct. 2752 (2021) ........................ 16, 17

*Imageline Inc. v. Tacony Corp.*,
    2009 WL 10676056 (C.D. Cal. June 16, 2009) ........................................ 10, 12

*Lixenberg v. BioWorld Merch., Inc.*,
    2016 WL 7469666 (C.D. Cal. Feb. 1, 2016) ...............................................21

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
    922 F.3d 946 (9th Cir. 2019) ...........................................................................8

*Mid Am. Title Co. v. Kirk*,
    991 F.2d 417 (7th Cir. 1993) ...........................................................................8

*Niantic, Inc. v. Global++*,
    2020 WL 8620002 (N.D. Cal. Sept. 2, 2020) ..............................................21

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) .........................................................................23

*Palmer Kane LLC v. Scholastic Corp.*,
    2013 WL 709276 (S.D.N.Y. Feb. 27, 2013) ...............................................12

*Paramount Pictures Corp. v. Axanar Prods., Inc.*,
    2016 WL 2967959 (C.D. Cal. May 9, 2016) ...............................................13

*Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*,
    832 F. Supp. 1378 (C.D. Cal. 1993)..............................................................22

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    167 F. Supp. 2d 1114 (C.D. Cal. 2001)..............................................8, 10, 13

*Plunket v. Doyle*,
    2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ...............................................12

*Por Los Rios, Inc. v. Lions Gate Entm't, Inc.*,
    2014 WL 12605374 (C.D. Cal. May 21, 2014) ...........................................22

*Sierra View Local Health Care Dist. v. Influence Health, Inc.*,
    2016 WL 454727 (E.D. Cal. Feb. 5, 2016) .................................................19

*Sloane v. Karma Enters., Inc.*,
    2008 WL 11340286 (C.D. Cal. Nov. 3, 2008) .............................................10

*Synopsys, Inc. v. ATopTech, Inc.*,
    2013 WL 5770542 (N.D. Cal. Oct. 24, 2013)..............................................12

*TVB Holdings USA Inc. v. Enom Inc.*,
    2014 WL 12581778 (C.D. Cal. Jan. 6, 2014) ........................................ 11, 12

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

558859.1

iii

*Van Buren v. United States*,
  593 U.S. __, 141 S. Ct. 1648, 210 L. Ed. 2d 26 (2021) ..................................17

*Zimmerman v. City of Oakland*,
  255 F.3d 734 (9th Cir. 2001) ................................................................................7

**STATE CASES**

*Oasis W. Realty, LLC v. Goldman*,
  51 Cal. 4th 811 (2011) .........................................................................................18

**FEDERAL STATUTES**

17 U.S.C. § 102(a)(1) ..................................................................................................13

17 U.S.C. § 103(b) .......................................................................................................13

17 U.S.C. § 410(c) .......................................................................................................10

17 U.S.C. § 412 ............................................................................................................20

*Craigslist Inc. v. 3Taps Inc.*,
  964 F. Supp. 2d 1178 (N.D. Cal. 2013) ............................................................16, 17

*Satava v. Lowry*,
  323 F.3d 805, 810 (9th Cir. 2003) ......................................................................13, 14

**FEDERAL RULES**

Fed. R. Civ. P. 15 .......................................................................................................23

Fed. R. Civ. P. 8 ...........................................................................................................7

Fed. R. Civ. P. 8(a)(2) .................................................................................................7

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

iv

# I.   **INTRODUCTION**

Plaintiff Famous Birthdays ("Famous Birthdays" or "Plaintiff") is an online search engine that provides updated original profiles for celebrities and influencers in a simple and entertaining format. Each Famous Birthdays biography is originally written in a unique style. The strength and quality of these biographies are a significant competitive advantage that has taken years of investment, creativity, and hard work to develop and perfect. Famous Birthdays has registered copyrights in all of its bios, and they are each subject to protection under copyright law.

Defendant SocialEdge, Inc. d/b/a CreatorIQ ("SocialEdge" or "CreatorIQ") is a marketing platform that, for a fee, provides its customers an interface for searching and discovering influencers and connecting with them in a secure network. Prominently featured in the information CreatorIQ sells to its customers are brief influencer bios. CreatorIQ admits that rather than spending the time and resources to draft its own bios, it is instead "just scraping" bios from other websites.

Famous Birthdays is a victim of CreatorIQ's scraping activities, as well as other acts of infringement. Famous Birthdays has identified numerous instances where CreatorIQ has copied its bios, often verbatim. The bios have been used in marketing materials, on the CreatorIQ website, and in its customer-facing database. This plagiarism is actionable, and the theories of liability are straightforward. CreatorIQ's arguments otherwise fail.

First, the motion to dismiss the copyright claim is meritless. It is established that copyright claims need not be pled with particularity. Even where plaintiffs have presented threadbare allegations of ownership and only speculation of infringement, motions to dismiss have been denied. As a result, the allegations here far surpass what is required. Famous Birthdays has identified what is copyrighted (its written biographies), attached the registrations, and included significant detail about CreatorIQ's infringing activities.

In response, CreatorIQ, primarily using a default judgment case, tries to

Miller Barondess, LLP
Attorneys at Law
1999 Avenue of The Stars, Suite 1000  Los Angeles, California 90067
Tel: (310) 552-4400   Fax: (310) 552-8400

concoct a heightened pleading standard that does not exist. There is zero support for CreatorIQ's suggestion that every instance of infringement must be identified at the pleadings stage. And this is not a situation where it is unclear what material is allegedly copyrighted, rendering CreatorIQ's case law inapplicable. Famous Birthdays has plainly alleged that each of its original bios is afforded copyright protection.

Next, CreatorIQ attempts to force Famous Birthdays into meeting an infringement standard that only applies to compilations of facts, like lists of phone numbers where each number would not be subject to copyright protection on their own but together they are protected. Although the Motion should still be denied even if this standard were to apply (as, assuming arguendo, that the bios are "merely" a compilation of facts, the act of deciding which facts to include, which to exclude, and compiling the same in a unique order, itself merits copyright protection), it does not apply because each bio is originally written prose independently qualifying for copyright protection. That the bios have been compiled together does not somehow make them less protected than they would be standing alone.

Second, with respect to both Famous Birthdays' Computer Fraud and Abuse Act ("CFAA") and California Comprehensive Computer Access and Fraud Act ("CAFA") claims, Famous Birthdays has pled that CreatorIQ knowingly accessed its computer networks and, without permission, obtained its data, which it is now using to further its business. Indeed, CreatorIQ concedes publicly that part of its business model is scraping other companies' websites to steal their data. Under the applicable case law, these allegations are sufficient. In particular, the legal standard for the CAFA claim is more lenient than the standard for the CFAA claim—a difference CreatorIQ glosses over—and there is therefore no credible argument that this claim is not well-pleaded.

Famous Birthdays' breach of contract claim is also straightforward. The

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

contract between Famous Birthdays and CreatorIQ was for Famous Birthdays to provide its data, including written biographies, to CreatorIQ in exchange for money. The contract provided that CreatorIQ had to cease using all of Famous Birthdays' data upon termination. Famous Birthdays provided the data, the contract was thereafter terminated, and CreatorIQ did not cease using the data.

Lastly, CreatorIQ's argument that statutory damages and attorneys' fees for its copyright violations are not permitted also fails because Famous Birthdays has alleged significant infringement of its copyrights that post-dates its earliest copyright registration, such that any bar on statutory damages and attorneys' fees, which applies to pre-registration infringement, does not apply here. Further, CreatorIQ's argument that the continuous infringement doctrine applies here is premature and out of lock-step with applicable case law. At a minimum, this argument raises fact issues not suited for determination at this stage of the proceeding.

Accordingly, the Motion should be denied in its entirety. Alternatively, leave to amend is appropriate.

## II.   FACTUAL BACKGROUND

### A.   Famous Birthdays' Business

Famous Birthdays' website is an intuitive online search engine that provides access to regularly updated, originally written profiles of celebrities and influencers, presented in a simple and entertaining format. (Dkt. No. 39 ("FAC") ¶ 17.) Famous Birthdays began writing original celebrity profiles in 2012, and has invested millions of dollars to develop and maintain its database of celebrity and influencer profiles. (*Id*. ¶ 18.) Famous Birthdays' original, copyrighted biographies (the "Works") are the backbone of its service, and have taken a massive investment of time, effort, and resources to develop. (*Id*. ¶¶ 5, 19.) The high quality of those biographies is what separates Famous Birthdays from its competitors. (*Id*. ¶ 20.) Specifically, Famous Birthdays' staff expends considerable creative effort to ensure

3

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

that the biographies have a consistent voice, framing, and level of quality, and that they are easy to read, entertaining, and relevant to its readers.  (*Id.*)  This includes understanding which details about the subject are salient, which are fun, what can be omitted, what should be highlighted, and writing it all in a way that is approachable, entertaining, and snappy.  (*Id.*)

Famous Birthdays' efforts have been successful, as it has grown to up to 25 million monthly unique users.  (*Id.* ¶ 21.)  Its business includes partnership with third parties to license portions of the Works and associated proprietary data.  (*Id.* ¶ 18.)  It registered copyrights in its original biographies in October 2018, October 2021, and February 2021, and supplemented the October 2018 registration in February 2022.  (*Id.* ¶ 22 & n.1.)  The Terms of Use of its website inform users that its "platform contains copyrighted material including, but not limited to, text and video."  (*Id.* ¶ 23 & n.2.)

**B.    CreatorIQ's Business**

CreatorIQ launched in 2014 and provides customers with an interface for searching and discovering influencers (Creator Core), connecting them in a secure network (Creator Connect), and launching promotional campaigns with influencers (Campaign Workflows), among other tools.  (FAC ¶ 25.)  A meaningful component of its service is providing short biographies for hundreds of thousands of profiles available on its database.  (*Id.*)  These biographies are featured in CreatorIQ's marketing materials and help it attract customers.  (*Id.*)  They are also perhaps the most important way that CreatorIQ's customers can search for, browse, review, and consider influencers they want to connect with on CreatorIQ's platform.  (*Id.*)  CreatorIQ publicly concedes that its biographies are not its own original works, but are obtained from others, including scraping other websites, such as Famous Birthdays' website, and copying their contents.  (*Id.* ¶ 26.)

CreatorIQ has grown rapidly and has more than two hundred employees, as well as offices in the United States and Europe.  (*Id.* ¶ 24.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

C.    **Famous Birthdays Licenses The Works To CreatorIQ**

CreatorIQ first approached Famous Birthdays in 2017 to try and license its data and biographies for use on CreatorIQ's platform.  (FAC ¶ 27.)  In an email chain involving CreatorIQ's CEO, Famous Birthdays declined, noting that it had not syndicated any of its data or biographies to any third party at that time.  (*Id*.) Famous Birthdays became more receptive to licensing its biographies and data; and CreatorIQ's CEO, Igor Vaks, even sent a mock-up of how Famous Birthdays' biographies could be integrated with CreatorIQ's platform.  (*Id*.)

The parties came to an agreement; and, on April 23, 2018, Famous Birthdays entered into a license agreement with CreatorIQ (the "License Agreement"), wherein Famous Birthdays provided partial access to its database of celebrity profiles and associated data, including the "About" section of its biographies, under a limited license for an introductory cost of $3,000 per month, to escalate after the first year to $10,000 per month.  (*Id*. ¶ 28.)  The License Agreement was clear that upon termination, CreatorIQ would remove all Famous Birthdays material from its platform, and that Famous Birthdays would retain "full ownership" of its material. (*Id*. ¶ 30.)  The License Agreement was explicit, stating that "it's understood that If/when the agreement ends, any and all Famous Birthdays data and other references to Famous Birthdays would be removed from the CreatorIQ platform."  (*Id*. ¶ 44.)

Famous Birthdays performed and provided the data, including its written biographies, to CreatorIQ.  (*Id*. ¶ 46 ("CreatorIQ has wrongfully continued to use data from Famous Birthdays *that it was provided as part of the License Agreement*." (emphasis added).)  CreatorIQ terminated the License Agreement after four months, but continues to use Famous Birthdays' written biographies, without paying for them.  (*Id*. ¶¶ 45-46.)

D.    **CreatorIQ Unlawfully Uses Famous Birthdays' Copyrighted Works**

On June 8, 2021, Famous Birthdays discovered that CreatorIQ was using the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   Works, despite Famous Birthdays' copyrights and the termination of the License

2   Agreement.  Famous Birthdays was pitching Famous Birthdays Pro, an offering

3   where it licenses select data to third parties, to Dentsu Inc. (a global advertising

4   firm).  (FAC ¶ 33.)  Dentsu emailed Famous Birthdays, stating it had observed

5   duplication of Famous Birthdays' material on the CreatorIQ platform, such that it

6   believed Famous Birthdays and CreatorIQ had partnered together: "we've been

7   using you both for quite some time and love the experience so far."  (*Id.*)  This

8   statement led Famous Birthdays to investigate and discover CreatorIQ's blatant

9   infringement of its copyrighted materials.  (*Id.*)

10      Famous Birthdays has discovered that CreatorIQ's marketing materials show

11  Famous Birthdays' Works, including copied-and-pasted biographies, which are

12  promoted as belonging to CreatorIQ.  (*Id.* ¶ 37.)  This includes the biographies of

13  Jacob Riglin, Chelsea Yamase, Lauren Bullen, J.D. Witherspoon, and Daz Black.

14  (*Id.* ¶¶ 37-38.)  CreatorIQ is also copying and displaying Famous Birthdays' Works

15  in its subscriber database, hidden behind a login interface.  (*Id.* ¶ 39.)  This includes

16  biographies for Exploring with Josh, Brad Lemon, Cristiano Ronaldo, and Chlore

17  Flower.  (*Id.* ¶¶ 39-40.)

18      The full extent of CreatorIQ's infringement has not yet been determined

19  because much of its activities are behind a paywall.  (*Id.* ¶ 35.)  However, based on

20  communications from Dentsu, the widespread use of Famous Birthdays' Works in

21  CreatorIQ's marketing materials, and the amount of infringement that can be

22  discovered without even getting behind CreatorIQ's paywall for full access to its

23  platform, it is apparent that Famous Birthdays' biographies are being used at scale

24  throughout CreatorIQ's platform.  (*Id.*)

25      When confronted with its wrongdoing, CreatorIQ has claimed to remove

26  some of the offending data—but only when Famous Birthdays discovered an

27  unlawful use and brought it to their attention.  (*Id.* ¶ 36.)  However, CreatorIQ has

28  purported to remove such data, only to then turn around and use it again.  (*Id.*)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   Other times, it will remove the data from some materials but not others.  (*Id.*)

2   Worse, CreatorIQ has taken the position that it is simply unable to identify and

3   remove all instances in which Famous Birthdays' data is being unlawfully used.

4   (*Id.*)

5   **III.   PROCEDURAL BACKGROUND**

6          This case was filed on December 9, 2021.  (Dkt. No. 1.)  Pursuant to a

7   stipulation of the parties, the FAC was filed on February 28, 2022.  (Dkt. No. 39.)

8   Following meet and confer efforts, the Motion to Dismiss was filed on March 14,

9   2022, set for hearing on April 18, 2022.  (Dkt. No. 38.)

10  **IV.   LEGAL STANDARD**

11         Rule 8 requires a complaint to set forth a "short and plain statement of the

12  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

13  plaintiff meets this requirement by asserting well-pled allegations showing a

14  "plausible" claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 8

15  does not require "detailed factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

16  (2009) (quoting *Twombly*, 550 U.S. at 555).

17         In ruling on a motion to dismiss under Rule 12(b)(6), "[a]ll allegations of

18  material fact in the complaint are taken as true and construed in the light most

19  favorable to plaintiff."  *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th

20  Cir. 1998); *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

21  **V.   ARGUMENT**

22       **A.   Famous Birthdays Has Pled A Valid Copyright Claim**

23         "A valid claim for copyright infringement requires '(1) ownership of a valid

24  copyright, and (2) copying of constituent elements of the work that are original.'"

25  *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (citation

26  omitted).

27              **1.   Famous Birthdays' Allegations of the Works and**

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

<u>**Infringement Are Sufficient**</u>

"Copyright claims need not be pled with particularity." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001); *accord Facebook, Inc. v. Power Ventures, Inc.*, 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009) (quoting *Perfect 10*, 167 F. Supp. 2d at 1120). A plaintiff is not required to state "every copyright relied on, every individual [copyrighted work] that is being infringed, every [specific instance of infringement], or the dates of any infringement." *Perfect 10*, 167 F. Supp. 2d at 1120. In fact, "complaints simply alleging present ownership by plaintiff, registration in compliance with the applicable statute and infringement by defendant have been held sufficient under the rules." *Id.* (citing *Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 421 n.8 (7th Cir. 1993)). The Ninth Circuit has further clarified that copyright plaintiffs are "not required to include . . . a complete deposit [copy], or registration materials . . . to plausibly allege ownership." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019).

Relying on this minimal pleading standard, courts in the Ninth Circuit routinely deny motions to dismiss copyright claims where the allegations are far less robust than what is before the Court here.

*Gladwell Government Services, Inc. v. County of Marin*, 265 F. App'x 624 (9th Cir. 2008), is instructive. There, the plaintiff alleged it held copyright ownership in "schedules" used by Marin County. *Id.* at 625-26. Marin County argued the schedules were works for hire, per the terms of a contract between the parties and that any copyrights obtained prior to entering into that contract were transferred to Marin County as party of the contract. *Id.* The plaintiff countered that it did own copyrights to pre-contract work, which it termed "Pre-existing Materials," and that it never transferred copyright ownership of those materials. *Id.* The district court granted the motion to dismiss. *Id.* at 627.

On appeal, the Ninth Circuit was critical of the specificity of the complaint

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

and the theory of liability: "It is unclear what, if anything, comprises the Pre–Existing Materials, and whether the Pre–Existing Materials or the Marin Schedules are, in fact, copyrightable—that is, whether they involve the requisite 'minimal degree of creativity' necessary for copyright protection." 265 F. App'x at 626 (citation omitted). It remarked that "it is far from evident that [plaintiff] has a legitimate claim. The record is simply too undeveloped to make that conclusion." *Id*. Amidst this skepticism, the Ninth Circuit determined the plaintiff "stated a claim sufficient to avoid a Rule 12(b)(6) dismissal" and reversed the district court: "Our holding simply is that Gladwell has standing to sue and its complaint survives the minimal requirements of Rule 12(b)(6)." *Id*. at 627.

Similarly, in *Power Ventures*, Facebook filed suit for copying portions of its website. *Power Ventures*, 2009 WL 1299698, at *1. Defendants moved to dismiss on the ground that "Facebook's copyright allegations are deficient because it is unclear which portions of the Facebook website are alleged to have been copied" and that "there are significant portions of the website that are not protected by copyright because Facebook does not hold any rights to content posted by users." *Id*. At *3. Facebook responded "that it need not define the exact contours of the protected material because copyright claims do not require particularized allegations." *Id*.

The district court denied the motion to dismiss because "Facebook need not allege the exact content that Defendants are suspected of copying at this stage of the proceedings" as "[t]here is no requirement that copyright claims must be pled with particularity." 2009 WL 1299698, at *4. The district court also rejected arguments that Facebook's website was too voluminous and thus the claim should have been pled with more particularity because "Facebook owns the copyright to any page within its system, including the material located on those pages besides user content, such as graphics, video and sound files. . . . Defendants need only access and copy one page to commit copyright infringement." *Id*.; *see Imageline Inc. v. Tacony*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   *Corp.*, 2009 WL 10676056, at *2 (C.D. Cal. June 16, 2009) (denying motion to

2   dismiss copyright claim where plaintiff did "not include the dates of the alleged

3   infringement, the titles of the [infringed] images, or the registration numbers of the

4   copyrights at issue," and holding it sufficient that plaintiff "alleged that it owns

5   certain copyrights and that [defendant] has infringed those copyrights," alongside

6   attachments of allegedly infringing images and the address of the website where the

7   copies were discovered); *Etereo Spirits, LLC v. James R. Ling*, 2021 WL 3914256,

8   at *6-7 (C.D. Cal. July 15, 2021) (denying motion to dismiss because the complaint

9   "identifies a set of photographs, videos, and other intellectual property, [and thus]

10  sufficiently notifies Defendants 'as to the type of infringing conduct and the source

11  of the claims'" (quoting *Perfect 10*, 167 F. Supp. 2d at 1120)).

12      Against this backdrop, Famous Birthdays has more than sufficiently alleged a

13  plausible claim of copyright infringement.  Famous Birthdays has alleged that its

14  "copyrighted material" consists of "tens of thousands of celebrity and influencer

15  profiles (the 'Works')."  (FAC ¶ 5.)  The FAC identifies the text on its website as

16  copyrighted material.  (*Id.* ¶ 23.)  Famous Birthdays has furthered alleged that it

17  "registered the copyrights in its original biographies with the United States

18  Copyright office in October 2018, October 2021, and February 2022" and that the

19  2018 and 2021 registrations are for Famous Birthdays' complete collection of

20  written biographies.  (*Id.* ¶ 22.)  In fact, the allegations relating to registration

21  provide Famous Birthdays with a presumption of copyrightability.  *See* 17 U.S.C.

22  § 410(c); *Sloane v. Karma Enters., Inc.*, 2008 WL 11340286, at *3 (C.D. Cal. Nov.

23  3, 2008) (relying on registration to presume copyrightability).  The biographies are

24  all publicly viewable on Famous Birthdays' website.  (FAC ¶¶ 17, 23.)

25      And even though it is not required to do so at this stage of the proceeding,

26  Famous Birthdays alleges in detail acts of infringement by CreatorIQ.  As alleged

27  and demonstrated in the FAC, "[t]he biographies that CreatorIQ displays in its

28  website and marketing materials are *literally* identical to Famous Birthdays'

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

copyrighted Works . . . ." (*Id.* ¶ 37 (emphasis added).) The FAC lists nine
examples where CreatorIQ has copied the Famous Birthdays' biographies word-for-
word. (*Id.* ¶¶ 35-43.) Famous Birthdays has far exceeded the minimum pleading
standard.

## 2. <u>CreatorIQ Uses Inapposite Case Law to Fabricate a Heightened Pleading Standard</u>

CreatorIQ has not presented any cases where a motion to dismiss was granted
on similar allegations. Instead, CreatorIQ misconstrues the law.

CreatorIQ argues, without the benefit of discovery and even though its
database is behind a paywall, that Famous Birthdays must identify every instance of
infringement as to CreatorIQ. (Mot. at 5:26-8:27.) CreatorIQ has fabricated this
standard out of whole cloth; and it is belied by the *Power Ventures* case, where the
Court rejected precisely this argument, holding that "Facebook owns the copyright
to any page within its system, including the material located on those pages besides
user content, such as graphics, video and sound files. Defendants need only access
and copy one page to commit copyright infringement." *Power Ventures*, 2009 WL
1299698 at *4.

The main case CreatorIQ relies upon to support its novel pleading standard,
*TVB Holdings USA Inc. v. Enom Inc.* (Mot. at 6:10), is easily distinguishable
because it pertains to a motion for default judgment, not a Rule 12(b)(6) challenge.
2014 WL 12581778, at *3 (C.D. Cal. Jan. 6, 2014). In that case, the Court required
the plaintiff "to file an amended *motion*" that properly set out the underlying facts
with sufficient specificity, such that the Court could enter an appropriate judgment.
*Id*. at *4 (emphasis added). The Court's stated motivation for this ruling was that
"fair and precisely drawn notice" of the prohibited conduct was necessary to enter
judgment, especially because injunctive relief was contemplated. *Id*. at *3 (citation
omitted). The Court did not conclude that default judgment was inappropriate
because the complaint did not state a plausible claim, nor did it require plaintiff to

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

11

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  amend its *complaint*, which reveals *TVB* actually supports Famous Birthdays'

2  argument that it has stated a claim.

3       *TVB* is also factually inapposite.  In *TVB*, the plaintiff provided an exhibit that

4  contained a list of thousands of URLs that allowed for unauthorized viewing of

5  shows or episodes, some of which it purportedly owned copyrights in—but it

6  conceded that not all of those shows or episodes were part of its copyrighted works,

7  thus leaving the Court to have to guess what was protected.  2014 WL 12581778, at

8  *1.  By contrast, here, Famous Birthdays has alleged that all of its written

9  biographies on its website constitute its copyrighted "Works."  (FAC ¶ 22.)  The

10 Court here is not left to guess which biographies are subject to protection and which

11 are not.

12      CreatorIQ cites three more inapposite cases—two of which are out-of-circuit,

13 as well as unpublished—which also relate to the failure to identify the copyrighted

14 works and are thus distinguishable for that reason.  In *Synopsys, Inc. v. ATopTech,*

15 *Inc.*, the plaintiff alleged the defendant must have copied its software coding, given

16 similarities between their respective software, but conceded that parts of its software

17 were open-source, which made it unclear if a copyright violation was actually

18 alleged or merely speculative.  2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013).

19 The plaintiff in *Plunket v. Doyle* provided a list of works but also made a vague

20 statement about relying on other works for the claim, so the Court ordered the

21 plaintiff to amend to identify the other works.  2001 WL 175252, at *1, *4

22 (S.D.N.Y. Feb. 22, 2001).  And in *Palmer Kane LLC v. Scholastic Corp.*, the

23 plaintiff failed to identify which works had been infringed.  2013 WL 709276, at *3

24 (S.D.N.Y. Feb. 27, 2013).

25      None of these cases are on-point because Famous Birthdays has specifically

26 alleged that *all* of its written biographies are copyrighted *and* identified specific

27 instances of infringement.  (FAC ¶¶ 5, 7, 22, 27-43.)  These allegations more than

28 meet the pleading burden.  *See Imageline*, 2009 WL 10676056, at *2 (denying

1   motion to dismiss where plaintiff "alleged that it owns certain copyrights and that

2   [defendant] has infringed those copyrights," alongside attachments of allegedly

3   infringing images and the address of the website where the copies were discovered);

4   *Etereo Spirits*, 2021 WL 3914256, at *6-7 (denying motion to dismiss because the

5   complaint "identifies a set of photographs, videos, and other intellectual property,

6   [and thus] sufficiently notifies Defendants 'as to the type of infringing conduct and

7   the source of the claims'" (quoting *Perfect 10*, 167 F. Supp. 2d at 1120));

8   *Paramount Pictures Corp. v. Axanar Prods., Inc.*, 2016 WL 2967959, at *3 (C.D.

9   Cal. May 9, 2016) (concluding complaints are sufficient if they allege representative

10  acts of infringement rather than a comprehensive listing).

**B.  <u>The Written Biographies Are Subject To Standard Copyright Protections</u>**

13         CreatorIQ mischaracterizes Famous Birthdays' Works as "compilations of

14  fact" (Mot. at 10:27-11:2) in an attempt to apply an inapplicable infringement

15  standard to Famous Birthdays' claims.  This argument is without legal support

16  because the Works are original prose—that is, the Works are "literary works" at the

17  core of copyright protection, not "compilations" that enjoy thinner protection.

18  *Compare* 17 U.S.C. § 102(a)(1) (identifying literary works as copyright subject

19  matter) *with* 17 U.S.C. § 103(b) (identifying limitations in scope of compilation

20  copyrights).

21         "[T]he amount of creative input . . . required to meet the originality standard

22  is low."  *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003).  "Original, as the term

23  is used in copyright, means only that the work was independently created by the

24  author (as opposed to copied from other works), and that it possesses at least some

25  minimal degree of creativity."  *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405, 414

26  (9th Cir. 2018) (citation omitted).

27         "Creation of a nonfiction work, even a compilation of pure fact, entails

28  originality."  *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 569

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

(1985) (finding 300 words from autobiography protectable); *see Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015) ("[A]uthors of factual works, like authors of fiction, should be entitled to copyright protection of their protected expression.  The mere fact that the original is a factual work therefore should not imply that others may freely copy it.").

Here, each Famous Birthdays' biography is originally written prose by Famous Birthdays' staff.  (FAC ¶ 20.)  Bios follow a five-part format, but they are not algorithmic: each bio reflects the unique context of the profiled celebrity, as well as Famous Birthdays' commitment to creating a quality and entertaining product. Famous Birthdays' staff must comb over the publicly available information about various celebrities and influencers, and then determine how best to synthesize that information into a short, punchy, entertaining, and informative biography.  (*Id*. ¶¶ 3, 20.)  This includes determining which facts about the celebrities and influencers are most salient, which facts should be excluded, and the order and voice in which to express the selected facts.  The succinctness of the biographies is purposeful, and the creative decision of what few informative things to include is itself original.  The result is "something recognizably the artist's own."  *Satava*, 323 F.3d at 810. Indeed, Famous Birthdays' biographies are so distinctive that a third party, Dentsu, while working with CreatorIQ, was able to recognize that it was using Famous Birthdays' biographies on its platform.  (FAC ¶ 33.)

CreatorIQ relies on a more stringent infringement standard that applies to compilations of facts.  The cases CreatorIQ relies on are factually different.  In *Experian Information Solutions, Inc. v. Nationwide Marketing Services Inc.*, 893 F.3d 1176 (9th Cir. 2018), for example, the Ninth Circuit considered whether compilation of children's birthdays, coupled with the name and address pairings of their parents, was copyrightable.  *Id*. at 1180.  *Experian* did not deal with the original prose at issue here.  CreatorIQ fails to identify a case where authored sentences protected as literary works, like those at issue here, were not subject to

1   full copyright protection.

2       If CreatorIQ's theory of the law were correct, any newspaper or non-fiction

3   book could be misappropriated as long as only 60-70% of the book were copied.

4   There is no such standard.  Accordingly, there is no question that Famous Birthdays'

5   written biographies merit fulsome copyright protection rather than the lesser

6   protections afforded factual compilations.

7       Moreover, even if the Court were to determine the biographies are a

8   compilation of only facts (they are not) and thus the "bodily appropriation" standard

9   applies, Famous Birthdays still would have stated a claim for copyright

10  infringement.  Famous Birthdays has alleged that all of its written biographies are

11  copyrighted.  (FAC ¶¶ 5, 22).  Thus, every instance of CreatorIQ copying a written

12  biography from Famous Birthdays is a case of "bodily appropriation" of that written

13  biography.  CreatorIQ's suggestion that it needs to have copied *all* of Famous

14  Birthdays' biographies (or, at least, tens of thousands of them) before it has

15  infringed Famous Birthdays' copyrights is untenable.  Famous Birthdays has alleged

16  word-for-word copying of its copyrighted biographies.

17      Lastly, Famous Birthdays has limited its allegations of CreatorIQ's copying to

18  its original biographies.  (*See id.* ¶ 22 ("The 2018 and 2022 registrations are for

19  Famous Birthdays' complete collection of written biographies as of the dates of

20  filing.  The February 2022 registration is for select, published portions of Famous

21  Birthdays' collection of written biographies dating back to March 22, 2018.).)

22  Famous Birthdays never alleged that CreatorIQ's profiles directly copied the layout

23  or aesthetic of Famous Birthdays' profiles.  It alleged that CreatorIQ's written

24  biographies copied Famous Birthdays' written biographies, and that they have been

25  copied *literally*, word for word.  Accordingly, it is unclear why CreatorIQ engages

26  in a long-winded comparison of the profiles as a whole.  Moreover, CreatorIQ goes

27  beyond the pleadings by attaching these profiles to its Motion, as they are not only

28  not incorporated into the pleadings, they are not even relevant to the allegations.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

15

**C.**     **Famous Birthdays Has Pled A Valid CFAA Claim**

CreatorIQ argues that the CFAA does not apply because the Northern District of California has explained that "accessing a publicly accessible website and scraping data from it likely does not violate the CFAA because it cannot be said that the defendant 'accessed' the data 'without authorization.'" (Mot. at 19:24-20:4 (citing *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1113 (N.D. Cal. 2017), *aff'd and remanded*, 938 F.3d 985 (9th Cir. 2019), *cert. granted, judgment vacated*, 141 S. Ct. 2752 (2021)).)  As CreatorIQ reluctantly recognizes, the *hiQ* decision has been "vacated by the Supreme Court and the case remanded in light of *Van Buren v. U.S.*, 593 U.S. —, 141 S. Ct. 1648, 210 L.Ed.2d 26 (2021)," but they attempt to waive away this issue by claiming that *Van Buren* "should have no impact on the reasoning of the decision that accessing a public website likely does not violate the CFAA."  (Mot. at 20 n.1.)  Accordingly, CreatorIQ's primary case on-point was vacated by the Supreme Court and should not be relied upon.

Contrary to CreatorIQ's position, the Ninth Circuit has held that "a defendant can run afoul of the CFAA when he or she has no permission to access a computer or when such permission has been revoked explicitly." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016).  Further, the holding in *Craigslist Inc. v. 3Taps Inc.*, 964 F. Supp. 2d 1178 (N.D. Cal. 2013), is instructive. There, the defendant continued to pull data from a publicly accessible classified ad website (Craigslist) after Craigslist sent it a cease and desist letter.  *Id.* at 1183-84. The Court held that "[a] person of ordinary intelligence would understand Craigslist's actions to be a revocation of authorization to access the website, and thus have fair notice that further access was 'without authorization.'" *Id.* at 1186 (footnote omitted).

Here, like in *Craigslist*, Famous Birthdays asked CreatorIQ to stop copying its bios after the License Agreement was terminated.  (FAC ¶ 30.)  Specifically, provisions in the License Agreement informed CreatorIQ of its obligation to do

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    so.  The License Agreement required that CreatorIQ would, upon cancellation of the

2    agreement, remove "all and any Famous Birthdays data and APIs" from its

3    platform; and that upon termination of the License Agreement, "any and all Famous

4    Birthdays data and other references to Famous Birthdays would be removed from

5    the CreatorIQ platform" as "Famous Birthdays will retain full ownership of its data

6    and trademarks[.]"  (*Id*. Ex. F at 51, 53.)  Yet CreatorIQ still continued to pull data

7    from Famous Birthdays' website.  (*Id*. ¶¶ 31-32.)  CreatorIQ was given "fair notice

8    that further access was 'without authorization.'"  *Craigslist*, 964 F. Supp. 2d at

9    1186.[1]

10        Accordingly, Famous Birthdays has pled a valid CFAA claim.

11        **D.    Famous Birthdays Has Pled A Valid CAFA Claim**

12        CreatorIQ argues that Famous Birthdays' California Computer Access And

13   Fraud Act claim fails "for the same reason its CFAA claim fails."  (Mot. at 20:13-

14   15.)  As discussed above, Famous Birthdays' CFAA claim does not fail, and for the

15   same reason neither does its CAFA claim.  Indeed, CreatorIQ relies on the same *hiQ*

16   case here—which is currently awaiting a new decision in light of *Van Buren*.

17        Further, the standard for a claim under the CAFA is more lenient and the

18   claim survives even if the CFAA claim does not.  "Penal Code section 502 prohibits

19   *knowing* access, followed by *unauthorized* (i.e., 'without permission') taking,

20   copying, or use of data."  *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087,

21

_____

22   [1] In a footnote, CreatorIQ references the decision in *Brodsky v. Apple Inc.*, 445 F.
     Supp. 3d 110 (N.D. Cal. 2020), to argue that "revocation of access through one
23   method cannot state a claim for violation of the CFAA if the plaintiff did not revoke
     authorization for other means of access."  (Mot. at 20 n.2.)  *Brodsky* involved a
24   claim regarding Apple's two-factor authentication login process, and the Court
     concluded that "[a]t base, Plaintiffs' SAC alleges a claim that [two-factor
25   authentication] slows down the login process" and as such, the CFAA had no
     applicability.  445 F. Supp. 3d at 129.  That holding has no bearing on whether
26   CreatorIQ continuing to scrape Famous Birthdays' biographies after receiving
27   notice that it had no authorization to do so results in a plausible CFAA claim.
28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1091 (N.D. Cal. 2007).  In *ConnectU*, where Facebook "allege[d] facts showing that ConnectU knowingly accessed Facebook's website to collect, copy, and use data found thereon in a manner not authorized or permitted by Facebook," the Court denied ConnectU's motion to dismiss the CAFA claim.  *Id*.

That is precisely what Famous Birthdays has alleged here—facts showing that CreatorIQ knowingly accessed Famous Birthdays' website to collect, copy, and use data found thereon, in a manner that the Terms of Use on the website clearly prohibit—and more significantly, in a manner that CreatorIQ knows is prohibited because the License Agreement forbids it from using Famous Birthdays' data after its termination.  (FAC ¶¶ 23, 30-33.)  Additionally, Famous Birthdays includes specific allegations that data from its website was necessarily scraped after the termination of the License Agreement, further making clear that CreatorIQ knowingly accessed and without authorization copied data from its website after it was fully aware that it was not permitted to do so.  (*Id*. ¶¶ 46-48.)

Accordingly, Famous Birthdays has pled a valid CAFA claim.

### E.   <u>Famous Birthdays Has Pled A Valid Breach Of Contract Claim</u>

Famous Birthdays has pled a straightforward claim for breach of contract.  It has alleged: (1) the existence of a contract (the License Agreement); (2) Famous Birthdays' performance (providing the data, including the biographies, to CreatorIQ); (3) CreatorIQ's breach (continued use of the biographies after termination, despite the prohibition in the License Agreement); and (4) resulting damages (loss of business opportunities due to CreatorIQ competing with its stolen data, loss of revenue from continued payment under the License Agreement, and damages that naturally flow from misappropriated intellectual property).  *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

CreatorIQ argues that Plaintiff "fails to plead sufficient allegations of underlying facts to state that CIQ breached any contract" because "the contract itself is silent on what 'data' means."  (Mot. at 21:22-25.)  This is simply untrue.  The

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

558859.1

18

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  License Agreement states precisely what data Famous Birthdays will deliver to

2  CreatorIQ—an API of celebrities, which will include, inter alia, their "About

3  section." (FAC Ex. F at 46-47.)  And the License Agreement explicitly states that

4  "if the agreement is cancelled, or ends, that all and any Famous Birthdays data and

5  APIs will be removed from the CreatorIQ platform." (*Id*. at 51.)  The FAC alleges

6  that CreatorIQ has continued to use the data, in breach of that provision.  (*Id*. at

7  ¶¶ 92-93.)

8      Moreover, even if CreatorIQ could argue that the contract is subject to

9  another interpretation than that alleged in the FAC (it cannot), "[I]t is inappropriate

10  at the motion to dismiss stage for [the] Court to interpret the parties' contract and

11  evaluate the viability of [the] [p]laintiff's claims based on the terms of the contract."

12  *Sierra View Local Health Care Dist. v. Influence Health, Inc.*, 2016 WL 454727, at

13  *4 (E.D. Cal. Feb. 5, 2016) (alterations in original) (citation omitted).  Thus, this

14  argument is both lacking in merit and improper at the motion to dismiss stage.

15      CreatorIQ next argues that Famous Birthdays has not alleged that it

16  performed under the License Agreement, and cites to a number of cases wherein a

17  conclusory allegation of performance was rejected.  (Mot. at 21:28-16.)  Of course,

18  the FAC clearly alleged that Famous Birthdays performed under the contract by

19  providing the biographies and other data to CreatorIQ.  Specifically, it states that

20  "CreatorIQ has wrongfully continued to use data from Famous Birthdays *that it was*

21  *provided as part of the License Agreement*." (FAC ¶ 46 (emphasis added).)

22  Accordingly, the FAC clearly alleges that Famous Birthdays performed, as it

23  provided the data required by the License Agreement.  It is also implicit in the

24  allegation that "CreatorIQ has *continued to use Famous Birthdays' Works* since

25  termination of the License Agreement" that the Works were provided prior to the

26  termination of the License Agreement.  (*Id*. (emphasis added).)

27      **F.    Famous Birthdays Has Pled A Valid UCL Claim**

28      CreatorIQ's only argument regarding Famous Birthdays' UCL claim is that

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

"[s]ince Plaintiff has not stated a viable cause of action on any of its other claims, it does not state a plausible claim that CIQ engaged in any 'unlawful, unfair, or fraudulent business act or practice.'"  (Mot. at 21:4-7.)  As discussed above, Famous Birthdays' causes of action are viable, and thus it has stated a viable UCL claim under the "unlawful" prong.  CreatorIQ also does not put forth any arguments regarding the "unfair" prong of the UCL, or the "unfair, deceptive, untrue or misleading advertising" prong (*see* FAC ¶¶ 86-87), and as such does not appear to be moving to dismiss the same—instead focusing solely on the "unlawful" prong.  Because CreatorIQ is silent on alternative theories of liability presented under this cause of action, the motion should be denied for this reason as well.

## G.    Famous Birthdays Is Entitled To Statutory Damages And Attorneys' Fees

CreatorIQ argues why it believes Famous Birthdays is not entitled to statutory damages or attorneys' fees.  (Mot. at 22:25-24:12.)  CreatorIQ's argument is premature, given that the FAC alleges post-registration infringement.  (FAC ¶¶ 33-43.)  CreatorIQ seeks to overcome this by arguing that all of its infringement constitutes one continuous infringement.  (Mot. at 24:13-25:2.)  This argument is improper on a motion to dismiss where the record has not been developed. Moreover, the argument is based on a flawed reading of the FAC, which does not specifically allege pre-registration infringement.

17 U.S.C. section 412 states that statutory damages and attorneys' fees under the Copyright Act are not available for (1) "any infringement of copyright in an unpublished work commenced before the effective date of its registration"; or (2) "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."

As CreatorIQ concedes, there are plenty of allegations of infringement in the FAC that post-date the first copyright registration in October 2018.  (FAC ¶¶ 30

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

20

1    (noting discovery of infringement in June 2021), 37 (noting infringement as recently

2    as February 2022), 40 (alleging that the full extent of CreatorIQ's infringement is

3    currently unknown).  But CreatorIQ argues that every single act of infringement it

4    committed should be considered one single infringement.  This argument fails under

5    the applicable law.

6         Assuming arguendo that the first act of infringement did occur prior to

7    registration, Courts determine the availability of statutory damages and attorneys'

8    fees under the Copyright Act "by determining whether there is a 'legally significant

9    difference' between the pre- and post-registration infringement."  *Niantic, Inc. v.*

10   *Global++*, 2020 WL 8620002, at *5 (N.D. Cal. Sept. 2, 2020) (citation omitted).

11   "Whether Defendants' post-registration activities amount to a continuous and

12   ongoing act of the initial infringement *is a factual dispute not appropriate for*

13   *adjudication before the parties have had an opportunity to develop the record*."

14   *Lixenberg v. BioWorld Merch., Inc.*, 2016 WL 7469666, at *4 (C.D. Cal. Feb. 1,

15   2016) (emphasis added) (citing *ATPAC, Inc. v. Aptitude Sols., Inc.*, 2010 WL

16   1779901, at *7 (E.D. Cal. Apr. 29, 2010)).

17        Here, the allegations of infringement cover three separate copyright

18   registrations, both published and unpublished Works, and: (1) CreatorIQ displaying

19   the Works in its marketing materials; (2) CreatorIQ using the Works in its

20   subscriber database; (3) CreatorIQ using the Works in connection with its influencer

21   search tool; and (4) CreatorIQ using the Works to assist its clients in creating

22   customizable "One-Sheets" featuring Famous Birthdays' Works.  (FAC ¶¶ 36-45.)

23   Thus, there are significant questions regarding the exact nature of CreatorIQ's

24   various acts of infringement, such that considering them a single continuous act of

25   infringement is improper at the pleading stage.  *See Niantic*, 2020 WL 8620002, at

26   *6 ("[T]he Court is not prepared to preclude recovery of statutory damages as a

27   matter of law before the parties engage in discovery on [plaintiff's] copyright

28   infringement allegations." (citation omitted)); *Himelsein v. LS1 LLC*, 2019 WL

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   13037049, at *3 (C.D. Cal. Feb. 21, 2019) ("The Court sees little sense in striking or

2   dismissing a request for statutory damages or attorneys' fees that still may play a

3   part in this litigation . . . .").

4          CreatorIQ's cases on this point are inapposite as one is a straightforward case

5   where it's clear pre- and post-registration infringements were of the exact same

6   nature, and the other is a summary judgment case. *See Por Los Rios, Inc. v. Lions

7   Gate Entm't, Inc.*, 2014 WL 12605374, at *1-2 (C.D. Cal. May 21, 2014) (involving

8   a musician that wrote and recorded music for a film and registered the copyrights

9   after the film premiered, such that all post-registration infringements related to the

10  distribution of the film and were of the same kind—i.e., unauthorized use of the

11  songs in a film); *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*, 832 F. Supp.

12  1378, 1381 (C.D. Cal. 1993) (a summary judgment case where parties had

13  opportunity to develop record).

14         Accordingly, CreatorIQ's "continuous infringement" argument is premature

15  and lacks merit.  Further, assuming arguendo that the continuous infringement

16  doctrine applies—it does not—CreatorIQ still needs the first infringement to pre-

17  date registration (the earliest of which is October 1, 2018).  Famous Birthdays has

18  not specifically alleged the date of first infringement.  However, CreatorIQ argues

19  that Famous Birthdays has alleged that the first infringement of its Works occurred

20  on August 24, 2018, the day after the License Agreement terminated.  (Mot. at 25:3-

21  12.)  The FAC does not support this contention.

22         Indeed, Famous Birthdays pointedly alleges that it first discovered the

23  infringement on June 8, 2021.  (FAC ¶ 33.)  It then began investigating and found

24  rampant infringement of its copyrighted materials.  (*Id*. ¶¶ 34-37.)  In support of its

25  assertion that Famous Birthdays has alleged infringement began on August 24,

26  2018, CreatorIQ cited to Paragraphs 59, 60, and 93 of the FAC.  (Mot. at 25:5-7.)

27  None of these paragraphs make the allegation that CreatorIQ attempts to create.

28         Paragraph 59 simply states that CreatorIQ has copied Famous Birthdays'

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Works and is displaying the copyrighted work publicly on its website.  (FAC ¶ 59.)
Paragraph 60 states that since the License Agreement terminated in August 2018,
Famous Birthdays has never authorized or licensed CreatorIQ to make copies or
publicly display the Works.  (*Id*. ¶ 60.)  Finally, Paragraph 93 states that CreatorIQ
terminated the License Agreement on August 23, 2018, but continued to use Famous
Birthdays' data for years afterwards.  (*Id*. ¶ 93.)

      Nowhere does Plaintiff allege that the first infringement occurred
immediately after the License Agreement terminated.  At this stage, before
discovery, Famous Birthdays does not know when the infringement began, other
than it was discovered in June 2021.  Discovery will reveal the exact timing, nature,
and extent of CreatorIQ's infringement.

### H.    Alternatively, Leave To Amend Should Be Granted

      To the extent the Court finds any deficiencies in any of the asserted causes of
action, or Famous Birthdays' request for statutory damages and attorneys' fees
under the Copyright Act, Famous Birthdays requests leave to amend.  "Generally,
Rule 15 advises the court that 'leave shall be freely given when justice so requires.'"
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)
(quoting Fed. R. Civ. P. 15).  "This policy is 'to be applied with extreme liberality.'"
*Id*. (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.
2001)).  In this matter, the motion to dismiss does not set forth any reason why leave
to amend would be futile (to the extent the Court finds any of the claims lacking).
Famous Birthdays has once amended its complaint in this matter, by stipulation and
prior to any responsive pleading having been filed.  Accordingly, leave to amend
would be appropriate if the Court finds any of the claims lacking.

## VI.   CONCLUSION

      For the foregoing reasons, the Court should deny the Motion in its entirety.
Alternatively, leave to amend should be granted.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    DATED:  March 28, 2022          MILLER BARONDESS, LLP

2

3

4    By: _____

5          CHRISTOPHER D. BEATTY
           Attorneys for Plaintiff
6          FAMOUS BIRTHDAYS LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

558859.1

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS