Jura C. Zibas (SBN: 217864)
*Jura.Zibas@wilsonelser.com*
Marty B. Ready (SBN: 239135)
*Marty.Ready@wilsonelser.com*
Peter K. Chu (SBN: 251705)
*Peter.Chu@wilsonelser.com*
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
401 West A Street, Suite 1900
San Diego, California 92101
Telephone:(619) 321.6200
Facsimile: (619) 321-6201

BOBBY A. GHAJAR (SBN:198719)
*bghajar@cooley.com*
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:+1 310 883 6400
Facsimile: +1 310 883 6500

Attorneys for Defendant
SOCIALEDGE, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAMOUS BIRTHDAYS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SOCIALEDGE, INC., a Delaware corporation (dba CreatorIQ),<br><br>Defendants. | Case No.: 2:21-cv-09562-PA-MRW<br>Hon. PERCY ANDERSON<br>Courtroom: 9A<br>Action Filed: December 9, 2021<br><br>**DEFENDANT SOCIALEDGE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Hearing Date: April 18, 2022<br>Time: 1:30 p.m.<br>Dept: 9A |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. PLAINTIFF FAILS TO STATE A COPYRIGHT CLAIM .......................... 2

    B. Plaintiff's "Bios" Are Entitled to Only Thin Copyright Protection ................................................................................................ 2

    C. The Short Phrases in the Bios Are Not Copyrightable ......................... 3

    D. Plaintiff Does Not Refute Lack of Substantial Similarity .................... 4

III. PLAINTIFF'S CONFIRMS ITS CFAA CLAIMS FAIL ............................... 6

IV. PLAINTIFF FAILS TO STATE CAFA CLAIM ........................................... 8

V. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT UNDER CALIFORNIA LAW ................................................... 8

VI. PLAINTIFF'S UNFAIR COMPETITION IS NOT VIABLE ...................... 10

    A. Plaintiff Has Asserted that the Alleged Infringement Began at the Termination of License Agreement ...................................................... 10

    B. All the Alleged Infringements, Which CIQ Denies, Should Be Deemed One Continuing Infringement ................................................ 11

VIII. CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Craigslist Inc. v. 3Taps Inc.*,
   964 F.Supp.2d 1178 (N.D. Cal. 2013) .......................................................... 6, 7, 8

*Cub Club Investment, LLC v. Apple Inc.*,
   Case No. 21-cv-06948-VC, 2022 WL 469378 (N.D. Cal. Feb. 16,
   2022) ................................................................................................................... 3

*Derek Andrew, Inc. v. Poof Apparel Corp.*
   528 F.3d 696 (9th Cir. 2008) ........................................................................ 11, 12

*Express, LLC v. Fetish Group, Inc.*,
   424 F.Supp.2d 1211 (C.D. Cal. 2006) .................................................................. 2

*Facebook, Inc. v. ConnectU LLC*
   489 F.Supp.2d 1087 (N.D. Cal. 2007) .................................................................. 8

*Facebook, Inc. v. Power Ventures, Inc.* (9th Cir. 2016)
   844 F.3d 1058 .................................................................................................... 8

*Feist Publ'ns, Inc. v. Rural Tel. Serv., Co.* (1991)
   499 U.S. 340 ................................................................................................... 2, 3

*Klauber Bros., Inc. v. H & M Hennes & Mauritz LP*,
   2019 U.S.Dist.LEXIS 167860 (C.D. Cal. 2019) ................................................. 5

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) .............................................................................. 8

*LVRCo Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) .............................................................................. 7

*Martinez v. Welk Grp., Inc.*,
   907 F. Supp. 2d 1123 (S.D. Cal. 2012) ................................................................ 9

*Mason v. Montgomery Data, Inc.*
   967 F.2d 135 (5th Cir. 1992) .............................................................................. 11

*Niantic, Inc.* at *15-16 ............................................................................................ 12

ii

DEFENDANT  SOCIAL EDGE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED
269739806v.1                                  COMPLAINT                                  2:21-cv-09562-PA-MRW

*Opperman v. Path, Inc.* (N.D.Cal. 2015)
 84 F. Supp. 3d 962 ................................................................................................. 9

*Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*
 832 F. Supp. 1378 (C.D. Cal. 1993) ............................................................... 11, 12

*Shame on You Productions, Inc. v. Banks*,
 120 F. Supp. 3d 1123 (C.D. Cal. 2015) ................................................................ 5

*Stern v. Does*,
 978 F. Supp. 2d 1031 (C.D. Cal. 2011) ................................................................ 4

*Zella v. E.W. Scripps Co.* (C.D. Cal. 2007)
 529 F.Supp.2d 1124 .............................................................................................. 4

*Zito v. Steeplechase Films, Inc.*,
 267 F. Supp. 2d 1022 (N.D. Cal. 2003) .............................................................. 10

**Statutes**

17 U.S.C. § 101 ............................................................................................................ 2

17 U.S.C. § 412 ................................................................................................... 10, 11

Cal. Bus. & Prof. Code § 17200 ................................................................................ 10

Cal. Pen. Code § 502 ................................................................................................... 8

California's Unfair Competition Law ....................................................................... 10

Copyright Act .............................................................................................................. 2

**Court Rules**

Rule 12(b)(6) ............................................................................................................... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Peeling away all the layers of allegations of unauthorized access and breach of contract claims, this is essentially an action for copyright infringement by Plaintiff Famous Birthdays, LLC ("Plaintiff or "Famous Birthdays") against Defendant SocialEdge, Inc., dba CreatorIQ, ("Defendant" or "CIQ"). Plaintiff alleges CIQ infringed Plaintiff's copyright in its celebrity profiles, which consist mostly of facts it collects by "comb[ing] the publicly available information about various celebrities and influencers" on its publicly available website. Plaintiff makes copyright infringement claim by alleging, begrudgingly, that CIQ did not remove the data it provided to CIQ under the License Agreement, notwithstanding its misguided allegations of "scraping" of its website publicly available to the whole Internet. This Court should grant Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") for Copyright Infringement Claim because: (1) Plaintiff only alleges copying of the profiles of nine celebrities; (2) the purported copyright registrations are for Plaintiff's profiles; (3) the "Bios," which Plaintiff now identifies as protected are a compilation work entitled to thin protection only; (4) after filtering out unprotectable elements in the profiles, the only arguable similarities involve short phrases and facts, which are not copyrightable; and (5) Plaintiff failed to (because it cannot) refute the lack of substantial similarity between each party's profiles or the significant differences, which are fatal to its infringement claim.

What is left are Plaintiff's CFAA and CAFA claims, which fail as Plaintiff cannot state unauthorized access by anyone of its publicly available website. For its Breach of Contract claim, Plaintiff failed to state it performed fully under the License Agreement for its Breach of Contract Claim, and its Unfair Competition Claim is not available in the absence of other valid claims. Finally, even if CIQ infringed Plaintiff's alleged "copyright," which CIQ denies, statutory damages and attorney's fees are not available to Plaintiff when the alleged infringements were a continuing

infringement (CIQ denies it infringed) that commenced prior to registration.

## II. PLAINTIFF FAILS TO STATE A COPYRIGHT CLAIM.

### A. The Scope of Plaintiff's Copyright Claim Is Set by Its Registration.

Plaintiff appears to concede that the copyright registrations attached to FAC are for its biographical profiles. The scope for the copyright protection is set by the registration. *Express, LLC v. Fetish Group, Inc.,* 424 F.Supp.2d 1211, 1217 (C.D. Cal. 2006). All three copyright registrations attached to FAC state the works are text of famousbirthdays.com celebrity profiles (or in the 2022 registration, celebrity "details," but not celebrity biographies). Plaintiff itself claims in FAC that "CreatorIQ is illegally and without authorization using Famous Birthdays' **copyrighted material**—tens of thousands of celebrity and influencer **profiles** (the "Works"). (FAC, ¶5) (emphasis added). In another words, Plaintiff asserts on the face of FAC that its copyrights are for the profiles, not just the short biographies. As explained in CIQ's Motion (Dkt. 48 at 10-19), Plaintiff alleges copying of the profiles of nine celebrities only. As discussed below, the profiles of the nine celebrities on Plaintiff's website and those on CIQ's are manifestly dissimilar. *See also* Declaration of Marty B. Ready ("Ready Decl"), ¶6 and Ex. 19.

### B. Plaintiff's "Bios" Are Entitled to Only Thin Copyright Protection.

In its Opposition, Plaintiff refers to its short biographies as "Bios" that are subject to copyrights. (Opp. at 14:7-8). These "Bios" are nothing but a compilation work under 17 U.S.C. § 101. The Copyright Act defines "compilation" as "[1] a work formed by the collection and assembling of preexisting materials or of data [2] that are selected, coordinated, or arranged in such a way that [3] the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101; see also *Feist Publ'ns, Inc. v. Rural Tel. Serv., Co.* (1991) 499 U.S. 340, 357.

Plaintiff's elucidation of how it creates the "Bios" perfectly mirror the definition of compilation under 17 U.S.C. § 101 and *Feist* (Opp. at, 14:13-15):

- "Famous Birthdays' staff must comb over the publicly available

information about various celebrities and influencers." ("collection … of preexisting materials or of data," *Feist*, at 357).

- They determine "which facts about the celebrities and influencers are most salient, which facts should be excluded." ("selected," *Id*.).

- They determine "the order and voice in which to express the selected facts." ("arranged," *Id*.).

- They make "decision of what few informative things to include." ("assembling" and "selected," *Id*.).

Plaintiff makes the point that its "[B]ios follow **a five-part format**" (Opp. at 14:7) (emphasis added), which is similar to the format of using the names, addresses, and telephone numbers in a directory in the phone book in *Feist*. *Feist*, at 361-362. Its argument that "the creative decision of what few informative things to include [in the Bios] is itself is original" explains exactly how a compilation work may be protected according to *Feist*, at 350-351 ("[a] factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement. In no event may copyright extend to the facts themselves). Accordingly, because these Bios are a compilation work, they are entitled to thin protection only. *Id.*, at 349.

Even if this Court decides that only the Bios, as opposed to the entire profile, should be examined against CIQ's profiles, Plaintiff's copyright claim still fails. Because the Bios warrant thin copyright protection only, Plaintiff's works and CIQ's must be *virtually identical* to make out a plausible claim for infringement. *Cub Club Investment, LLC v. Apple Inc*., Case No. 21-cv-06948-VC, 2022 WL 469378 at *1 (N.D. Cal. Feb. 16, 2022). As detailed in the Motion, CIQ's profiles do *not* have Plaintiff's alleged "five-part" format (Opp. at 14:7), nor are they virtually identical to Plaintiff's Bios. (FAC, ¶¶38-39; *see also* RJN No. 1-18); Ready Decl., ¶6 and Ex. 19.

C. **The Short Phrases in the Bios Are Not Copyrightable.**

As CIQ explained in its Motion, the short phrases under the "About" heading

in Plaintiff's Bios' five-part format are not copyrightable as they contain mostly facts. (Mot. at 16:11–18: 16). Humorously, Plaintiff lauds those short phrases as "prose" and literary works by its staff, describing them as a "short," "punchy," "entertaining," and "informative" biography. (Opp. at, 14:12). This argument includes more creative adjectives than the short phrases for each influencer included in FAC. *See, e.g.,* FAC, ¶¶38, 39 (Jacob Riglin: "Photographer and rooftopper who rose to fame with his life-risking photography. He shares his work on Instagram, which has gained over 1 million followers."). Each of the short phrases that Plaintiff seeks to protect is just that, a short phrase, comprised mostly with *facts*. Unless considered as a part of compilation, these short prosaic phrases of mostly facts should not even be entitled to copyright. *Stern v. Does*, 978 F. Supp. 2d 1031, 1041-42 (C.D. Cal. 2011 ("The opening sentence of a poem may contain sufficient creativity to warrant copyright protection whereas a more **prosaic** sentence of similar length may not." (emphasis added)).

In sum, Plaintiff's celebrity profiles, or the Bios or short phrases of facts "[a]bout" the celebrities, regardless of whether characterized as prose, are a compilation work, which are entitled to a thin protection only. As established in Plaintiff's Motion,, they are not virtually identical or even substantially similar to CIQ's accursed profiles. (Mot. at 13:12 – 19:4; Ready Decl., ¶5, Ex. 19).

### D.   Plaintiff Does Not Refute the Lack of Substantial Similarity.

Nowhere in the Opposition does Plaintiff refute CIQ's contention that the copyright infringement claim fails due to lack of substantial similarity between Plaintiff's allegedly copyrighted works (a compilation of biographies) and CIQ's works. When two works are not at least substantially similar, this Court has authority to dismiss Plaintiff's claim without leave to amend. *See Zella v. E.W. Scripps Co.* (C.D. Cal. 2007) 529 F.Supp.2d 1124, 1131 ("If after examining the works themselves, this Court determines that there is no substantial similarity, then the plaintiff here can prove no facts in support of his claim which would entitle him to

relief - the standard for dismissal under Rule 12(b)(6)") (citation omitted); *Klauber Bros., Inc. v. H & M Hennes & Mauritz LP,* 2019 U.S. Dist. LEXIS 167860, at *20 (C.D. Cal. 2019) (granting dismissal without leave when "in examining a side-by-side comparison for similarities between [the works], the Court cannot conclude that they are substantially similar"); *Shame on You Productions, Inc. v. Banks*, 120 F. Supp. 3d 1123, 1151-1172 (C.D. Cal. 2015) (looking at extrinsic factors and granting motions to dismiss and for judgment on the pleadings based upon lack of substantial similarity between screenplay and movie); ; *Gallagher v. Lions Gate Entm't Inc.*, No. 2:15-CV-02739-ODWEX, 2015 WL 12481504, at *2 (C.D. Cal. Sept. 11, 2015).

CIQ's Motion established that Plaintiff's profiles and CIQ's profiles are *not* even substantially similar. (Mot. at 14:2-16:10); *see also* Ready Decl., ¶6 and Ex. 19). The review of the nine Plaintiff's profiles (Ready Decl., ¶5.a-i; RJN Nos. 1-9) and CIQ's profiles (Ready Decl., ¶5.j-r; RJN Nos. 10-19)[1] compels a finding that the parties respective profiles are not substantially similar, in terms of content, layout, factual details included, colors, or imagery:

|  | **PLAINTIFF'S PROFILES** | **CIQ'S PROFILES** |
|---|---|---|
| **Organization** | three columns and three rows | two rows only |
| **Top Row** | • Photo and name<br>• birthday, birthplace, age and birth sign on the right column | • Photo and name<br>• Biographies under the name;<br>• No five-part formats or headings<br>• number of connections on the right side to the biographies |
| **Middle Row** | • Left column: Popularity<br>• Middle column: Biographies using a "five part" format: "About," "Before Fame," "Trivia," "Family Life," and "Associated With" | • No middle row |
| **Bottom Row** | • Photos of other celebrities under:<br>  ○ "A Member Of"<br>  ○ "Fans Also Viewed"<br>  ○ Other celebrities with same birth month and the signs | • Tabs for Recent Posts; Key Metrics; Audience; Similar Creators; Brands & Hashtags; Growth History; People; Gaming |

---

[1] In the alternative, if the Court declines to take judicial notice of RJN Nos. 10-18, CIQ refers the Court to CIQ's profiles in FAC ¶¶37-38.

Even the selection and arrangement of the factual information in the Bios are very different. CIQ does not use (and is not alleged to use in FAC) the "five-part" format Plaintiff uses. Beyond that, Plaintiff includes birthdate, birthplace, and age in the top row, on the right column, while CIQ places these commonplace facts immediately under the individual's name. Plaintiff includes a "Popularity" matrix; CIQ does not have one. CIQ includes various "categories of interest" not present in Plaintiff's profiles. (Ready Decl., ¶5, Ex. 19).

When the Court compares the works under the extrinsic test, it compels the conclusion that parties' respective works are substantially *different* and not similar. Plaintiff Opposition does not dispute that. Accordingly, Plaintiff's copyright claim should be dismissed with prejudice. There is no surviving claim for copyright infringement as to any works unidentified in FAC, given Plaintiff's failure to provide the Court with its allegedly protected works and the corresponding works by CIQ.

## III. PLAINTIFF CONFIRMS ITS CFAA CLAIM FAILS.

Plaintiff's CFAA fails because its contention in the Opposition that CIQ accessed its website without authorization is without basis when its website is widely available to public. Plaintiff's reliance on *Craigslist Inc. v. 3Taps Inc.,* 964 F.Supp.2d 1178 (N.D. Cal. 2013) is misplaced, and is actually helpful to CIQ. Craigslist, the plaintiff in *Craigslist,* alleged defendant 3Tap copied all content posted in **real time**. *Craigslist*, at 1180. In addition, 3Taps marketed a "Craigslist API" to allow third parties to access large amounts of content from Craigslist; also operated the website craiggers.com, which "essentially replicated the entire craigslist website," including "all of craigslist's posts." *Id*. To prevent further activities, Craigslist undertook two independent steps: (1) it sent a "cease and desist" letter" notifying that defendant was no longer authorized to access plaintiff's website; and (2) plaintiff configured its website to block access from IP addresses associated with defendant. *Id*., at 1181. Not deterred, 3Taps *bypassed* that technological barrier by using different IP addresses and proxy servers to conceal its

identity, and continued scraping data. *Id*.

In analyzing the defendant 3Taps's contention that "by making the classified ads on its website publicly available, craigslist has 'authorized' the world, including 3Taps, to access craigslist.org," the court simply, but resoundingly wrote, "That makes sense." *Id*., at 1182. Then, citing *LVRCo Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009), the court stated that "a person uses a computer 'without authorization' under [the CFAA] when the person has not received permission to use the computer for any purpose." *Id*., at 1183. In denying 3Taps' motion to dismiss CFAA claim, the court held that 3Taps was "without authorization" when it continued to pull data off of Craigslist's website after Craigslist revoked its authorization to access the website *by its cease-and-desist letter and IP blocking efforts by circumventing that technical barrier*. *Id*., at 1184. Neither applies here.

Plaintiff did not send a cease-and-desist letter to CIQ. It did not implement any technical barriers to prevent CIQ from accessing its website either. It has been and it makes its website available to public, thereby, continuing to authorize the world. *Craigslist*, at 1182.

Plaintiff's contentions fail to support that CIQ continued to "pull data" from Plaintiff's website. What Plaintiff actually accuses CIQ of wrongdoing is the allegation of CIQ's failure to **remove** Plaintiff's data, not wrongfully **accessing** its data. *See* Opp. at 17:1-6 ("The License Agreement required that [CIQ] would, upon cancellation of the agreement, remove 'all and any Famous Birthdays data and APIs'") and ("any and all Famous Birthdays data … would be removed from the CreatorIQ platform." Although Plaintiff refers this Court to the FAC at ¶¶31-32 to argue that CIQ still continued to "pull data" from Famous Birthday's website (Opp. at 17:6-7), these paragraphs allege that Plaintiff provided partial access to its database of celebrity profiles and associated data under the License Agreement. (FAC, ¶28). After CIQ terminated the agreement (FAC, ¶31), Plaintiff alleges "in direct breach of the License Agreement, CreatorIQ has **continued to use** Famous

7

Birthdays' Works, displaying data from Famous Birthdays as part of its CreatorIQ platform." (FAC, ¶32) (emphasis added). In another words, Plaintiff complains because CIQ did not remove but instead continued to use the data Plaintiff itself had provided earlier under the License Agreement. If it is also implicit in the allegation, as Plaintiff posits, that "the Works were provided prior to the termination of the License Agreement" (Opp. at 19:26-27), CIQ **did** not even have to access Plaintiff's website again. Plaintiff, in effect, is not complaining of wrongful access but alleged *retention*. Accordingly, Plaintiff's CFAA claim must fail under *Craigslist* when it authorized access to the world. *Craigslist*, 1182.

## IV. PLAINTIFF FAILS TO STATE A CAFA CLAIM.

The above reasoning applies to Plaintiff's Cal. Pen. Code §502 ("CAFA") claim. California Penal Code Section 502 is entitled "Unauthorized Access to Computers, Computer Systems and Computer Data." *Facebook, Inc. v. ConnectU LLC* and *Facebook, Inc. v. Power Ventures, Inc.,* relied on heavily by Plaintiff, are distinguishable. There, the defendant in each case *bypassed the plaintiff's technical barrier* and accessed information not publicly available. *See Facebook, Inc. v. ConnectU LLC* 489 F.Supp.2d 1087, 1091 (N.D. Cal. 2007) ("accessing information accessible only to registered user"); *Facebook, Inc. v. Power Ventures, Inc.* (9th Cir. 2016) 844 F.3d 1058, 1063 (Facebook sent a cease and desist letter and implemented IP block to prevent defendant to prevent access).

Plaintiff never pled (because it cannot) that it revoked or blocked CIQ's access. By making the celebrity's profiles on its website publicly available, Plaintiff has 'authorized' the world, including CIQ, to access its website. *Craigslist*, 964 F.Supp.2d at 1182. Therefore, its CAFA claim also must necessarily fail.

## V. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT UNDER CALIFORNIA LAW.

In the Ninth Circuit, "to be entitled to the presumption of truth, the FAC "must contain sufficient allegations of underlying facts to give fair notice and to enable the

opposing party to defend itself effectively." *Levitt v. Yelp! Inc.,* 765 F.3d 1123, 1135 (9th Cir. 2014). A breach of contract claims fails when it is unclear how plaintiff "has performed ***all*** obligations under the contract." *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1131 (S.D. Cal. 2012). (emphasis added).

In its Motion, CIQ asserted that: (1) Plaintiff failed to recite the element of performance (which did not occur); (2) nothing in FAC suggests Plaintiff provided all the data and its subsets as agreed; and (3) CIQ ceased using "daily updates" of the celebrity's popularity from 2018 after the termination of the parties' agreement as they would be outdated. (Mot. at 22:17-22). Plaintiff fails to rebut these arguments.

Instead of referring to specific allegations in the FAC, Plaintiff asks the Court to draw conclusions from various paragraphs in the FAC that it, in fact, performed under the License Agreement by providing all the data required under the License Agreement. To support its position, Plaintiff musters only the following:

- "CreatorIQ has wrongfully continued to use data from Famous Birthdays *that it was provided as part of the License Agreement*." (FAC ¶ 46 (emphasis added). (Opposition, 19: 20-21).

- "It is also **implicit** in the allegation that "CreatorIQ has *continued to use Famous Birthdays' Works* since termination of the License Agreement" that the Works were provided prior to the termination of the License Agreement." (Opposition, 19: 23-25) (emphasis in the original and added).

At most, these allegations suggest Plaintiff provided *some* data but they do not meet that it "has performed ***all*** obligations under the contract." *Martinez,* at 1131. (emphasis added).

Plaintiff also argues that it performed by delivering data in the form of "API of celebrities." (Opp. at 19:2). API is not data. It is "language and message format used by an application program to communicate with the operating system or some other control program such as a database management system (DBMS) or

9
DEFENDANT SOCIAL EDGE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED
269739806v.1                                    COMPLAINT                                    2:21-cv-09562-PA-MRW

communications protocol." *Opperman v. Path, Inc.* (N.D.Cal. 2015) 84 F. Supp. 3d 962, 993, n11 (using definition in "Encyclopedia"). For these reasons, the Court should dismiss Plaintiff's claim for breach of contract.

## VI. PLAINTIFF'S UNFAIR COMPETITION IS NOT VIABLE.

Plaintiff's claim for violation of California's Unfair Competition Law also fails. Since Plaintiff has not stated a viable cause of action on any of its other claims, it cannot maintain a plausible claim that CIQ engaged in any "unlawful, unfair, or fraudulent business act or practice." ( Cal. Bus. & Prof. Code § 17200).

## VII. PLAINTIFF CANNOT RECOVER STATUTORY DAMAGES OR ATTORNEYS FEES UNDER 17 U.S.C. § 412.

Even if Plaintiff survives the Motion to Dismiss the Copyright Infringement Claim, Plaintiff is not entitled to statutory damages or attorney's fees as a matter of law. The law is clear that no award for statutory damages or attorney's fees can issue for any infringement of copyright in an unpublished work commenced before the effective date of its registration. 17 U.S.C. §412; *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1025 (N.D. Cal. 2003).

### A. Plaintiff Has Asserted that the Alleged Infringement Began at the Termination of License Agreement.

Plaintiff's only argument to avoid dismissal of its statutory damages and attorney's fees is that by claiming it alleged post-registration infringement in paragraphs 30 and 37. (Opp. at 20:28 – 21:1-2). That argument does not refute CIQ's contention that Plaintiff alleges the infringement occurred prior to its copyright registration. Plaintiff merely offers a conclusory statement that "Nowhere does Plaintiff allege that the first infringement occurred immediately after the License Agreement terminated." (Opp. at 28:7-8). But it does.

In its Opposition, Plaintiff asserts "[it] registered copyrights in its original **biographies** in October 2018, October 2021, and February 2021, and supplemented the October 2018 registration in February 2022." (Opp. at 9:9-11) (emphasis added).

Plaintiff contends that it pled that it has fully performed under the contract "by providing the **biographies** and other data to CreatorIQ." (*Id*. at 24:19). In FAC, Plaintiff alleges "CreatorIQ terminated the License Agreement on August 23, 2018, but **continued** to use Famous Birthdays' data for years afterwards" without making payments under the License Agreement. (FAC, ¶93). Plaintiff did not just allege that CIQ used its biographies, but it asserts specifically that CIQ **continued** to use them upon termination of the License Agreement and **continued** to use them for years afterwards. In another words, Plaintiff asserts, and thereby concedes, that CIQ started using the biographies while under the License Agreement and did not cease, but continued, using them.

According to Plaintiff, that continued use violates the License Agreement and infringes its copyrights a moment after the termination of the License Agreement. The earliest date of Effective Date of Registration stated in the three Registrations is October 1, 2018, (Dkt. 39-2, Ex. B), which clearly falls *after* the commencement of alleged infringement upon termination of the License Agreement on August 23, 2018 according to Plaintiff's FAC and Opposition.

### B.     All the Alleged Infringements, Which CIQ Denies, Should Be Deemed One Continuing Infringement.

Without refuting Plaintiff actually alleged CIQ's infringement began prior to the earliest copyright registration, Plaintiff then argues that there are post-registration infringements that are legally significant from pre-registration infringements, entitling them to statutory damages. Its argument lack legal basis.

The law is clear that "[*t*]*he first act of infringement* in a series of ongoing infringements of the multiple same kind marks the commencement of one continuing infringement under § 412." *Derek Andrew, Inc. v. Poof Apparel Corp.* 528 F.3d 696, 701 (9th Cir. 2008) (emphasis in original); *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.* 832 F. Supp. 1378, 1393-95 (C.D. Cal. 1993) (rejecting argument that each act of importing and distributing infringing product constituted

a distinct act of infringement); *Mason v. Montgomery Data, Inc.* 967 F.2d 135, 144 (5th Cir. 1992)  (a plaintiff may not recover statutory damages or fees for infringements that commenced after registration if the same defendant commenced an infringement of the same work prior to registration).

In *Niantic,* cited by Plaintiff, the plaintiff Niantic, Inc. alleged "[d]efendants are serial infringers" who "[o]n many occasions when Niantic has released new versions of its mobile apps, defendants have created and distributed unauthorized derivative versions of Niantic's updated mobile apps." *Niantic, Inc.* at *15-16.

Plaintiff here, however, does not allege that it ever released a new version of Bios or any texts in the profiles that it alleges were the subject matter of copyrights. As wrongfully accused by Plaintiff, it is alleged that CIQ merely continued to use the data it received under the License Agreement. (FAC, ¶93). Plaintiff here cannot recover statutory damages or fees for  infringements that commenced after registration if the same defendant commenced an infringement of the same work prior to registration. *See Derek* Andrew, at 701; *Parfums Givenchy,* at 1393-95.

In sum, any post-registration infringements alleged by Plaintiff can only be the continuing infringement of the same pre-registration profiles or the Bios (CIQ denies it infringed at all) even under *Niantic*. Therefore, Plaintiff is not entitled to statutory damages or attorney's fees as a matter of law.

## VIII. <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant CIQ's Motion to Dismiss Plaintiff's First Amended Complaint in its entirety without leave to amend.

Dated: April 4, 2022

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

By: */s/ Marty B. Ready*
Marty B. Ready
Jura C. Zibas
Peter K. Chu
Attorneys for Defendant SocialEdge, Inc

# CERTIFICATE OF SERVICE
USDC – Central District Case No.: 2:21-cv-09562-PA-MRW
WEMED 15991.01203

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to this action. My business address is 555 South Flower Street, Suite 2900, Los Angeles, California 90071. My electronic service address is jamie.cho@wilsonelser.com.

On April 4, 2022, I served true copies of the following document(s) described as **DEFENDANT SOCIALEDGE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

on the interested parties in this action as follows:

**[X]  BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 4, 2022, at Los Angeles, California.

/s/ *Jamie Cho*
Jamie Cho