Christopher D. Beatty (SBN #266466)
chris.beatty@katten.com
Tami K. Sims (SBN #245628)
tami.sims@katten.com
Amelia E. Bruckner (SBN #341515)
amelia.bruckner@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone: 310.788.4477
Facsimile: 310.788.4471

Attorneys for Plaintiff
FAMOUS BIRTHDAYS LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FAMOUS BIRTHDAYS LLC, <br><br> Plaintiff, <br><br> v. <br><br> SOCIALEDGE, INC., a Delaware corporation (dba CreatorIQ), <br><br> Defendants. | **CASE NO. 2:21-cv-09562-PA-MRW** <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS, OR IN THE ALTERNATIVE, FOR ADVERSE INFERENCE SANCTIONS OR TO COMPEL PRODUCTION** <br><br> Hearing: December 16th, 2022 <br> 9:30 a.m. <br> Courtroom 550 <br><br> Assigned to Hon. Percy Anderson, Crtrm. 9A and Magistrate Judge Michael R. Wilner, Crtrm. 550 <br><br> Discovery Cut-Off: December 5, 2022 <br> Pre-Trial Conference: January 20, 2023 <br> Trial Date: February 14, 2023 |

TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     FACTUAL BACKGROUND .............................................................3

        A.      Famous Birthdays Discovers CreatorIQ's Infringement.......................3

        B.      Famous Birthdays Makes Significant Efforts To Meet And Confer........3

        C.      Alongside Written Discovery, CreatorIQ Strings Famous Birthdays
                Along with Respect to Database Access .................................4

        D.      Famous Birthdays Learns CreatorIQ Purged Critical Evidence.............6

        E.      CreatorIQ Produces A Bare-Bones Chart That Proves It Cannot
                Re-Create The Evidence And the Destruction Is Irreversible ................7

III.    Terminating or Adverse Inference Sanctions Are Necessary to Cure the
        Prejudicial Effect of Defendant's Spoliation of Evidence............................8

        A.      The Lost Bios Qualify as ESI.............................................9

        B.      The ESI is Lost and Cannot be Restored or Replaced..........................9

        C.      The ESI Should Have Been Preserved in the Conduct of Litigation......13

        D.      CreatorIQ Failed to Take Reasonable Steps to Preserve ESI................14

        E.      Terminating, Or Alternatively, Adverse Inference Sanctions Are
                Necessary...................................................................15

                1.      CreatorIQ Acted with Intent to Deprive..................................15

                2.      Terminating and Adverse Inference Sanctions Are
                        Necessary to Cure the Prejudice to Famous Birthdays..............18

IV.     At Minimum, CreatorIQ Must be Compelled to Produce Discovery.............19

        A.      CreatorIQ Cannot Withhold the Customizable "One-Sheets" ............19

        B.      CreatorIQ Must Produce Outstanding Documents.............................21

        C.      CreatorIQ Must Provide Access to its Database................................24

V.      Conclusion .......................................................................25

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 16, 2022[1] at 9:30 a.m. in Courtroom 550, of the above-entitled Court located at the Royal Federal Building and United States Courthouse, 255 E. Temple St., Los Angeles, CA, 90012, Plaintiff Famous Birthdays, LLC ("Famous Birthdays") will, and hereby does, move for a report and recommendation for terminating sanctions against Defendant SocialEdge, Inc. dba CreatorIQ ("CreatorIQ"), or in the alternative, for an order granting an adverse issue sanctions and/or to compel production. Famous Birthdays also seeks an award of attorneys' fees, the amount which will be established by a separately noticed motion. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 22, 2022, and on additional days throughout October and November 2022. *See* Declaration of Chris Beatty ("Beatty Decl. ¶ 23")

Specifically, Famous Birthdays moves for a report and recommendation for terminating sanctions due to CreatorIQ's intentional destruction of critical, key evidence of CreatorIQ's intentional infringement, which cannot be recovered. In the alternative, Famous Birthdays seeks an adverse inference instruction against CreatorIQ for its admitted widespread spoliation of the key evidence in this case. Additionally, Famous Birthdays seeks an order compelling CreatorIQ to produce essential discovery that it agreed to produce, but failed to provide, including but not limited to documents relating to customizable "One-Sheets" that CreatorIQ's customers create on its platform.

This Motion is, and will be, based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Declaration of Chris Beatty, the papers and records on file in this action, such matters of which the Court

---

[1] This hearing date was specifically authorized for the parties by Judge Wilner.

1    may or must take judicial notice, and such further argument or evidence as may

2    properly be presented to this Court.

3                                          Respectfully submitted,

4    DATED:  November 23, 2022          KATTEN MUCHIN ROSENMAN LLP

5

6

7                                   By:   _____/s/ Christopher D. Beatty_____

8                                          CHRISTOPHER D. BEATTY
                                           Attorneys for Plaintiff
9                                          FAMOUS BIRTHDAYS LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Famous Birthdays LLC ("Famous Birthdays") seeks a recommendation for terminating sanctions against Defendant SocialEdge, Inc. dba CreatorIQ ("CreatorIQ"), or alternatively, an order issuing adverse inference sanctions, and to compel long-outstanding discovery.

Famous Birthdays is a celebrity and influencer discovery platform with 250,000 copyrighted bios, for which clients must pay a subscription fee if they want upgraded access. In 2018, CreatorIQ licensed 100,000 of Famous Birthdays' profiles, but that agreement and CreatorIQ's limited license, terminated in August 2018. In June 2021, Famous Birthdays learned that CreatorIQ's non-public platform was infringing Famous Birthdays' copyrighted bios.

After this lawsuit was filed in December 2021, CreatorIQ intentionally purged the incriminating evidence that it had infringed Famous Birthdays' bios, by deleting and/or altering the infringing bios. CreatorIQ disregarded its obligation to preserve critical evidence of its infringement, as it took no efforts to preserve how the bios looked prior to its removal. CreatorIQ was represented by counsel at the time of the mass deletion and had also been sent a litigation hold letter by Famous Birthdays. In addition, CreatorIQ was well aware that without making some other effort to backup the data, its mass deletion would render the information in the database unrecoverable.

Next, CreatorIQ embarked on a dilatory campaign to delay and evade its discovery obligations, to preclude Famous Birthdays from discovering the scope of its infringement and of its spoliation. For many months Famous Birthdays received the proverbial run around, with no disclosure that the documents Famous Birthdays was diligently trying to obtain had in fact been deleted.

Finally, after months of obstruction, and on the eve of the IDC on whether sanctions were appropriate, CreatorIQ produced an excel spreadsheet containing the text of 41,0000 bios from prior to December 2021. CreatorIQ explained that it was

1

admitting that these 41,000 bios, which track the Famous Birthdays bios verbatim, had been displayed on the CreatorIQ database at the time the lawsuit was filed. The admitted amount of copied bios is now at 50,135, with the potential for many more.

The spreadsheet, however, is not a recovery of what was deleted. Famous Birthdays was entitled to show the jury at trial how its data was displayed in the CreatorIQ database; it has been forever deprived from doing so because of CreatorIQ's misconduct. This situation is akin to a party accused of copyright infringement that destroys all the books containing the infringing material. The accused party can present a manuscript and agree that this is what was in the book. But the suing party is still prejudiced by being unable to show the book itself to the jury. And worse here, CreatorIQ cannot ascertain the full extent of how its data was used in the database because of the deletion.

Despite Famous Birthdays' diligent discovery efforts, CreatorIQ has failed to provide other critical information as well. For example, the admission about the 51,000 profiles only pertains to the 100,000 profiles previously licensed to CreatorIQ. Famous Birthdays has identified examples in its marketing materials of other bios being used by CreatorIQ that were not part of the 100,000 set. There's potentially another 120,000 more of these bios in the database and CreatorIQ has failed to produce the documents identifying which of these other bios it used.

Furthermore, based on marketing materials, CreatorIQ also provided Famous Birthdays bios to its customers and purported to make them owners of these bios. This resulted in customers using the bios outside of a paywall and internally. This service by CreatorIQ is called One Sheets. Famous Birthdays has sought for many months to obtain the One Sheets. Even after encouragement by this Court at the IDC to produce them they still have not been provided. Although CreatorIQ now says it will provide them next week, its assurances are not comforting. Moreover, CreatorIQ has already admitted that because the One Sheets are dynamic, when it did the mass deletion it would have deleted the bios from these One Sheets.

CreatorIQ has thus spoilated the best evidence that Famous Birthdays could have relied upon at trial, namely, incriminating evidence of infringement straight from CreatorIQ's website.  There is no excuse and the prejudice is immeasurable.  There is no way to recover or recreate this evidence, which has prejudiced Famous Birthdays' ability to prepare its case, to discern the full scope of the infringement, and has eliminated Famous Birthdays' essential evidence for trial.  Because CreatorIQ's spoilation was intended to deprive Famous Birthdays of the key evidence of its infringement, terminating sanctions is the appropriate remedy.

In the alternative, the Court should order an adverse inference instruction, and for the Court to presume that CreatorIQ infringed all of Famous Birthdays' bios.  At bare minimum, the Court should compel CreatorIQ to produce the discovery that it agreed to provide long ago and to award Famous Birthdays its fees, in the amount to be established by a separately noticed motion.

## II.   FACTUAL BACKGROUND

### A.   Famous Birthdays Discovers CreatorIQ's Infringement

This case arises from CreatorIQ's infringement of Famous Birthdays' copyrighted bios of celebrities and influencers.  Famous Birthdays has over 230,000 such bios featured on its website.  CreatorIQ previously licensed 100,000 of these profiles in 2018 for use in its celebrity and influencer discovery platform, but that agreement, and CreatorIQ's limited license, terminated on August 23, 2018.

However, in June 2021, Famous Birthdays learned that CreatorIQ was displaying its copyrighted bios in its platform when a global advertising firm, Dentsu Inc., stated it had observed duplication of Famous Birthdays' data on the CreatorIQ platform.  Famous Birthdays then discovered many instances of its copyrighted bios appearing throughout CreatorIQ's website, marketing materials, and press releases.

### B.   Famous Birthdays Makes Significant Efforts To Meet And Confer

Famous Birthdays filed its original Complaint asserting claims for copyright infringement on December 9, 2021.  Shortly after the Rule 26(f) conference on May

19, 2022, Famous Birthdays served comprehensive discovery requests on June 9, 2022.  (Beatty Decl. Ex. C.)  CreatorIQ obtained an extension and served responses on August 1, 2022.  (Beatty Decl. Ex. D.)

The responses to the document requests ("RFPs") were deficient and deceptive.  For example, in response to certain requests, CreatorIQ incorrectly claimed no responsive documents exist.  (RFP Nos. 24-25, 28, 30, 52, and 57).  In response to RFP Nos. 38-41, relating to customizable "One-Sheets" that its customers create on its platform, CreatorIQ took the position that customizable "One-Sheets" that their customs create on its platform, belong to their customers and refused to produce them.

Famous Birthdays sought to meet and confer immediately.  (Beatty Decl., Ex. D).  Unfortunately, CreatorIQ delayed and the meet and confer didn't occur until August 30, 2022.  Then, CreatorIQ committed to supplementing its responses, asked for and received two extensions, and served supplemental responses on September 23, 2022, that were still insufficient.

In the supplemental responses, CreatorIQ claimed again that the "One-Sheets" cannot be produced.  (App. Ex. 1 at Supp. Responses to RFP Nos. 38-41.).  In six instances, CreatorIQ's supplemental responses acknowledged that its prior statements that no responsive documents existed were false.  (App. Ex. 1 at Supp. Responses to RFP Nos. 24-25, 28, 30, 52, and 57.)  Further, despite the supplemental responses agreeing to produce documents in response to 48 RFPs, no responsive documents have been produced in response to 37 of those RFPs.  (*Id.*; App. Ex. 1.)  Specifically, CreatorIQ agreed to produce documents in response to the following RFPs, but has not done so:  RFP Nos. 4-7, 12, 20-28, 30-37, 42-45, 48, 52, 54, 56-62.  (*Id.*)

### C.   Alongside Written Discovery, CreatorIQ Strings Famous Birthdays Along with Respect to Database Access

Alongside written discovery, Famous Birthdays worked diligently to work on a solution for access to CreatorIQ's database.  The critical discovery tasks in this case were to: (1) compare Famous Birthdays' copyrighted bios to their counterparts within

CreatorIQ's platform, which is behind a customer paywall; and (2) compare Famous Birthdays' copyrighted bios to the historical archives of their counterparts within CreatorIQ's platform.  (Beatty Decl. ¶ 5.)  Indeed, CreatorIQ agreed, stating in its portion of the Rule 26(f) Report that: "A threshold issue in this case is the identification of the profiles at issue and the scope of infringement, if any.  To address the threshold issue, Defendant and Plaintiff are engaged in ongoing discussions regarding the most efficient procedure with respect to Defendant's database. . . . Significant resources would be required to analyze this amount of data.  Accordingly, Defendant is evaluating an amenable protocol and the attendant costs, and will continue its discussion with Plaintiff to address this threshold issue."  (App. Ex. 2 (Dkt. No. 63) ("Rule 26 Report") at 8:10-19.)

Unfortunately, as set forth *infra* Part II.D, CreatorIQ willfully destroyed evidence relating to its database and failed to preserve the historical archives.  Thus, these threshold issues have been rendered impossible to accomplish.

As to the first task, CreatorIQ has given Famous Birthdays the run-around for many months, and it is clear it is now clear it was unwilling to provide this critical discovery due to its spoliation.  Beginning in April and May, 2022, CreatorIQ represented that it had operations based in Ukraine and as such, it was having delays in putting together an amenable protocol for accessing its database, owing to the Russian invasion.  (Beatty Decl. ¶ 7.)  Famous Birthdays attempted to be sensitive to this issue, but it's now clear CreatorIQ was using excuses to avoid its discovery obligations because during this time, CreatorIQ continued to deploy its millions of dollars in funding, expand its business, and hire employees.  (*Id.*)

On June 23, 2022, CreatorIQ's counsel called Famous Birthdays' counsel and offered the option of a screen-share as a means for Famous Birthdays to get limited database access.  (Beatty Decl. ¶ 8.)  Famous Birthdays' counsel asked if such access would provide the ability to access historical archives, and CreatorIQ's counsel stated he would look into that.  (*Id.*)  CreatorIQ's counsel subsequently stated no historical

archive access would be provided, but nonetheless, Famous Birthdays' counsel stated the screen-share could be a helpful first step. (*Id*.) CreatorIQ's counsel then failed to follow up with a protocol for months. (*Id*. ¶ 14.)

### D. Famous Birthdays Learns CreatorIQ Purged Critical Evidence

On September 9, 2022, Famous Birthdays demanded access to CreatorIQ's database, stating that it would otherwise move to compel and/or for a forensic examination. (Beatty Decl. Ex. G.). In response, on September 12, 2022, CreatorIQ's counsel responded with a screen-share protocol, which was limited to 200 profiles (0.08% of the 250,000 profiles at issue) and wherein Famous Birthdays could only search for profiles that were subject to the License Agreement. (*Id*., Ex. H.). This led to much negotiation before CreatorIQ agreed to a marginally more useful protocol: a screen-share that was limited to 500 profiles (0.2% of the 250,000 profiles at issue) and without limiting the profiles subject to the License Agreement. (*Id*. ¶ 18.)

Importantly, the screen-share that was conducted on September 29 and 30, 2022, revealed that CreatorIQ had intentionally wiped all bios from its database in response to this lawsuit.[2] (Beatty Decl. ¶ 11-13.) During the screen-share, which CreatorIQ limited to 500 profiles (0.2% of the 250,000 bios at issue), it was clear that CreatorIQ had engaged in a massive removal of all the Famous Birthdays bios in its database. (*Id*.) Famous Birthdays' counsel raised this issue during the September 29 screen-share. (*Id*. ¶12.) CreatorIQ's counsel responded that after the lawsuit was filed, CreatorIQ updated the profiles in the database. (*Id*.) Famous Birthdays' counsel asked how the profiles had been preserved and CreatorIQ's counsel agreed to get back to him. (*Id*.)

---

[2] In early motion practice, CreatorIQ claimed that after the lawsuit was filed, "CIQ took immediate steps to identify the materials referenced in the Complaint and updated these bios with biographical data provided by [other sources" and "undertook a search of our databases and confirmed that any data that Plaintiff might have provided during a 2018 license was removed from the database." (Murray Decl. ¶ 3.). Discovery obligations required CreatorIQ to preserve any such changes, which it did not do. In addition, at the time these statements were made, Famous Birthdays construed them to only pertain to the nine infringing bios identified in the Complaint.

CreatorIQ's counsel followed up with an email that stated that "the reason for the distinction for the profiles is that we updated the profiles once your client filed the complaint." (Beatty Decl. Ex. A.)  This confirmed that the removal of infringing bios went beyond the nine identified in the Complaint and FAC.

### E.   CreatorIQ Produces A Bare-Bones Chart That Proves It Cannot Re-Create The Evidence And the Destruction Is Irreversible

On October 7, 2022, Famous Birthdays sent a meet and confer letter asking CreatorIQ to stipulate to a forensic examination, in light of the admitted spoliation of evidence and CreatorIQ's inability to retrieve such evidence, in order to avoid a motion for spoliation sanctions. (Beatty Decl. Ex. F.)  CreatorIQ responded on October 13, 2022, refusing to acknowledge its wrongdoing, stating it would not produce further evidence, and demanding Famous Birthdays retract its request for a forensic examination, or else face sanctions. (*Id*. Ex. G.)  Notably, this letter did not deny that the archives are irretrievably lost, but rather stated that "[Famous Birthdays] cannot show [CreatorIQ] destroyed any evidence with a culpable state of mind." (*Id*. Ex. G at 3.)  Further, CreatorIQ again conceded that it updated its database after this lawsuit was filed, but remained silent as to any preservation. (*Id*.)

Famous Birthdays responded on October 15, 2022, that in light of CreatorIQ's refusal to acknowledge the gravity of its spoliation and based on its repeated statements that the data was not recoverable, Famous Birthdays would seek spoliation sanctions unless CreatorIQ would stipulate to the same. (*Id*. Ex. H.). On October 17, 2022, CreatorIQ sent a response, claiming that if the parties retained experts and CreatorIQ was given enough time, it could re-create the spoliated evidence. (*Id*. Ex. I.)  The claim that CreatorIQ could re-create the spoliated evidence was at odds with its prior statements swearing that no archives existed or could be recovered.

Indeed, CreatorIQ could not, in fact, recreate the evidence.  On November 1, 2022, CreatorIQ produced an excel spreadsheet of "amended bios," listing names of influencers, the text of the current bios and the bios as of December 2021.  There are

41,023 entries.  Although the prior bio is listed to be "CIQ's 12/21 Bio," the bios are copies of Famous Birthdays' bios.  (Beatty Decl. ¶ 15.).  The barebones chart does not recreate the incriminating evidence from CreatorIQ's database, though the spreadsheet does constitute an incriminating admission with respect to the bios.  The admitted amount of copied bios is now at 50,135, with the potential for many more.  (*Id.* ¶ ___.)

**III.   Terminating or Adverse Inference Sanctions Are Necessary to Cure the Prejudicial Effect of Defendant's Spoliation of Evidence**

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation.'" *Karma Automotive LLC v. Lordstown Motor Corp. et al*, 2021 WL 4691908, at *2 (C.D. Cal. Sept. 16, 2021) (quoting *Kearney v. Foley & Lardner*, *LLP*, 590 F.3d 638, 649 (9th Cir. 2009)).  "Federal Rule of Civil Procedure 37 ('Rule 37') authorizes the Court to sanction non-adherence to discovery rules, including spoliation of evidence." *Colonies Partners, L.P. v. County of San Bernadino*, 2020 WL 1496444, at *2 (C.D. Cal. Feb. 27, 2020) (footnote omitted), *report and recommendation adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020).

"Before determining the appropriate sanctions, Rule 37(e) requires the Court to assess the following four criteria: (1) whether the information qualifies as electronically stored information ('ESI'); (2) whether the ESI is 'lost' and 'cannot be restored or replaced through additional discovery'; (3) whether the ESI 'should have been preserved in the anticipation or conduct of litigation'; and (4) whether the responding party failed to take reasonable steps to preserve the ESI." *Id* (citing Fed. R. Civ. P. 37(e)).

"If those criteria are met, and the reviewing court finds there is 'prejudice to another party from [the] loss of [ESI],' the Court may 'order measures no greater than necessary to cure the prejudice.'" *Id* (quoting Fed. R. Civ. P. 37(e)(1)).  *See also RG Abrams Ins. v. Law Offices of C.R. Abrams*, 2022 WL 3133293, at *29 (C.D. Cal. July 1, 2022) (Audero, M.J.) ("If the party seeking the information has been prejudiced, the

Court may order whatever measures are necessary to cure the prejudice."). Additionally, upon a finding that the spoliation was done "with the intent to deprive another party of the information's use in the litigation", the Court may order measures greater than necessary to cure the prejudice, including an adverse inference instruction, a presumption by the Court that the ESI was favorable to the moving party, and default judgment. Fed. R. Civ. P. 37(e)(2).

Here, are all of the criteria for spoliation are met and the evidence is established that it was done with the intent to deprive Famous Birthdays of key evidence. As such, the only measures that could cure the significant prejudice to Famous Birthdays are terminating sanctions, or in the alternative, an adverse inference instruction, and for the Court to presume the evidence was favorable to Famous Birthdays.

**A.    The Lost Bios Qualify as ESI**

ESI is broadly defined to include "data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." Fed. R. Civ. P. 34(a)(1)(A). "The 2006 advisory committee note to Rule 34 explains that the meaning of ESI 'is expansive and includes any type of information that is stored electronically.'" *Alsadi v. Intel Corp.*, 2020 WL 4035169, at *2 (D. Ariz. July 17, 2020) (quoting Fed. R. Civ. P. 34(a)(1) discovery committee note to 2006 amendment). This broad definition applies after the 2015 amendments, as well. *Id* (citing Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendment).

Thus, data stored in an electronic database and displayed on CreatorIQ's online platform is ESI. *See U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240 (S.D. Cal. Feb. 20, 2015) (holding "Backup Databases to be discoverable ESI under Rule 34" and finding defendants "responsible for its preservation").

**B.    The ESI is Lost and Cannot be Restored or Replaced**

"[T]he irretrievable loss" of ESI can be "evidenced by the very admissions" of the spoliating parties themselves. *RG Abrams*, 2022 WL 3133293, at *28.

CreatorIQ has made clear-cut admissions, which have been supported by findings from the screen-share the parties' counsel conducted, that prior versions of the bios are irretrievably lost.  It is irrelevant that CreatorIQ purportedly removed the infringing data in response to a preliminary injunction motion because it had a duty to preserve the evidence when it engaged in such removal, and it failed to do so.  In an analogous case, defendants submitted declarations that when they received "'takedown' notifications and requests to remove alleged infringing materials from [their] three websites," they would engage in such removal, but their "email system [would] automatically delete" the evidence of the infringement they took down."  *Io Group Inc. v. GLBT Ltd.*, 2011 WL 4974337, at *5 (N.D. Cal. Oct. 19, 2011).  Thus, the Court concluded that defendants "have conceded that they destroyed evidence and have not demonstrated that production of the spoliated evidence would have been 'impossible,'" and, as such, severe sanctions, including adverse inference sanctions, were warranted.  *Id*. at *5-8.

In this case, the ESI is lost.  CreatorIQ's President, Dan Murray, and its VP – Head of Sales, Jonathan Kroopf, both affirmed that, in response to this lawsuit, CreatorIQ removed bios that infringed on Famous Birthdays' copyrighted bios from CreatorIQ's platforms.  (Murray Decl. ¶ 3; Kroopf Decl. ¶ 11.)  CreatorIQ's own counsel affirmed that CreatorIQ "updated" the profiles in its platform after this lawsuit was filed.  (Beatty Decl. Ex. A.). The screen-share that counsel for the parties conducted on September 29 and 30, 2022 revealed that infringing bios not identified in the Complaint and FAC were removed from CreatorIQ's platform, and indeed, bios featured on CreatorIQ's website, which did not infringe Famous Birthdays' bios, were also removed from the platform, as part of a widespread deletion of all third-party bios in CreatorIQ's platform, which occurred in response to this lawsuit.  (Beatty Decl. ¶18). Finally, the "Amended bios" excel chart produced by CreatorIQ confirmed that over 41,000 profiles were changed by CreatorIQ after December 2021, and that prior to December 2021, the CreatorIQ bios were nearly verbatim, infringing copies of

10

Famous Birthdays' bios.  (*Id.*)  That list has now grown to over 50,000 bios. And CreatorIQ's counsel stated it would provide data on another 210,000 influencers on Nov. 23, but has not done so.  (*Id.*, Ex. K.)

The ESI cannot be restored or replaced through additional discovery. CreatorIQ has twice confirmed its inability to replace the ESI.  On August 1, 2022, it responded to RFP Nos. 49-51, requesting historical archives of the bios in its platforms, and any drafts of the same, by stating that no responsive documents existed.  (App. Ex. 1 at RFP Nos. 49-51.)  On August 9, 2022, Famous Birthdays pointed out to CreatorIQ that if these responses are true, they "raise significant concerns about preservation of evidence."  (Beatty Decl. Ex. D at 4.)  Famous Birthdays stressed the importance of this issue, stating: "historical archives of the biographies are crucial to determining the extent of the infringement in the years before the infringement was discovered," particularly since "CreatorIQ's President, Dan Murray, confirmed under penalty of perjury that upon learning of this Lawsuit, CreatorIQ sought to remove infringing biographies identified in the Complaint from CreatorIQ's platforms," (Murray Decl. ¶ 3.)

After being advised of these significant concerns and meeting and conferring on this issue, CreatorIQ served supplemental responses affirming that it "made a diligent search and reasonable inquiry with its technical department to comply with the request" but it "lacks the ability to comply with this Request because the particular item or category requested has never existed."  (App. Ex. 1 at RFP Nos. 49-51.)  Thus CreatorIQ has unequivocally taken the position that the ESI is irretrievably lost in its discovery responses.

Incredibly, on September 29, 2022, when the widespread spoliation was brought to CreatorIQ's counsel's attention and he was asked to explain what preservation efforts CreatorIQ took, he stated that "[a]s to the previous version of the biographies, we can put together the version of the biographies before the update but this will take some time."  (Beatty Decl. Ex. A.).  After continuing to delay on

providing such discovery, on October 17, 2022, CreatorIQ's counsel stated again that the "data is available to [CreatorIQ] and can be gathered if given sufficient time." (Beatty Decl. Ex. I.). CreatorIQ's statement though reveals that they could purport to reconstruct what was on the database but not recover what was deleted.

To date, CreatorIQ has produced only the excel spreadsheet for approximately 41,000 of the bios. (Beatty Decl., Ex. L.). This spreadsheet is an inferior and incomplete substitute for the archived webpages from the CreatorIQ website. The bare-bones spreadsheet does not have the look of feel of what the profiles looked like on CreatorIQ's website. This hinders Famous Birthdays' ability to showcase to a jury how CreatorIQ utilized and monetized their infringement to sell their own competing product to customers. Having a jury look at CreatorIQ's website, with CreatorIQ branding, showcasing Famous Birthdays' copyrighted bios would have been the best evidence for Famous Birthdays to present at trial. Instead, Famous Birthday only has as incomplete chart of the text of the bios, which does not demonstrate how CreatorIQ actually utilized the infringing bios for their own financial gain.

Moreover, the reliability of any bios "put together" after the fact is dubious at best. *See Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at *7 (N.D. Cal. Mar. 28, 2022) ("This Court has previously determined where recovery of ESI is minimal and the spoliation vast, the third factor is satisfied."); *RG Abrams*, 2022 WL 3133293, at *28 ("In *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995), the Ninth Circuit found prejudice when a party's refusal to provide certain documents 'forced [plaintiff] to rely on incomplete and spotty evidence' at trial.").

CreatorIQ has known from the early days of this case that these historical archives are at issue. The RFPs were served over four months ago and all discovery closes on December 19, 2022. Any argument by CreatorIQ that it can produce further "re-created evidence" with more time, is unavailing. CreatorIQ was given many chances to produce the key evidence in this case and repeatedly stated the evidence

does not exist.  It then claimed it could "re-create" the evidence, but to date, has only produced an incomplete excel spreadsheet of 41,000 bios that fails to show how CreatorIQ used the infringing bios on its website to monetize their misconduct.  Time has run out for CreatorIQ to have produced this critical evidence.

### C.    The ESI Should Have Been Preserved in the Conduct of Litigation

"The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."  *Colonies Partners*, 2020 WL 1496444, at *6 (quoting *CTC Global Corp. v. Huang*, 2019 WL 6357271, at *2 (C.D. Cal. July 3, 2019)).  "'As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which [he or she] knows or reasonably should know is relevant to the action' or 'may be relevant to future litigation.'"  *Id* (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067-68 (N.D. Cal. 2006)).  Moreover, "because of the difficulty of ascertaining the details regarding the relevance of documents or information that no longer exist, [the spoliating party] is in no position to argue for a presumption of irrelevance to documents that . . . [they] destroyed while on full notice of their potential relevance to the claims and defenses."  *Skyline Adv. Technology Servs. v. Shafer*, 2020 WL 13093877, at *10 (N.D. Cal. July 14, 2020), *report and recommendation adopted*, 2020 WL 13093878 (N.D. Cal. July 30, 2020).

Here, CreatorIQ's President, Dan Murray, its VP-Head of Sales, Jonathan Kroopf, and its counsel have all conceded that the destruction of evidence occurred *specifically in response to this lawsuit*.  (Murray Decl. ¶ 3; Kroopf Decl. ¶ 11; Beatty Decl. Ex. A.)  And CreatorIQ was represented by Cooley at the time this deletion happened.  Thus, there is no possible excuse.  And although it was not required to, Famous Birthdays sent a formal demand to CreatorIQ to preserve all evidence, including its database, on January 4, 2022, shortly after CreatorIQ was served with this lawsuit.  (Beatty Decl. Ex. J.)  Naturally, the duty to preserve evidence attached

13

once CreatorIQ was served with this lawsuit, and the Complaint obviously put CreatorIQ on notice that the bios in its platform were not only relevant to the claims, but were key evidence.  Indeed, it deleted them specifically so it could defeat a preliminary injunction motion but did not preserve the evidence.

### D.   CreatorIQ Failed to Take Reasonable Steps to Preserve ESI

Terminating sanctions for spoliation of evidence have been awarded, and upheld, where the defendant "failed to preserve a copy of its . . . web-based database" in the form in which it existed during the relevant time period.  *Volcan Grp., Inc. v. Omnipoint Comms., Inc.*, 552 Fed. App'x 644, 645 (9th Cir. 2014).

CreatorIQ did not take any steps to preserve the prior version of the bios in its database.  Once again, its own discovery responses defeat any possible argument that CreatorIQ took steps to preserve the ESI.  After being party to this lawsuit, having retained counsel, CreatorIQ engaged in widespread removal of bios from its platform without taking any steps to preserve how the bios looked prior to such removal. Notably, Famous Birthdays' counsel asked CreatorIQ's counsel what steps it took to preserve the prior versions of the bios when it "updated" them, and CreatorIQ's counsel did not respond with a single step CreatorIQ took.  (Beatty Decl. Ex. A.) Instead, CreatorIQ's counsel suddenly stated that they could "put together" prior versions of the bios but that it would "take some time", despite having twice informed Famous Birthdays that it was technically impossible to retrieve prior versions of the bios.  (App. Ex. 1 at RFP Nos. 49-51; Beatty Decl. Ex. A.)

Indeed, even "[r]outine destruction constitutes spoliation where a party 'had some notice that the documents were potentially relevant to the litigation before they were destroyed[.]'"  *Colonies Partners*, 2020 WL 1496444, at *7 (quoting *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).  Courts have found that "[d]efendants engaged in reckless and egregious discovery misconduct" when they have failed to take "adequate precautions to safely maintain the older information, which was plainly relevant to this litigation and should have been the subject of a

14

litigation hold." *Keithley v. Home Store.com, Inc.*, 2008 WL 3833384, at *16 (N.D. Cal. Aug. 12, 2008).

Here, the destruction was anything but routine. It was done in conjunction with a preliminary injunction motion and to attempt to hide years of copyright infringement and wrongdoing. CreatorIQ should have preserved a back-up.

## E. Terminating, Or Alternatively, Adverse Inference Sanctions Are Necessary

Because the foregoing factors are met, two categories of sanctions are available. Under Fed. R. Civ. P. 37(e)(1), the Court "may order measures no greater than necessary to cure the prejudice." However, under Fed. R. Civ. P. 37(e)(2), if the Court finds that CreatorIQ "acted with the intent to deprive" Famous Birthdays of the lost information in litigation, the Court may issue an adverse inference instruction, enter a default judgment, or presume the evidence was favorable to Famous Birthdays.

### 1. CreatorIQ Acted with Intent to Deprive

"Although Rule 37(e) does not define intent, courts have found that a party's conduct satisfies the Rule 37(e)(2) 'intent requirement when the evidence shows or it is reasonable to infer[] that the [] party purposefully destroyed evidence to avoid its litigation obligations.'" *RG Abrams*, 2022 WL 3133293, at *30 (quoting *Porter v. City & County of San Francisco*, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018)). "In the Ninth Circuit, destruction of evidence is considered willful spoliation when a party has 'some notice that documents were *potentially* relevant to litigation before they were destroyed.'" *Id* (quoting *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)) (emphasis in original). "Moreover, intent may be inferred where a party is on notice that documents potentially are relevant but fails to take the steps necessary to preserve them, or otherwise seeks to keep incriminating facts out of evidence." *Id* (collecting cases). "Also informative to the intent analysis is the timing of the document loss." *Id*. *See also Skyline Adv. Technology*, 2020 WL 13093877, at *10 ("In this circuit destruction of evidence is considered willful spoliation when a

party has some notice that documents were potentially relevant to litigation before they were destroyed.").

The circumstances here are clear evidence of an intent to deprive. CreatorIQ had more than "some notice that [the bios] were *potentially* relevant to litigation before they were destroyed" – it knew from the Complaint and the motion for preliminary injunction that the bios were the key piece of evidence in the litigation before they were destroyed. By CreatorIQ's own admission, as well as that of its counsel, it destroyed the evidence *in response to the Complaint*. (Murray Decl. ¶ 3; Kroopf Decl. ¶ 11; Beatty Decl. Ex. A.)

Moreover, since intent may be inferred even when a party on notice that documents are potentially relevant "fails to take the steps necessary to preserve them", there is no question here that CreatorIQ's intent to deprive Famous Birthdays of the data may be inferred.

CreatorIQ has indicated in meet and confer correspondence that its defense is that it merely "updated" the profiles. The distinction is pedantic. Spoliation includes "the destruction *or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation.*'" *Karma Automotive*, 2021 WL 4691908, at *2 (quoting *Kearney*, 590 F.3d at 649) (emphasis added). Obviously, the profiles have been significantly altered and CreatorIQ has failed to preserve them for Famous Birthdays' use in this litigation.

Intent to deprive is clear here. CreatorIQ is a sophisticated company that has raised nearly $100 million in Venture Capital funding and has a large number of Fortune 500 companies as enterprise clients, and was represented by one of the most sophisticated law firms in the world (Cooley LLP) when it conducted its removal of the infringing bios without taking a single step to preserve the evidence it was deleting. Moreover, its counsel had been served with a preservation of evidence demand. (Beatty Decl. Ex. J.) It did so because it knew the evidence was the key piece of evidence in this litigation, as evidenced by the fact that it argued its deletion

as a defense to the preliminary injunction motion.  Shockingly, despite all its resources and sophistication, it did not make a back-up or do anything to preserve the evidence it knew to be relevant and critical to Famous Birthdays' case.  This evidence strongly suggests an intent to deprive Famous Birthdays of the evidence it needed to ascertain the full extent of CreatorIQ's infringement.

Accordingly, sanctions under Rule 37(e)(2) are warranted for spoliation with intent to deprive.  "When faced incidents of mass spoliation, the Ninth Circuit and this Court have found that" sanctions short of terminating sanctions are insufficient. *OnlineNIC*, 2022 WL 2289067, at *11.  Thus, where the spoliation is willful and widespread, courts have concluded that "any lesser sanction [than terminating sanctions] would be inappropriate under the circumstances." *Id.*  Indeed, the Ninth Circuit has upheld the most severe sanctions, including terminating sanctions, for willful spoliation of key evidence where "[t]he district court [] had a sufficient basis for concluding that [the spoliating party's] 'discovery violations ma[de] it impossible … to be confident that the parties [would] ever have access to the true facts.'" *Volcan Grp.*, 552 Fed. App'x at 946 (quoting *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007)).  Moreover, the Ninth Circuit has also upheld terminating sanctions, where the spoliating party has engaged in a "pattern of deception and discovery abuse [that make] it impossible for the district court to conduct [] trial with any reasonable assurance that the truth would be available." *Connecticut Gen. Life Ins.*, 482 F.3d at 1097.

Given that the spoliation is of the most important piece of evidence in this entire case—the evidence of which bios were in the database and where they were located—and CreatorIQ has engaged in a pattern of deception with respect to discovery responses throughout this case, only the most severe sanctions are appropriate.  Thus Famous Birthdays seeks a default judgment or, in the alternative, for the Court to presume the lost data was favorable to Famous Birthdays (i.e., that the prior version of the bios would have shown that CreatorIQ was infringing all 250,000

17

of Famous Birthdays' copyrighted bios), and an adverse inference instruction that all of the lost evidence was favorable to Famous Birthdays both in terms of the scope of infringement and how the material was used.

### 2.     Terminating and Adverse Inference Sanctions Are Necessary to Cure the Prejudice to Famous Birthdays

Even if the Court concludes that CreatorIQ's spoliation was not willful, the only measures that can cure the prejudice to Famous Birthdays are terminating sanctions, an adverse inference instruction, and for the Court to presume that the lost ESI was favorable to Famous Birthdays.

"Prejudice exists where 'the [spoliating party's] actions impaired [the moving party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'" *RG Abrams*, 2022 WL 3133293, at *29 (quoting *U.S. ex rel. Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)).

This a copyright infringement case with 250,000 copyrighted bios at issue. Famous Birthdays does not have, and has never had, access to CreatorIQ's database to determine the extent of infringement. Instead, it learned of the infringement in June 2021 when a potential client informed it that it observed duplication of Famous Birthdays' bio within CreatorIQ's platform. Famous Birthdays then performed research and found that CreatorIQ's public-facing website, marketing materials, and press releases repeatedly showed bios stolen from Famous Birthdays. Thus, Famous Birthdays knows that CreatorIQ's infringement within the platform is so widespread that any time CreatorIQ has taken screenshots from the platform to display to the public, it has picked up infringing bios as part of that process. It also knows the infringement is so widespread that a global advertising firm, Dentsu, Inc., thought it had partnered with CreatorIQ, based on the extent of the duplication of Famous Birthdays' bios in CreatorIQ's platform.

Because 250,000 copyrighted bios are at issue, the key issue, is the number of instances of infringement. CreatorIQ, by deleting all the infringing bios from its

---

18

database without preserving a back-up of them, has foreclosed Famous Birthdays' ability to ever determine the full extent of the infringement. This is highly prejudicial. Even for other remedies available under the Copyright Act, such as disgorgement, the degree of duplication of bios during the relevant time period is key to any expert analysis.

Accordingly, given how all-encompassing the prejudice to Famous Birthdays is, default judgment is appropriate. Alternatively, the absolute minimum needed to cure the prejudice to Famous Birthdays is for the Court and any jury to presume that – before CreatorIQ destroyed the evidence – its platform infringed on all of Famous Birthdays' copyrighted bios.

## IV.   At Minimum, CreatorIQ Must be Compelled to Produce Discovery

Pursuant to Federal Rule of Civil Procedure 37(a), "a party may move for an order compelling disclosure or discovery." Specifically, a party may seek an order compelling production where "a party fails to produce documents." Fed. R. Civ. P. 37(a)(3)(B)(iv). *See also Smith v. Gaulding*, 2022 WL 2145493, at *1 (C.D. Cal. Mar. 8, 2022) ("If a responding party fails to . . . produce documents, the requesting party may move to compel the production of the requested responsive documents."). "Once relevance has been established, the burden then shifts to the non-moving party to show that discovery should be disallowed and to support its objections with evidence. *Smith*, 2022 WL 2145493, at *1. In this case, CreatorIQ has promised to produce essential evidence but has failed to abide by its empty assurances.

### A.   CreatorIQ Cannot Withhold the Customizable "One-Sheets"

CreatorIQ's contentions that it cannot produce customizable "One-Sheets", despite evidence and allegations that those One-Sheets contain Famous Birthdays' copyrighted bios and were created on CreatorIQ's platform, are without merit. CreatorIQ's counsel agreed to produce the One-Sheets by November 21, 2022. That day and came went with no production, and with counsel asking for additional time. (Beatty Decl. Ex. M.)

The One-Sheets were asked for in discovery.  RFP No. 38 requests all documents and communications relating to customizable "One-Sheets" that CreatorIQ's clients create on its platform.  (App Ex. 1 at RFP No. 38.)  Even after meeting and conferring, CreatorIQ's supplemental response claims that its "customers create them [the One-Sheets] on their own and the data belongs to them." (*Id.*)  RFP No. 39 requests all "One-Sheets" that have been created for CreatorIQ's clients, all drafts of such One-Sheets, and all historical archives.  (App. Ex. 1 at RFP No. 39, 40, 41.)  In response, CreatorIQ again claimed that the data belongs to their customers. (*Id.*)

First, even if CreatorIQ is right that the One-Sheets belong to their customers, that has no bearing on whether CreatorIQ can produce documents and communications relating to the One-Sheets.  (App. Ex. 1 at RFP No. 38.)  For example, emails pitching their One-Sheets, emails with their clients that contain copies of One-Sheets, and discussions about the One-Sheet feature all clearly do not belong to their clients.  Those documents should be produced immediately.

Second, CreatorIQ's position that One-Sheets created on its platform are somehow not within its power to produce is completely illogical.  Rule 34 broadly required a responding party to produce all documents in its "possession, custody, or control."  Fed. R. Civ. P. 34(a).  "Control is defined as the legal right to obtain documents upon demand."  *U.S. v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989).  "Thus, '[a] party responding to a Rule 34 production request . . . 'is under an affirmative duty to seek that information readily available to [it] from [its] employees, agents, or other subject to [its] control.'"  *Hill v. Eddie Bauer*, 242 F.R.D. 556, 560 (C.D. Cal. Mar. 29, 2007) (quoting *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992)).

Here, it strains credulity for CreatorIQ to claim that One-Sheets, which are created on its platform, using data that it provides its customers (which data includes Famous Birthdays' copyrighted bios that CreatorIQ has infringed), somehow are not

within CreatorIQ's possession, custody, or control.  CreatorIQ should be compelled to immediately produce all One-Sheets within its possession, custody, or control, including any drafts and archives.

**B.      CreatorIQ Must Produce Outstanding Documents**

CreatorIQ is delinquent in its document production as to the following RFPs, despite committing to comply with them:

RFP No. 4 – all documents and communications relating to the LICENSED CONTENT (the 100,000 bios Famous Birthdays provided to CreatorIQ pursuant to the 2018 agreement).  (App Ex. 1 at RFP No. 4; Beatty Decl. Ex. C.). This evidence is clearly critical as the misuse of the Licensed Content is a key issue in this case.

RFP Nos. 5-6 – all documents and communications relating to the License Agreement and the termination thereof.  (App. Ex. 1 at RFP Nos. 5-6.)  This is similarly critical evidence, as breach of the License Agreement is a key claim.

RFP No. 7 – all documents relating to CreatorIQ's steps following the termination of the License Agreement to ensure it was no longer using the Licensed Content as part of its business.  (App. Ex. 1 at RFP No. 7.)  This evidence is also critical as it will shed light on how it came to be that CreatorIQ was using Famous Birthdays' copyrighted bios in 2021.

RFP No. 12 – all documents and communications relating to the editing and/or drafting of celebrity and influencer biographies.  (App. Ex. 1 at RFP No. 12.)  CreatorIQ claims in its Answer that it independently writes its own bios.  Famous Birthdays is entitled to test this assertion.

RFP No. 20 – all documents and communications relating to all projections of CreatorIQ.  (App. Ex. 1 at RFP No. 20.) This evidence is relevant to Famous Birthdays' damages, as it is entitled to disgorgement as a remedy for infringement.

RFP No. 21 – all documents and communications relating to all instances where Famous Birthdays' data appears in CreatorIQ's platforms.  (App. Ex. 1 at RFP No. 21.) This goes to the critical question of the extent of infringing activities.

RFP Nos. 22-23 – all documents and communications relating to internal investigations CreatorIQ has performed relating to Famous Birthdays and Famous Birthdays' data. (App. Ex. 1 at RFP Nos. 22-23.) This is significant evidence that will shed light on what CreatorIQ discovered on the extent of its infringement.

RFP Nos. 24-25 – all documents and communications CreatorIQ referred to and/or relied upon in drafting its responses to Famous Birthdays' First Set of Interrogatories and Requests for Admission. (App. Ex. 1 at RFP Nos. 24-25.) Famous Birthdays is entitled to know how CreatorIQ supports its responses.

RFP Nos. 26-28 – all documents and communications relating to CreatorIQ's response to this lawsuit, including any steps to identify any instances where Famous Birthdays' data appears in its platforms, and any steps it took to remove such data. (App. Ex. 1 at RFP Nos. 26-28.) CreatorIQ has conceded that it engaged in post-lawsuit removal of infringing bios. (Beatty Decl. Ex. I.) Famous Birthdays is entitled to know the extent of such post-lawsuit removal of infringing bios, particularly because CreatorIQ failed to preserve this evidence.

RFP Nos. 30-37 – all documents and communications supporting CreatorIQ's defenses and assertions in its Answer. (App. Ex. 1 at RFP Nos. 30-37.) Famous Birthdays is entitled to know the information CreatorIQ relies on for its defenses.

RFP Nos. 42-43 – all documents and communications relating to the nine biographies identified as infringing Famous Birthdays' copyrights in the FAC, and any changes made to those bios since this lawsuit was filed. (App. Ex. 1 at RFP Nos. 42-43.) Again, this evidence is obviously relevant.

RFP Nos. 44-45 – all documents shared with any potential investors and potential clients relating to CreatorIQ's software. (App. Ex. 1 at RFP Nos. 44-45.) This evidence is central to Famous Birthdays' disgorgement theory, as it will show the prevalence of Famous Birthdays' copyrighted bios during CreatorIQ's pitches.

RFP No. 48 – all documents and communications relating to CreatorIQ's database of celebrity and influencer profiles. (App. Ex. 1 at RFP No. 48.) This

evidence is significant because CreatorIQ has completely failed to provide database access, and as such, the only way to figure out the extent of its infringing activities (aside from full database access, which is also requested) is for CreatorIQ to be forced to incur the expense of searching its database.

RFP No. 52 – all celebrity and influencer biographies in CreatorIQ's platforms that are derived from Famous Birthdays' data.  (App. Ex. 1 at RFP No. 52.)  Obviously, this evidence is critical because it goes straight to the question of the extent of CreatorIQ's infringing activities.

RFP No. 54 – all documents and communications relating to CreatorIQ's policies and procedures with respect to the intellectual property of third-parties.  (App. Ex. 1 at RFP No. 54.)  This evidence is relevant as it goes to CreatorIQ's willfulness in its infringing activities, thus informs the statutory damages analysis.

RFP No. 56 – all documents and communications relating to the removal or editing of any biographies following assertions by Famous Birthdays that those bios infringed its copyrights.  (App. Ex. 1 at RFP No. 56.)  This evidence is also critical because it will inform the extent of any infringing activities prior to this lawsuit being filed, as well as CreatorIQ handles reports of copyright violations.

RFP No. 57 – all communications in which CreatorIQ informed Famous Birthdays it failed to provide any of the required data as required by the License Agreement.  (App. Ex. 1 at RFP No. 57.)  CreatorIQ argues it is not liable for breach of contract because Famous Birthdays did not perform its obligations under the License Agreement.  Obviously, evidence supporting that defense is critical.

RFP Nos. 58-62 – all documents and communications relating to Dentsu Inc., all presentations CreatorIQ made to Dentsu Inc. during the relevant time period, all communications between them, CreatorIQ's subscription revenues from Dentsu Inc., and documents sufficient to show all products and serviced offered to Dentsu Inc. (App. Ex. 1 at RFP Nos. 58-62.)  As alleged in the FAC, Dentsu Inc. observed significant duplication of Famous Birthdays' copyrighted bios in CreatorIQ's

23

platform, leading it to conclude that the parties were working together.  Thus, this evidence is relevant to show what evidence of infringement Dentsu Inc. viewed in coming to that conclusion, whether such infringement was part of CreatorIQ's pitch to Dentsu Inc., and how much money CreatorIQ obtained from Dentsu Inc.

It has been over five months and CreatorIQ has failed to comply with the RFPs, it must be compelled to do so.

### C.   **CreatorIQ Must Provide Access to its Database**

CreatorIQ should be compelled to provide access to Famous Birthdays' counsel to its database.  Famous Birthdays has provided CreatorIQ with complete copies of all of its copyrighted bios at issue.  (Beatty Decl. ¶ 16.)  In return, CreatorIQ, after months of delay, obfuscation, excuses, and misdirection, has allowed Famous Birthdays' counsel to view approximately 500 profiles within its database, and produced an excel chart of 41,000 bios outside of CreatorIQ's actual database.  (*Id.*) CreatorIQ has created a ridiculous information asymmetry, whereby it knows the exact language of every single Famous Birthdays bio at issue, while Famous Birthdays is only permitted to access incomplete information on less than 20% of the 250,000 bios at issue, and no information on the majority of the $2M profiles CreatorIQ purportedly has in its database.  (Beatty Decl. Ex. I)

Where, as here, it is obvious that database access "is not unreasonably burdensome" and does not outweigh "the benefit of the discovery at issue," courts will grant a motion to compel database access. *South Peninsula Hospital, Inc. v. Xerox State Healthcare, LLC*, 2019 WL 1873297, at *7 (D. Alaska Feb. 5, 2019). Here, there is no question whatsoever that the benefits to discovery to providing Famous Birthdays' counsel with AEO database access completely outweigh any burden. Indeed, the burden is negligible  – CreatorIQ is in the business of providing database access to potential and current clients, and could easily provide such credentials to Famous Birthdays' counsel on an AEO basis.

And the benefit of database access to discovery is beyond cavil – the parties

24

agree that Famous Birthdays needs to know the extent of infringement, which CreatorIQ concedes is a threshold issue. (Rule 26 Report at 8:10-19) ("A threshold issue in this case is the identification of the profiles at issue and the scope of infringement, if any. To address the threshold issue, Defendant and Plaintiff are engaged in ongoing discussions regarding the most efficient procedure with respect to Defendant's database. . . . "). Even with the spoliation that has occurred, Famous Birthdays is entitled to see the bios to confirm there are no instances of ongoing infringement.

Further, any competitive concerns CreatorIQ has are without merit. Indeed, in another case, Facebook expressed similar concerns but the Court ordered that either plaintiffs' counsel be allowed to "go to Facebook and review the database there" or that Facebook provide plaintiffs' counsel "with a computer onto which the proprietary software and the database are loaded." *In re Facebook PPC Advertising Litigation*, 2011 WL 1324516, at *4 (N.D. Cal. Apr. 6, 2011). As in this case, there was a protective order with an AEO provision there to assuage any concerns regarding competitive data. *Id*. at *3. Moreover, despite the fact that CreatorIQ blatantly stole Famous Birthdays' IP, has spoliated key evidence in this case, and has approached discovery with a pervasive pattern of delay and misconduct, Famous Birthdays set its competitive concerns aside and provided its competitive data – a full list of all 250,000 of its copyrighted bios – to CreatorIQ.

The information in CreatorIQ's database is clearly relevant information that constitutes key evidence in this case, and CreatorIQ should be compelled to provide access to Famous Birthdays' counsel.

## V.   Conclusion

For the foregoing reasons, Famous Birthdays requests a recommendation for terminating sanctions, or, alternatively, an order issuing adverse inference sanctions, and a motion to compel production to outstanding discovery.

DATED:  November 23, 2022          KATTEN MUCHIN ROSENMAN LLP


                                   By:      /s/ Christopher D. Beatty
                                         CHRISTOPHER D. BEATTY
                                         Attorneys for Plaintiff
                                         FAMOUS BIRTHDAYS LLC