Jura C. Zibas (SBN: 217864)
*Jura.Zibas@wilsonelser.com*
Marty B. Ready (SBN: 239135)
*Marty.Ready@wilsonelser.com*
Peter K. Chu (SBN: 251705)
*Peter.Chu@wilsonelser.com*
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
401 West A Street, Suite 1900
San Diego, California 92101
Telephone:(619) 321.6200
Facsimile: (619) 321-6201

Attorneys for Defendant
SOCIALEDGE, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAMOUS BIRTHDAYS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SOCIALEDGE, INC., a Delaware corporation (dba CreatorIQ),<br><br>Defendants. | Case No.: 2:21-cv-09562-PA-MRW<br>Hon. PERCY ANDERSON<br>Courtroom: 9A<br>Action Filed: December 9, 2021<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION**<br><br>Hearing: December 16, 2022<br>       8:30 a.m.<br>       Via Zoom<br>Discovery Cut-Off: December 5, 2022<br>Pre-Trial Conference: January 20, 2023<br>Trial Date: February 14, 2023 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

    A.    Statement of Relevant Facts ......................................................................1

        1.    IN JANUARY 2022, IN RESPONSE TO MPI, DEFENDANT ADVISED PLAINTIFF'S COUNSEL THAT IT UPDATED THE DATA FOR THE INFLUENCERS TO AVOID DISPLAYING PLAINTIFF'S DATA ...............................................................2

        2.    EVEN THOUGH PLAINTIFF KNEW ABOUT THE UPDATE, PLAINTIFF NEVER PROPOSED HOW IT WANTED TO CONDUCT ESI DISCOVERY ON RULE 26(F) REPORT ........................................................................2

        3.    PLAINTIFF SEEKS "HISTORICAL ARCHIVES" OF PROFILES, WITHOUT DEFINING WHAT THE TERM MEANS .............................................................................2

        4.    PLAINTIFF MEANT WEB PAGES AS "HISTORICAL ARCHIVES" TYPICALLY AVAILABLE FROM THE WAYBACK MACHINE .........................................................3

        5.    THE RECENT SCREEN SHARE REVIEW CONFIRMS THAT PLAINTIFF DOES NOT UNDERSTAND WHAT INFORMATION IT IS SEEKING ...........................................4

        6.    PLAINTIFF HAS FAILED TO PROVIDE ANY DOCUMENTS TO SHOW THAT DEFENDANT SCRAPED ITS DATA .............................................................5

        7.    MEANWHILE, EVEN DURING THE SCREEN-SHARE REVIEW, DEFENDANT ALREADY PROPOSED THAT IT CAN PROVIDE THE BIOGRAPHIES OF THE INFLUENCERS BEFORE THE UPDATE .............................6

        8.    DEFENDANT HAS PROVIDED DATA AND CONTINUES ITS EFFORTS TO PROVIDE THE DATA .......6

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION (2: 21-cv-09562-PA-MRW)**

277787135v.2

      9.     THE ISSUES IN THE PREVIOUSLY PROPOSED JOINT STIPULATION WERE MOOTED" AFTER THE PARTIES' "MEET AND CONFER" ON NOVEMBER 18, 2022 AND ON NOVEMBER 22, 2022 ................................... 7

II.    LEGAL ARGUMENT ................................................................................ 8

    A.    Plaintiff's Discovery Motion is Moot ...................................................... 8

    B.    Plaintiff Cannot Show Defendant Spoliated by Competent Evidence ................................................................................................ 9

    C.    A Terminating Sanction Is Not Warranted Even If Plaintiff Can Provide Competent Evidence of Spoliation, Which It Cannot ........... 11

    D.    Plaintiff's Motion to Compel Production of "One-Sheet" Is Moot…13

    E.    Plaintiff's Motion for Production of Documents Is Premature……..13

III.   CONCLUSION ......................................................................................... 14

ii

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION (2: 21-cv-09562-PA-MRW)**

277787135v.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*
   (N.D.Cal. 2012) 881 F.Supp.2d 1132 ................................................................... 13

*Bayer v. Neiman Marcus Grp.*
   (9th Cir. 2017) 861 F.3d 853 ................................................................................... 9

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
   Case No. 5:18-cv-00420-JGB (SHK), 2020 U.S. Dist. LEXIS 56922, 2020
   WL 1496444, at *2 (C.D. Cal. Feb. 27, 2020) ...................................................... 10

*Garrison v. Ringgold*
   (S.D.Cal. Nov. 6, 2020, No. 19-cv-0244 GPC-DEB) 2020 U.S.Dist.LEXIS
   208122, at *17-20 ................................................................................................. 11

In re Napster, Inc. Copyright Litig.
   (N.D. Cal. 2006) 462 F. Supp. 2d 1060 ................................................................ 13

*Malone v. U.S. Postal Serv.*,
   833 F.2d 128 (9th Cir. 1987) ................................................................................. 13

*Pitts v. Terrible Herbst, Inc.*
   (9th Cir. 2011) 653 F.3d 1081 ................................................................................. 9

*Ruderman v. Rolls Royce Motor Cars NA, LLC*
   (C.D.Cal. May 26, 2022, No. CV 20-4529-KS) 2022 U.S.Dist.LEXIS
   136528, at *5-6 ..................................................................................................... 10

*Singleton v. Kernan*
   (S.D.Cal. Nov. 1, 2018, No. 3:16-cv-2462-BAS-NLS) 2018
   U.S.Dist.LEXIS 188237, at *20) .................................................................... 13, 15

*Thompson v. Hous. Auth.*
   (9th Cir. 1986) 782 F.2d 829 ................................................................................. 12

**Rules**

Fed. R. Civ. P. 37(d) ................................................................................................... 13

Fed. R. Civ. P. 37(e) ............................................................................................. 10, 11

iii

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION (2: 21-cv-09562-PA-MRW)**

277787135v.2

Joint Rule 26(f) ................................................................................................... 2

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION (2: 21-cv-09562-PA-MRW)**

277787135v.2

# I. INTRODUCTION

This Court should deny the Motion for Termination Sanctions Or in the Alternative For Adverse Inference Sanctions to Compel Production (the "Discovery Motion"), the Notice was filed one business day after the parties' meet and confer showing the Plaintiff never intended to resolve the dispute. Despite the fact that Defendant followed Magistrate Judge Michael R. Wilner's recommendation to stipulate to avoid this motion, Plaintiff is trying to pressure Defendant as Plaintiff has failed to complete their own investigation prior to filing this lawsuit. This is confirmed as Plaintiff intends to now, on the eve of discovery closing, to amend its Complaint. To resolve the spoliation issue, Defendant stipulated that Plaintiff's data for 50,135 influencers remained on its database at the time of the filing of this Complaint and provided the data for 218,989 Influencers based on Plaintiff's unsupported allegations of scraping, and agreed to provide in a few days after the filing of this Discovery Motion, even its customers' owned "one-sheets." Plaintiff cannot show spoliation; and even if it can show spoliation, which it cannot, no sanction, certainly not the terminating sanction or adverse inference, is warranted as Defendant has disclosed that it still had Defendant's data on its database at the time of the filing of the Complaint in this action, by declaration previously filed in this Court record and by offering to stipulate to the data on the server. Defendant files this Opposition although the Parties have completed a Joint Stipulation previously.

### A. Statement of Relevant Facts

This is an action for, *inter alias*, an infringement of Plaintiff's copyrights on factual data of celebrities and social media influencers ("the Influencers"). Under the license agreement entered into by the parties in April 2018 ("the License Agreement"), Plaintiff Famous Birthdays, LLC ("FB" or "Plaintiff") provided to Defendant SocialEdge, Inc. dba CreatorIQ ("CIQ" or "Defendant") a file with the plain text of the biographical data of 101,285 Influencers. As the data provided by

1

Plaintiff did not provide much value to its business, Defendant terminated the License Agreement in August 2020. However, Defendant had already stated that it inadvertently did not remove Plaintiff's data of approximately 50,135 Influencers ("the Uploaded Influencers") that Defendant had uploaded into its database, which includes data of over 25 million Influencers.

### 1. In January 2022, in response to MPI, Defendant advised Plaintiff's counsel that it updated the data for the influencers to avoid displaying Plaintiff's data.

Defendant was quite surprised by Plaintiff's filing of Complaint on December 9, 2021 (Dkt. No. 1), amended later as First Amended Complaint ("FAC") on February 28, 2022, without prior notice or cease-and-desist or "take-down" notice. With the Complaint, Plaintiff also filed Motion for Preliminary Injunction ("MPI") (Dkt. No. 8), Defendant advised Plaintiff that it complied with Plaintiff's demand and updated Plaintiff's data for the influencers on Defendant's website in its opposition brief to MPI. [Exh. A. Declaration of Dan Murray ("Murray Decl."), ¶3); Exh. B. Declaration of Jon Kroopf ("Kroopf Decl.") ¶11]. Defendant undertook this task so Plaintiff's data will not appear again when a user accesses Defendant's website. That is exactly what Plaintiff had sought in its MPI in the Proposed Order. (Exh. C, Dkt. No. 18-1). This Court properly denied MPI.

### 2. Even though Plaintiff knew about the update, Plaintiff never proposed how it wanted to conduct ESI discovery on Rule 26(f) Report.

As set forth above, Defendant advised Plaintiff of the update to the facts about the influencers on its website as early as January 6, 2022. In spite of this notice, Plaintiff still did not address any issues about disclosure, discovery, or preservation of ESI on the Joint Rule 26(f) Report six months later on June 13, 2022. (Exh. D, Dkt. No. 63). It did not mention ESI at all. (Id.).

### 3. Plaintiff seeks "historical archives" of profiles, without defining what the term means.

Plaintiff never defined what it means by "profiles" that it copyrighted. On

2

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION (2: 21-cv-09562-PA-MRW)

277787135v.2

January 6, 2022, upon being served with the Plaintiff's original Complaint, Defendant sought from Plaintiff the original deposit materials for its copyright registration to see what Plaintiff's copyright entails (Exh. E., Declaration of Marcus Peterson ("Peterson Decl."), Dkt. No. 24-1. ¶ 10) as the title of its copyrights are "profiles." (See Exh. F, Plaintiff's Copyright Registrations. Dkt. Nos 39-1, 2, and 3). Plaintiff never responded.

As such, Defendant served Requests for Document ("CIQ RFP") Nos 2 and 8 on August 8, 2022. [Declaration of Peter K. Chu ("Chu Decl."), ¶5]. After refusing to produce any documents, even after a three-week extension, Plaintiff finally served on October 18, 2022 three files as registration materials, which included only text, two files in .csv file format and one in .pdf format under the designation of "Attorneys' Eyes Only." (Chu Decl., ¶6).

Meanwhile, without disclosing the deposit materials requested in January 2022, Plaintiff made a request for production ("RFP") of "historical archives." Specifically, in RFP No. 49 and 51, Plaintiff made the following requests:

> REQUEST FOR PRODUCTION NO. 49:
> ALL historical archives of the profiles in the CREATORIQ's database of celebrity and influencer profiles.
> REQUEST FOR PRODUCTION NO. 51:
> ALL historical archives of the profiles in the CREATORIQ PLATFORM.

However, Plaintiff did not define or describe what "historical archives" or "the profiles" were. Plaintiff objected to Defendant's response and the parties' counsel had a meet and confer on September 2, 2022. (Chu Decl. ¶8).

### 4. Plaintiff meant web pages as "historical archives" typically available from the Wayback Machine.

During the conference between the counsel for Plaintiff and Defendant on September 2, 2022, it became clear that Plaintiff's definition of historical archive meant a web page. When Defendant questioned how historical archives may exist

3

on a production website, Plaintiff stated that it wanted an archive from the Wayback machine. Plaintiff also agreed to limit the scope to a reasonable number of samplings after the screen share review. (Chu Decl. ¶9). However, no archives were available on the Wayback machine as it does not have pages for the websites that required a login, just like Defendant's website (Chu Decl. ¶10).

### 5. The recent screen share review confirms that Plaintiff does not understand what information it is seeking.

Plaintiff's confusion became more evident during the recent "screen share review." On September 29 and 30, 2022, Plaintiff, through three of its counsel, was allowed a full, unlimited, access to the entirety of Defendant's Discovery platform with all of its 25 million social influencers during what the parties called "screen share review." (Chu Decl. ¶¶11-13). Its purpose was to address Plaintiff's counsel Chris D. Beatty's concern that: (1) there was ongoing infringement; and 2) [CIQ was] scrapping." (See Exh. G). Defendant allowed Plaintiff to select any of 250,000 influencers Plaintiff claimed that it has on its website, not just 100,000, whose data it provided to Defendant. Once the screen share review commenced, the protocol allowed Plaintiff to keep its list confidential and call out its secret selection of the influencer's name in a completely random fashion. Defendant then searched the name and the search result returned a web page. Plaintiff was then allowed to take a screenshot of the web page. As soon as the review began, Plaintiff's counsel became upset that the random search of Defendant's website returned web pages that did not resemble the web pages he had seen before at the time of filing the complaint.

Paragraph 11 of Declaration of Murad Salim ("Salim Decl.") (Exh. H,) clearly demonstrates Plaintiff's counsel's confusion or misunderstanding of the issue as the paragraph states:

> "noting that there appeared to be no bios at all in the platform, and that the bios also looked different from what we had seen in CreatorIQ's marketing

4

materials and on its website."

In addition to the fact that it is completely illogical to claim: (1) there were no bios; but then (2) the bios looked different, the search result does show what Plaintiff calls as "bios" as shown in the screenshot of Jacob Riglin (See Exh. I), which describes Mr. Riglin as "Photographer, Entrepreneur, Mentor." Of course the search results look different from what Plaintiff had seen in the past because Defendant updated the data (See Murray Decl. and Kroopf Decl.).

The screen share review demonstrated that, the information of the Influencers, at least the 500 compared, are different on Plaintiff's and Defendant's websites, thereby, negating Plaintiff's claim that Defendants is scraping Plaintiff's data.

### 6. Plaintiff has failed to provide any documents to show that Defendant scraped its data.

Because Plaintiff pled in FAC that Defendant accessed its servers and scraped its data, as well as demanding the information on the influencers that were not provided to Defendant, Defendant served on August 3, 2022 CIQ RFP Nos. 49, 52, 53, 55, and 56 seeking Plaintiff's documents supporting its allegation of scraping as below:

**REQUEST FOR PRODUCTION NO. 49:**
Produce all DOCUMENTS supporting the Third Claim of California Comprehensive Computer Access and Fraud Act in FAC.

**REQUEST FOR PRODUCTION NO. 52**:
Produce all DOCUMENTS RELATING TO YOUR allegation that CIQ accessed YOUR servers during the RELEVANT PERIOD.

**REQUEST FOR PRODUCTION NO. 53**:
Produce all DOCUMENTS that evidence that CIQ scraped data directly from YOUR websites.

**REQUEST FOR PRODUCTION NO. 55**:
Produce all DOCUMENTS, if any, RELATING TO preventing CIQ from accessing YOUR servers.

**REQUEST FOR PRODUCTION NO. 56**:
Produce all DOCUMENTS, if any, RELATING TO preventing CIQ from

accessing YOUR websites.

Invariably, Responding Party responded to each as follows:

Responding Party will produce relevant, non-privileged documents responsive to this Request to the extent they exist, are in Responding Party's possession, custody, or control, and can be located after a reasonably diligent search.

However, nearly 3 months after the service of CIQ RFP, Plaintiff has not produced any documents for its claim that Defendant scrapes data from Plaintiff.

**7. Meanwhile, even during the screen-share review, Defendant already proposed that it can provide the biographies of the influencers before the update.**

When Plaintiff's counsel Christopher Beatty complained of the returned web pages from the search looked different during the screen share review, Defendant responded that the web pages look different because the data were updated. Nevertheless, Defendant advised Mr. Beatty that it can put together the version of the biographies of the influencers before the update. (See Exh. G). Defendant also offered to discuss the next step in the same email (Id.).

Plaintiff remained silent then served a letter dated October 7, 2022, demanding that Defendant stipulate to an extraordinary remedy of forensic examination at Defendant's cost. (See Exh. J). In addition to rebutting Plaintiff's rather frivolous demand, Defendant also advised Plaintiff that the data is available and can be gathered if given sufficient time. (Exh. K).

Once again, Plaintiff remained silent. Then all of a sudden, two days prior to mediation on October 26, 2022, it served the Joint Stipulation for Motion for Terminating and Adverse Inference Sanction. At the time, Plaintiff never bothered to seek a meet and confer in person or via telephone or Zoom.

**8. Defendant has provided data and continues its efforts to provide the data.**

As made clear to Plaintiff and during a conference with the Magistrate Judge

Michael W. Wilner, the technical staff with Defendant is severely affected by the war in Ukraine. (Chu Decl., ¶14). Nevertheless, on November 1, 2022, Defendant provided the data of 41,023 Uploaded Influencers provided by Plaintiff that remained on Defendant's website in December 2021, which Defendant agreed was updated in response to MPI. (Chu Decl., ¶15, See Exh. L). Plaintiff who has yet to provide any documentary evidence of scraping, demanded, unreasonably, that Defendant provide the data of the 250,000 Influencers Plaintiff currently alleges to have on its website. (Chu Decl. ¶16). However, Plaintiff has not disclosed whose profiles were on its website. (Chu Decl. ¶16). Plaintiff did finally provid a plain text.csv file with the data for 218,899 Influencers as deposit materials for the registration of its Copyright Registration No. TXu 2-282-456 dated October 1, 2021, designated as "ATTORNEYS' EYES ONLY." (Chu Decl. ¶16). The designation is the subject of Defendant's motion to de-designate currently. The designation has severely hampered the ability of Defendant to provide the data as its staff is reluctant to sign under the penalty of perjury as the text is currently available on Plaintiff's website.

**9.      The issues in the previously proposed joint stipulation were mooted" after the parties' "meet and confer" on November 18, 2022 and on November 22, 2022.**

On November 18, 2022, the parties met and conferred on the remaining discovery issues, including the issues of this Discovery Motion ("11-18 Meet and Confer") (Chu Decl., ¶15). The parties planned to have another meet and confer on November 21, 2022 but Plaintiff did not respond whether or when it would take place.  (Chu Decl., ¶16). The parties did meet and confer on November 22, 2022 ("11-22 Meet and Confer") to discuss Plaintiff's failure to supplement its responses to Defendant's discovery. (Chu Decl., ¶17). During the same conference, Defendant, once again, agreed to provide the information on 218,899 Influencers by the following Monday and access to Defendant's customers' CRM portion in "one-sheet" also during the same week. (Chu Decl., ¶18).  Furthermore, Defendant

7

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION (2: 21-cv-09562-PA-MRW)

277787135v.2

also stipulated that the Uploaded Influencers were still on Defendant's database at the time of filing of the Complaint. (Id.) This effectively satisfied the issues raised in Plaintiff's Discovery Motion. Defendant also offered to continue to cooperate to resolve the discovery issues by both parties without filing discovery motions. (Id.) Plaintiff rejected Defendant's offer. (Id.).

The facts as stated above clear demonstrate that in spite of Plaintiff's ambiguous and imprecise description of its demand, Defendant has agreed to stipulate and also produced or will have produced the documents, thereby, effectively "mooting" this Discovery Motion.

## II.  LEGAL ARGUMENT

### A.  Plaintiff's Discovery Motion is Moot.

Defendant's production of documents have effectively mooted and made this Discovery Motion unnecessary. The claim or the issue becomes moot if there is no present controversy as to which effective relief can be granted. *See generally Bayer v. Neiman Marcus Grp.* (9th Cir. 2017) 861 F.3d 853, 862; and *Pitts v. Terrible Herbst, Inc.* (9th Cir. 2011) 653 F.3d 1081, 1086-87.

The gist of Plaintiff's claim in the Discovery Motion is that Defendant spoliated the data of the Influencers, which it provided to Defendant under the License Agreement. Plaintiff's ultimate claim of infringement and now spoliation is unnecessary because Defendant, by declaration and stipulation, stated that it had the data of the Uploaded Influencers from Plaintiff on its database, even after the filing of the Complaint (Exh. A. Murray Decl., ¶3); Exh. B. Kroopf Decl., ¶11).

Plaintiff's claim of spoliation has also been mooted because, pursuant to the recommendation by Magistrate Judge Michael Wilner's recommendation after the informal discovery conference ("IDC") on November 2, 2022, Defendant has stipulated to the facts to eliminate the needs for this Discover Motion. Particularly, Defendant stipulated that it indeed had the data of 50,135 Influencers on its database at the time of the Complaint; Defendant provided most of the data of

8

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION (2: 21-cv-09562-PA-MRW)**

277787135v.2

those Uploaded Influencers already; and it has produced or stipulated to provide the data of not just 50,135 Influencers, but its data of allegedly all the Influencers on Plaintiff's website, more than what Plaintiff provided to Defendant under the License Agreement, under the theory of scraping, even though Plaintiff failed to provide any evidence to support scraping. In addition, Defendant has produced or will have produced even its customer's data of "one-sheets" within a few days of filing of this Discovery Motion. Again, why Plaintiff needs the data on Defendant's website at the time of the filing of the Complaint is illogical. It is a waste of this Court's time and efforts, considering Defendant's declarations, stipulation, and production of documents. This Discovery Motion has become moot and will only be used to support what Defendant has already stated and stipulated to. Therefore, this Court should deny this Discovery Motion as moot.

### B. Plaintiff Cannot Prove Spoliation with Competent Evidence.

Notwithstanding the fact that Plaintiff's demand for the data at the time of the Complaint is unnecessary, Plaintiff still cannot satisfy the requirement under Rule 37(e) for its claim of spoliation as the data is not lost. On the contrary Plaintiff produced the data of most of the Uploaded Influencers and the additional time for discovery can result in production of the complete data.

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, which is carried out with "a culpable state of mind." *Ruderman v. Rolls Royce Motor Cars NA, LLC* (C.D.Cal. May 26, 2022, No. CV 20-4529-KS) 2022 U.S.Dist.LEXIS 136528, at *5-6. The moving party in spoliation motion has the burden to show that the evidence was in fact lost and "**cannot** be restored or replaced through additional discovery." (Fed. R. Civ. P. 37(e)) (emphasis added). The rule requires the moving party to "show by **competent** evidence, which could take the form of expert testimony or other evidence, that the ESI sought was actually lost." *Colonies Partners, L.P. v. Cnty. of San Bernardino*, Case No. 5:18-cv-00420-JGB (SHK),

9

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION (2: 21-cv-09562-PA-MRW)

277787135v.2

2020 U.S. Dist. LEXIS 56922, 2020 WL 1496444, at *2 (C.D. Cal. Feb. 27, 2020). Relying solely on the non-moving party's discovery responses was not sufficient to warrant spoliation motion. *Garrison v. Ringgold* (S.D.Cal. Nov. 6, 2020, No. 19-cv-0244 GPC-DEB) 2020 U.S.Dist.LEXIS 208122, at *17-20.

    Here, Plaintiff failed to meet its burden. Other than its own interpretation for Defendant's discovery response, it has not provided any competent evidence that the data was in fact lost and "**cannot** be restored or replaced through additional discovery." (Fed. R. Civ. P. 37(e)) (emphasis added). In fact, Defendant has actually shown that most of, if not all, the data can be restored. Defendant produced to Plaintiff the data for the of 41,023 Influencers whose data were on its database at the time of the Complaint. It seeks to get the data of the remaining 9,112 of the Uploaded Influencers from its 25 million Influencers on its own database. Defendant can and will produce the remaining record, although the reason for such labor is an unwarranted harassment on Defendant after the declarations by Mr. Murray and Kroopf that the data were still on Defendant's database at the time of the Complaint.

    Next, there was nothing culpable about why it updated its data. Plaintiff demanded via its MPI that Defendant stop using its data. Defendant updated its data in good faith to comply with Plaintiff's post-litigation demand in MPI, while preserving the data it had. Obedience and cooperation cannot be considered culpable state of mind.

    Plaintiff here seems to argue that Defendant should be penalized for spoliation for data for its entire set of Influencers of 250,000. First of all, Plaintiff has never shown that it has 250,000 Influencers. In fact, the number is 218,989 as that is the number of "profiles" it allegedly registered for copyrights. A half-hazard guess by Plaintiff is not evidence. Next, Plaintiff only provided data for 101,285 Influencers, of those 50,131 were uploaded. Plaintiff has stoically refused to provide any evidence of scraping of its data by Defendant in response to

10

Defendant's demand for production of documents as stated above. Other than the data of the nine Influencers on FAC, it has not shown any evidence that Defendant's data matches Plaintiff's data for those Influencers; nor did Plaintiff provide any evidence of how Defendant could have obtained the data for the remaining Influencers. Regardless, Defendant produced or will have produced the data for all of the Influencers on Plaintiff's database, all 218,989, not 250,000 as Plaintiff itself believed.

In sum, Plaintiff failed to meet its burden to show with competent evidence that "ESI sought was actually lost" and/or "cannot be restored or replaced through additional discovery." Defendant has shown quite the contrary is true by its production of the allegedly spoliated data and its agreement to continue to work to produce the remainder of the record. Therefore, this Court should deny this Discovery Motion as Plaintiff has no competent evidence to show spoliation.

## C. **A Terminating Sanction Is Not Warranted Even If Plaintiff Can Provide Competent Evidence of Spoliation, Which It Cannot.**

Even if Plaintiff can show spoliation occurred, which Defendant asserts it cannot, a terminating sanction is not warranted under the facts of this case.

The law is clear that terminating sanctions "is so harsh a penalty it should be imposed as a sanction only in extreme circumstances." *Thompson v. Hous. Auth.* (9th Cir. 1986) 782 F.2d 829, 831 (per curiam). A finding of "willfulness, fault, or bad faith" is required for a terminating sanction resulting in dismissal to be proper. *Singleton v. Kernan* (S.D.Cal. Nov. 1, 2018, No. 3:16-cv-2462-BAS-NLS) 2018 U.S.Dist.LEXIS 188237, at *20). This Court must be mindful that "any sanction must be the least drastic available" to adequately mitigate any prejudice Plaintiff here suffered, which is minimal, if at all, in this case. *Apple Inc. v. Samsung Elecs. Co., Ltd.* (N.D.Cal. 2012) 881 F.Supp.2d 1132, 1150. Default sanctions are not appropriate because Defendant's actions "do not eclipse entirely the possibility of a just result." *In re Napster, Inc. Copyright Litig.* (N.D. Cal. 2006) 462 F. Supp. 2d

11

1060, 1071 (internal quotation marks omitted).

The Ninth Circuit has set forth five factors in considering a terminating sanction pursuant to Fed. R. Civ. P. 37(d): "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Serv.,* 833 F.2d 128, 130 (9th Cir. 1987); see also *Singleton, supra* (S.D.Cal. Nov. 1, 2018, No. 3:16-cv-2462-BAS-NLS) 2018 U.S.Dist.LEXIS 188237, at *21.) ("The availability of less drastic sanctions, the lack of any evidence of bad faith, and the public policy favoring resolution on the merits weigh strongly against [*20] terminating sanctions").

Here, the prejudice to Plaintiff is minimal, if not non-existent, as Defendant already stated that the data for Uploaded Influencers was on its database at the time of the Complaint. Plaintiff does not need the allegedly spoliated data. Plaintiff itself is not acting in good faith when it claims spoliation of data of all of its 250,000 Influencers, while refusing to provide any evidence of scraping. It does not even have 250,000 Influencers on its website. Public policy favoring disposing cases on their merits militates against a terminating sanction in this case where Defendant disputes the copyrightability of Plaintiff's data. It also seeks the Court's determination of whether a thick or thin protection is warranted, even if Plaintiff survived the liberal standard applied in ruling on Motion to Dismiss.

Clearly, there was no bad faith as Defendant actually advised Plaintiff of its update and produced the replaced data of at least 41,023 Influencers, with more coming soon. In their declarations, Dan Murray and John Kroopf stated that Defendant updated and removed any data received from Plaintiff that were still left unintentionally even after Plaintiff filed the lawsuit. In another words, Defendant did not destroy the data to hide that Plaintiff's data was on its server. Mr. Murray stated that it did so to avoid unnecessary motion, again, to the production server, in

12

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION (2: 21-cv-09562-PA-MRW)

277787135v.2

order to stop the subject data from being displayed when a user accesses its website. Plaintiff also cannot claim prejudice in light of Mr. Murray's declaration.

Moreover, this Court should also consider lesser sanction as required by the cases in the Ninth Circuit before imposing terminating sanctions. Although it is illogical for Plaintiff to seek both a terminating and adverse inference sanction. An adverse inference is an instruction to the trier of fact that "evidence made unavailable by a party was unfavorable to that party." *Singleton, supra* (S.D.Cal. Nov. 1, 2018, No. 3:16-cv-2462-BAS-NLS) 2018 U.S.Dist.LEXIS 188237, at *20 ("an evidentiary sanction in the form of an adverse inference instruction that permits the trier of fact to conclude the January 21, 2015 logbook entry contained unfavorable information is appropriate for summary judgment and trial). The evidence Plaintiff seeks is already, or will be, made available if Plaintiff can show some evidence that Defendant scraped its data. The parties' screen-share review shows otherwise. Defendant respectfully request that this Court deny the adverse inference sanction, or in the alternative, deny without prejudice until it become an issue later.

### D.  Plaintiff's Motion to Compel Production of "One-Sheet" Is Moot.

In the alternative to terminating or adverse inference sanction, Plaintiff request motion to compel "one-sheet." As stated above, although these "one-sheets" belong to its customers, Defendant has agreed to and will have provided the "one-sheets" within days of the filing of the Discovery Motion, and Defendant has advised Plaintiff already of its willingness and intention to do so. As Plaintiff request for motion to compel production of "one-sheets" even after Defendant advised Plaintiff of its production, Plaintiff's Request for sanction is or will be moot.

### E.  Plaintiff's Motion for Production of Documents Is Premature.

Plaintiff's Motion for Production of Documents is premature pursuant to the direction of Magistrate Judge Wilner (See Exh. O). In the email dated November

13

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION (2: 21-cv-09562-PA-MRW)

277787135v.2

21, 2022, he clearly expected the parties to brief "a potential **spoliation motion** for hearing on December 16," not the motions to compel production. Plaintiff should be required to follow the Local Rules. Magistrate Judge Wilner did not relieve Plaintiff from having to file joint stipulation pursuant to L.R. 37-1 or 2. Furthermore, the parties have clearly contemplated setting a future date to complete the document production. (See Exh. N). Because of the recent change of firm by Mr. Christopher Beatty, the final date for production of documents has not been set. As such, this Court should not consider this Motion to Compel Production of Documents until and such time it becomes necessary as the issue is not ripe yet.

In sum, this Court should not order such a harsh sanction as terminating sanctions as there was no spoliation or bad faith on the part of Defendant who updated the data to comply and possibly to avoid unnecessary motion as MPI or prejudice against Plaintiff in light of its own assertion stated in Mr. Murray's and Kroopf's declarations. Also, Plaintiff's Motion to Compel Production of "One-Sheets" is moot and Motion to Compel Production of Other Documents is not ripe for adjudication.

Further, as no sanctions are warranted or necessary and the Motions to Compel should not even be considered by Magistrate Judge Wilner, Plaintiff should not be awarded attorney's fees.

### III. CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's Motion for Terminating and Adverse Inference Sanctions when it cannot claim Defendant actually spoliated evidence and it has suffered no prejudice if Defendant has spoliated any evidence, which it denies. Further, this Court should not rule on Plaintiff's Motion to Compel Production of Documents as it is moot and/or not ripe as set forth above. Further, no sanctions or attorney's fees are warranted on the motions that should not have even been filed.

| | | |
|---|---|---|
| 1 | Dated:  November 23, 2022 | WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP |
| 2 | | |
| 3 | | By: /s/ Peter K. Chu |
| 4 | | Marty B. Ready |
| 5 | | Jura C. Zibas |
| | | Peter K. Chu |
| 6 | | Attorney for Defendant |
| | | SOCIAL EDGE, INC. |

15

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING AND ADVERSE INFERENCE SANCTION (2: 21-cv-09562-PA-MRW)**

277787135v.2